UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| WILLIAM SPONN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 8:16-cv-02625-RWT |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| EMERGENT BIOSOLUTIONS INC., et al., | ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF
ALLOCATION

1502044_1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   THE STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS ............4

III.  THE PROPOSED SETTLEMENT MEETS THE FOURTH CIRCUIT
      STANDARDS FOR APPROVAL........................................................................................6

      A.   The Proposed Settlement Is Fair ...........................................................................6

           1.    The Posture of the Case at the Time Settlement Was Proposed and
                 the Amount of Discovery..............................................................................6

           2.    The Circumstances Surrounding Settlement Negotiations .........................7

           3.    The Experience of Counsel............................................................................8

      B.   The Proposed Settlement Is Adequate ..................................................................9

           1.    The Strength of Plaintiffs' Case and the Difficulties of Proof and
                 Potential Defenses Plaintiffs Were Likely to Encounter at Trial
                 Support Approval of the Settlement ............................................................9

                 a.    Risks in Establishing Liability ........................................................9

                 b.    Risks in Establishing Damages....................................................12

                 c.    Certainty of a Recovery ...............................................................14

           2.    The Complexity, Length, and Expense of Further Litigation
                 Support Approval of the Settlement ..........................................................15

           3.    The Degree of Opposition to the Settlement..............................................16

IV.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE
      AND SHOULD BE APPROVED BY THE COURT........................................................16

V.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS
      OF RULE 23 AND DUE PROCESS................................................................................18

VI.   CONCLUSION................................................................................................................19

1502044_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997)...................................................................................4

*Anixter v. Home-Stake Prod. Co.*,
　77 F.3d 1215 (10th Cir. 1996) ...............................................................14

*Beecher v. Able*,
　575 F.2d 1010 (2d Cir. 1978)..................................................................17

*Cooke v. Manufactured Homes, Inc.*,
　998 F.2d 1256 (4th Cir. 1993) ................................................................10

*Cozzarelli v. Inspire Pharms., Inc.*,
　549 F.3d 618 (4th Cir. 2008) ..................................................................10

*Dartell v. Tibet Pharms., Inc.*,
　No. 14-3620, 2017 U.S. Dist. LEXIS 100872
　(D.N.J. June 29, 2017) ............................................................................18

*Deem v. Ames True Temper, Inc.*,
　No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981
　(S.D. W. Va. May 23, 2013).......................................................................6

*Dura Pharms., Inc. v. Broudo*,
　544 U.S. 336 (2005).................................................................................12

*Eisen v. Carlisle & Jacquelin*,
　417 U.S. 156 (1974).................................................................................18

*Ernst & Ernst v. Hochfelder*,
　425 U.S. 185 (1976)...................................................................................9

*Flinn v. FMC Corp.*,
　528 F.2d 1169 (4th Cir. 1975) ...........................................................5, 9, 16

*In re Am. Bank Note Holographics*,
　127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................13

*In re Apollo Grp., Inc. Sec. Litig.*,
　No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
　(D. Ariz. Aug. 4, 2008), *rev'd*, 2010 U.S. App. LEXIS 14478
　(9th Cir. June 23, 2010) ...........................................................................12

- ii -

**Page**

*In re Apple Comput. Sec. Litig.*,
No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
(N.D. Cal. Sept. 6, 1991) ................................................................................................. 14

*In re BankAtlantic Bancorp, Sec. Litig.*,
No. 07-61542-Civ, 2011 U.S. Dist. LEXIS 48057
(S.D. Fla. Apr. 25, 2011),
*aff'd sub. nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..................................................................................... 12, 14

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ........................................................................................... 17

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ...................................................................... *passim*

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ..................................................................................... 15

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW(EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007) .............................................................................................. 14

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ................................................................................... *passim*

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................................................... 17

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) ............................................................................... 8

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ..................................................................................... 17

*In re NeuStar, Inc. Sec. Litig.*,
No. 1:14cv885, 2015 U.S. Dist. LEXIS 165320
(E.D. Va. Dec. 8, 2015) ................................................................................................ 17

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ........................................................................................... 12

*In re SmithKline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990) ................................................................................. 15

- iii -

**Page**

*In re Tyco Int'l, Ltd.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................12

*In re Wachovia Corp. ERISA Litig.*,
    No. 3:09cv262, 2011 U.S. Dist. LEXIS 155045
    (W.D.N.C. Oct. 24, 2011) ......................................................................................17

*Kirven v. Cent. States Health & Life Co.*,
    No. 3:11-2149-MBS, 2015 U.S. Dist. LEXIS 36393
    (D.S.C. Mar. 23, 2015) ........................................................................................5, 8

*Petrovic v. AMOCO Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ...............................................................................17

*Reed v. Big Water Resort, LLC*,
    No. 2:14-cv-01583-DCN, 2016 U.S. Dist. LEXIS 187745
    (D.S.C. May 26, 2016) ..................................................................................4, 7, 19

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) .................................................................................14

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) .............................................................................14

*S.C. Nat'l Bank v. Stone*,
    139 F.R.D. 335 (D.S.C. 1991) .....................................................................5, 8, 9, 14

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990) ...........................................................................17

*Scardelletti v. Debarr*,
    43 F. App'x 525 (4th Cir. 2002) ..............................................................................4

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
    890 F. Supp. 499 (E.D. Va. 1995) ...........................................................................8

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976) ................................................................................................9

*United States v. North Carolina*,
    180 F.3d 574 (4th Cir. 1999) ...................................................................................8

Page

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(4) ...................................................................................................................2
  §78u-4(a)(7) .................................................................................................................18

Federal Rules of Civil Procedure
  Rule 23 .........................................................................................................................16
  Rule 23(c)(2)(B) ......................................................................................................18, 19
  Rule 23(e) .............................................................................................................1, 4, 18
  Rule 23(f) ..................................................................................................................2, 6

17 C.F.R.
  §240.10b-5 ...................................................................................................................12
  §240.10b5-1 ................................................................................................................11

**SECONDARY AUTHORITIES**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
  *Securities Class Action Settlements: 2017 Review and Analysis*
  (Cornerstone Research 2018) .......................................................................................14

## I.      INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs City of Cape Coral Municipal Firefighters' Retirement Plan ("City of Cape Coral") and City of Sunrise Police Officers' Retirement Plan ("City of Sunrise") and Certified Class Representative Geoffrey L. Flagstad (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectively submit this memorandum of law in support of: (1) final approval of the $6.5 million settlement of this Litigation on the terms and conditions set forth in the Stipulation of Settlement, dated October 16, 2018 ("Stipulation" or "Settlement") (ECF No. 101);[1] and (2) approval of the Plan of Allocation. The Stipulation resolves Plaintiffs' and the Settlement Class' claims against Emergent BioSolutions Inc. ("Emergent" or the "Company"), Fuad El-Hibri, Daniel J. Abdun-Nabi, Robert G. Kramer and Adam R. Havey (collectively, "Defendants").   The Settlement was reached after two years of vigorous litigation and arm's-length negotiations between the parties, assisted by an experienced mediator, Jed Melnick, Esq. of JAMS.

The Stipulation provides for the cash payment of $6,500,000, plus interest, for the benefit of the Settlement Class.[2] The Settlement Amount has been deposited into an interest- bearing account for the benefit of the Settlement Class.   The issues before the Court are straightforward: namely, whether the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be

---

[1]      All capitalized terms that are not defined herein shall have the same meanings as set forth in the Stipulation.

[2]      "Settlement Class" means all Persons who purchased or otherwise acquired Emergent publicly-traded common stock listed on the New York Stock Exchange between January 11, 2016 and June 21, 2016, inclusive, or their successors-in-interest.  Excluded from the Settlement Class are:  Emergent; the Individual Defendants; members of the Immediate Family of each of the Individual Defendants; the Officers and directors of Emergent during the Settlement Class Period; the heirs, successors, and assigns of any excluded person or entity; and any entity in which any excluded person has or had a controlling interest.  Also excluded from the Settlement Class are those Persons who would otherwise be Settlement Class Members who timely and validly exclude themselves therefrom pursuant to ¶15 of the Preliminary Approval Order.  Stipulation, ¶1.27.

approved by the Court. Plaintiffs and their counsel believe the Settlement is in the best interest of the Settlement Class and by any measure is fair, reasonable, and adequate.[3]

By the time the Settlement was reached, Lead Counsel had conducted a thorough investigation of the claims, defenses, and underlying transactions that are the subject of the Litigation. This investigation included a review and analysis of documents filed publicly with the U.S. Securities and Exchange Commission, press releases issued by or concerning Emergent, research reports issued by financial analysts concerning Emergent securities, and news articles and media reports concerning the Company's operations. Prior to attending mediation, Lead Counsel also prepared and filed a detailed amended complaint specifying Defendants' alleged violations of the federal securities laws; successfully defeated Defendants' motion to dismiss that complaint; successfully obtained class certification over Defendants' opposition and Defendants' *Daubert* challenges to Plaintiffs' market efficiency, causation and damages expert, and briefed a successful opposition to Defendants' Rule 23(f) petition; requested, negotiated for, and obtained fact discovery (including documents and depositions) from Defendants and third parties; retained an expert on the issues of market efficiency, loss causation, and damages and submitted that expert's report; prepared a mediation brief and response to Defendants' mediation submission; and participated in a mediation session with Defendants and Mr. Melnick.

The Settlement was negotiated on both sides by experienced counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses. The Settlement confers a favorable and immediate benefit to the Settlement Class and eliminates the risks

---

[3]     For a more detailed history of the Litigation and the factors bearing on the reasonableness of the Settlement, Plan of Allocation, and award of attorneys' fees and expenses, the Court is respectfully referred to the accompanying Declaration of Jonah H. Goldstein in Support of Plaintiffs' Motion for (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (hereinafter, "Goldstein Decl.").

- 2 -

involved in proving liability and damages as well as the further risk, delay, and expense of trial.  The Settlement takes into account the specific risks and obstacles that Plaintiffs and the Settlement Class would face if litigation were to continue.  If not for this Settlement, the case would likely remain fiercely contested by the parties with the ultimate outcome uncertain.

Lead Counsel, who is well-respected and experienced in prosecuting securities class actions, has concluded that the Settlement is a favorable result under the circumstances and is clearly in the best interest of the Settlement Class.  This conclusion is based on all the circumstances present here, including the available insurance (which was being rapidly depleted by continued litigation), the likelihood of obtaining and recovering on a larger judgment after continued litigation, the substantial risks, expense, and uncertainties in continuing the Litigation, the relative strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, and past experience in litigating complex actions similar to the present action.  Indeed, Lead Counsel believes that the Settlement is the best possible result for the Settlement Class.  Moreover, Plaintiffs have closely monitored this Litigation from the outset, provided documents and depositions, were involved in negotiating the Settlement, and recommended that the Settlement be approved.  *See* Declarations of: (i) Damon Alimonti on behalf of City of Cape Coral; (ii) David M. Williams on behalf of City of Sunrise; and (iii) Class Representative Geoffrey L. Flagstad, submitted herewith.

In addition, the Plan of Allocation, which was developed with the assistance of Plaintiffs' damages consultant and tracks Plaintiffs' theory of damages, is necessarily fair, reasonable, and adequate.

Members of the Settlement Class appear to agree with the conclusion of Plaintiffs and their counsel.  Pursuant to the Court's Amended Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 106), over 5,300 copies of the Amended

Notice of Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release

("Proof of Claim") (together, "Notice Package") were mailed to potential Settlement Class Members

and nominees.[4]  The Notice apprised Settlement Class Members of their right to, and procedure for,

objecting to the Settlement, the Plan of Allocation, or to Lead Counsel's application for attorneys'

fees and expenses.  While the time to file objections has not yet expired, to date, no objections to the

Settlement or Plan of Allocation have been received.[5]

## II.    THE STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure provides that class actions shall not be

dismissed without approval of the court.  Judicial approval of class action settlements is intended to

ensure that the rights of absent class members are adequately protected.  *See Amchem Prods. v.*

*Windsor*, 521 U.S. 591, 621 (1997).  As the Fourth Circuit has noted, "[t]he primary concern

addressed by Rule 23(e) is the protection of class members whose rights may not have been given

adequate consideration during the settlement negotiations."  *In re Jiffy Lube Sec. Litig.*, 927 F.2d

155, 158 (4th Cir. 1991).  In approving a proposed settlement of a class action in this Circuit, a court

must find that the proposed settlement is both fair and adequate.  *See id.* at 158-59; *Scardelletti v.*

*Debarr*, 43 F. App'x 525, 528 (4th Cir. 2002); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-

DCN, 2016 U.S. Dist. LEXIS 187745, at *16 (D.S.C. May 26, 2016).

The fairness inquiry focuses on whether the settlement was reached as a result of good-faith

bargaining at arm's length without collusion.  *See Jiffy Lube*, 927 F.2d at 159.  The factors that

---

[4]     *See* ¶¶6-12 to the Declaration of Carole K. Sylvester Regarding Class Action Fairness Act Notification, Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Mailing Decl."), filed herewith.

[5]     In accordance with the Preliminary Approval Order, Plaintiffs will respond to any objections on or before January 8, 2019.

courts should consider in determining fairness are: (i) the posture of the case at the time settlement was proposed; (ii) the extent of discovery that had been conducted; (iii) the circumstances surrounding the negotiations; and (iv) the experience of counsel. *See id*.; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 840 (E.D. Va. 2016).

The adequacy inquiry considers the substantive factors of the settlement. These factors are: (i) the relative strength of plaintiffs' case on the merits; (ii) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (iii) the anticipated duration and expense of additional litigation; (iv) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (v) the degree of opposition to the settlement. *See Jiffy Lube*, 927 F.2d at 159; *Genworth*, 210 F. Supp. 3d at 841.

In assessing the fairness and adequacy of a settlement, courts give a "'strong initial presumption that the compromise is fair and reasonable.'" *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (citation omitted). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Kirven v. Cent. States Health & Life Co.*, No. 3:11-2149-MBS, 2015 U.S. Dist. LEXIS 36393, at *12 (D.S.C. Mar. 23, 2015). It is proper for a court to limit its proceedings to whatever is necessary to reach an informed decision. *Flinn*, 528 F.2d at 1173. The court should not "turn the settlement hearing 'into a trial or a rehearsal of the trial' nor need it 'reach any dispositive conclusions on the admittedly unsettled legal issues' in the case." *Id*. at 1172-73 (citations omitted).

As discussed below, application of these standards establish that this Settlement is both fair and adequate and should be approved.

## III.   THE PROPOSED SETTLEMENT MEETS THE FOURTH CIRCUIT STANDARDS FOR APPROVAL

### A.   The Proposed Settlement Is Fair

The Settlement before the Court meets each prong of the fairness standard.

#### 1.   The Posture of the Case at the Time Settlement Was Proposed and the Amount of Discovery

There is no bright-line amount of discovery that must be undertaken to satisfy this factor. Indeed, courts are instructed to give consideration to the extent of discovery conducted to simply ensure that a plaintiff had access to sufficient material to evaluate his, her, or its case on an informed basis and to assess the adequacy of the settlement in light of the strengths and weaknesses of his, her, or its position. *See Jiffy Lube*, 927 F.2d at 159. "The parties must have engaged 'in sufficient investigation of the facts to enable the court to intelligibly make an appraisal' of the fairness of a proposed class settlement." *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981, at *4 (S.D. W. Va. May 23, 2013) (citation omitted). Here, both the knowledge of Plaintiffs and their counsel as well as the proceedings themselves have reached a stage where an intelligent evaluation of the Litigation and the propriety of settlement can be (and was) made.

At the time the parties reached an agreement-in-principle to settle this Litigation, Lead Counsel had conducted an extensive factual investigation. Lead Counsel researched, drafted, and filed a detailed amended complaint; researched and briefed an opposition to Defendants' motion to dismiss; filed a motion for class certification, which motion was granted, albeit with a shortened class period and successfully opposed Defendants' *Daubert* challenges to Plaintiffs' market efficiency, causation and damages expert; successfully opposed Defendants' Rule 23(f) petition; sought and received nearly 100,000 pages of documents produced by Defendants and third parties, which documents were being reviewed and analyzed at the time of settlement; conducted several fact

depositions; consulted with an expert on loss causation and damages and served the expert's market efficiency report; and defended the depositions of Plaintiffs and Plaintiffs' expert on market efficiency.  The parties also participated in formal mediation where the strengths and weaknesses of their respective claims and defenses were debated.  Thus, Plaintiffs and their counsel had sufficient information to evaluate the merits of the claims fully, the obstacles to success, and the propriety of settlement.  *Reed*, 2016 U.S. Dist. LEXIS 187745, at *22-*23; *Genworth*, 210 F. Supp. 3d at 840.

### 2.      The Circumstances Surrounding Settlement Negotiations

Courts consider the circumstances surrounding the settlement negotiations in evaluating the settlement's fairness.  This *Jiffy Lube* factor seeks to "'ensure that counsel entered into settlement negotiations on behalf of their clients after becoming fully informed of all pertinent factual and legal issues in the case.'"  *Genworth*, 210 F. Supp. 3d at 840 (citation omitted).  This factor also focuses on the nature of the negotiations and whether they were free from fraud and collusion.  The settlement negotiations took place at arm's length, overseen by an experienced mediator, Jed Melnick, Esq. of JAMS.  During the mediation process, Plaintiffs and their counsel made it clear that, while they were prepared to assess the strengths and weaknesses of the claims asserted, they would continue to litigate rather than settle for less than fair value.  The settlement reached here followed a full-day mediation session with Mr. Melnick and reflects an informed consideration of a complex array of factual and legal issues to be encountered by Plaintiffs if the case continued.

Plaintiffs were represented during these negotiations by experienced counsel with a proven track record of success in securities class action litigation.  Defendants were also represented by highly experienced and capable counsel with experience defending class action and securities fraud cases.  Indeed, as one court noted where, like here, the negotiations were well informed and at arm's length:

- 7 -

> The settlement discussions involved here were . . . hard fought and always adversarial.  The negotiations in this case were conducted by able counsel who have a substantial amount of litigation experience in this sort of complex [litigation].  Finding no indication of any collusion, it is therefore appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole.

*S.C. Nat'l Bank*, 139 F.R.D. at 339.  As demonstrated, the Settlement was entered into in good faith and at arm's length.  Accordingly, the Settlement enjoys a presumption that it was reached without collusion and is fair, adequate, and reasonable.  *See Genworth*, 210 F. Supp. at 840-41 ("These continuing efforts before an experienced mediator left the parties and their counsel 'fully informed of all pertinent factual and legal issues' and demonstrate that the Settlement is fair and reasonable."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) ("[T]he Court is persuaded that Plaintiffs' counsel, with their wealth of experience and knowledge in the securities-class action area, engaged in sufficiently extended and detailed settlement negotiations to secure a favorable settlement for the Class.").

### 3.    The Experience of Counsel

The final *Jiffy Lube* factor focuses on "whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution."  *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *13.  Fourth Circuit Courts have held that the opinion of experienced counsel familiar with the facts of the case should be given weight in evaluating a proposed settlement.  *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).  Courts in this Circuit likewise recognize that where "counsel for both sides are nationally recognized members of the securities litigation bar," "it is 'appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the best interest of their clients and the class as a whole,' and to find that the proposed . . . settlement is fair."  *In re*

*MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001) (citation omitted); *see also S.C. Nat'l Bank*, 139 F.R.D. at 339; *Flinn*, 528 F.2d at 1173.

This case has been litigated and settled by experienced and competent counsel on both sides of the case.  Lead Counsel is well known for its experience and success in complex class action litigation and has many years of experience in litigating securities fraud class actions.  Based on its extensive experience, Lead Counsel has determined that the Settlement is in the best interest of the Settlement Class after weighing the substantial benefits of the Settlement against the numerous obstacles to a better recovery after continued litigation.  *See* Exhibit G to the Declaration of Jonah H. Goldstein Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses for a description of Lead Counsel's experience.  Defendants are represented by lawyers from Kirkland & Ellis LLP, a law firm with an abundance of experience representing defendants in this type of litigation.  The recommendations of experienced and qualified counsel favor approval of the Settlement.

As such, each of the "fairness" factors in *Jiffy Lube* have been satisfied and final approval is warranted.

    **B.**    **The Proposed Settlement Is Adequate**

        **1.**    **The Strength of Plaintiffs' Case and the Difficulties of Proof and Potential Defenses Plaintiffs Were Likely to Encounter at Trial Support Approval of the Settlement**

            **a.**    **Risks in Establishing Liability**

To prevail on their claims at trial, Plaintiffs have the burden of establishing the liability of the Defendants to the satisfaction of the jury and the Court.  Plaintiffs have to prove, *inter alia*, that the alleged misstatements and omissions were material, *TSC Indus. v. Northway, Inc.*, 426 U.S. 438 (1976), and made with scienter (actual knowledge or reckless disregard for the truth), *Ernst & Ernst*

- 9 -

*v. Hochfelder*, 425 U.S. 185 (1976).  Accordingly, Plaintiffs would have to prove that Defendants participated in the public dissemination of misleading information, that the information was material to investors in determining whether to invest in Emergent common stock, that the information materially affected the price of Emergent common stock, and that Defendants withheld information either with actual intent to deceive, manipulate, or defraud, or that Defendants recklessly disregarded these facts and their consequences.  *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1260-61 (4th Cir. 1993).  As the Fourth Circuit has recognized, "[t]hese substantive elements of a securities fraud claim are demanding."  *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 623 (4th Cir. 2008).

Although Plaintiffs believe their claims are meritorious, further litigation to establish liability posed a significant threat to any class-wide recovery.  At the time of settlement, Plaintiffs faced the risk of defeating motions for summary judgment after completion of discovery.  In particular, Defendants would likely argue on summary judgment that the remaining alleged misstatements and omissions concerning the BioThrax Contract were not actionable.  In particular, Defendants argued that Mr. Abdun-Nabi's May 5, 2016 "big, beautiful package" statement amounts to nothing more than classic inactionable puffery, because it did not mention an actual dose quantity, number, or range of BioThrax doses for the follow-on contract.  Goldstein Decl., ¶61.  Defendants have also pointed out that no securities analysts referenced Mr. Abdun-Nabi's statement in their contemporaneously issued reports following Emergent's May 5, 2016 earnings call.  *Id*.

Presuming the case proceeded to trial, the risks of establishing liability posed by the conflicting testimony and evidence would be exacerbated by the unpredictability of a lengthy and complex jury trial; the risk that the jury would find that some or all of the asserted misrepresentations and omissions were not material; and the risk that the jury would find that

Defendants reasonably believed in the appropriateness of their actions at the time and that Plaintiffs failed to prove that Defendants acted with the requisite scienter.

Plaintiffs' burden to prove scienter cannot be underestimated. Proof of scienter for each defendant is complex and involves exploration of the state of mind of each individual at the time of the alleged false statements and/or omission. Here, Plaintiffs would have to prove what each Defendant knew about the alleged wrongdoing and at what point in time he had or should have had such knowledge. Defendants would likely continue to argue that Plaintiffs' scienter allegations were insufficient. Defendants maintain that the documents and deposition testimony establish that no one at Emergent was aware of the Government's procurement requirements before the issuance of the Sole-Source Notification on June 21, 2016. Goldstein Decl., ¶62. Further, Defendants maintain that the Individual Defendants' class period stock sales do not establish scienter because all of the May 5, 2016-June 21, 2016 sales were made subject to non-discretionary Rule 10b5-1 trading plans, and the small number of shares sold relative to the total amount of shares owned by them would not give rise to a basis for suspicion. *Id.*, ¶63.

Although Plaintiffs' allegations survived Defendants' motion to dismiss, there is no guarantee that the Court would not grant summary judgment on this fact-specific element following the completion of discovery. *See Genworth*, 210 F. Supp. 3d at 841-42 ("Even more difficult, the plaintiffs would need to prove that these statements were made with scienter, and were not simple good faith mistakes or the result of negligence. . . . Even with a strong case, the plaintiffs nonetheless face a large risk before a jury.").

At trial, Defendants would present evidence in support of their contentions that they did not make any actionable material misstatements or omissions and that they did not act with scienter. Thus, Plaintiffs would face the risk of establishing liability posed by conflicting evidence and

- 11 -

testimony that some or all of the alleged misrepresentations and omissions were not material and without the mental state necessary to satisfy the scienter requirement.

### b.        Risks in Establishing Damages

Even if Plaintiffs were successful in proving liability, one of the other major issues and risks going forward would have been Plaintiffs' ability to prove loss causation and damages.  The Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), and the subsequent cases interpreting *Dura* have made proving loss causation even more difficult and uncertain than it was in the past.[6]  *See, e.g.*, *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss causation would be complex and difficult.").  As a preliminary matter, Defendants contend that while Emergent's stock price declined on June 22, 2016, that decline does not give rise to liability because it was attributable to uncertainty and not fraud, as the price and the delivery schedule for BioThrax under the follow-on contract had not yet been determined and the Company had not yet been awarded a contract for its next-generation anthrax vaccine.  Goldstein Decl., ¶64.  Defendants argued that on June 21, 2016, the Government was simply making preliminary announcements and the terms of the eventual follow-on BioThrax Contract, including an increased price for BioThrax and a front-loaded schedule, were positive developments for the Company.  *Id.*  Defendants would also claim at trial that when the full terms of the follow-on BioThrax Contract were announced on

---

[6]        Three cases illustrate this point.  In *In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-Civ, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011), *aff'd sub. nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), the court granted defendants' judgment as a matter of law on the basis of loss causation, overturning a jury verdict and award that had been in plaintiff's favor.  In *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010), the Ninth Circuit upheld the district court's decision to grant summary judgment in defendants' favor holding that shareholder plaintiffs failed to present sufficient evidence to establish loss causation under Rule 10b-5.  While the Ninth Circuit ultimately reversed the decision nearly two years later, the court in *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010), on a motion for judgment as a matter of law, overturned a jury verdict in favor of shareholders based on insufficient evidence presented at trial to establish loss causation.

December 8, 2016, along with the terms of a new contract for NuThrax, the Company's stock price increased substantially, more than making up for the decline on June 22, 2016.  *Id.*

While Plaintiffs and their counsel believe that they could establish loss causation for the entire class period, which includes the portion dismissed by the Court in its order granting class certification, the determination of loss causation and damages is a complicated and uncertain process involving conflicting expert testimony.[7]  Expert testimony could rest on many subjective assumptions, any of which could be rejected by a jury as speculative or unreliable.  Plaintiffs would have likely faced another motion by Defendants to preclude Plaintiffs' damages expert's testimony under the *Daubert* test and risked a decision that a damage model might not be admissible in evidence.  Moreover, the loss causation and damages assessments of Plaintiffs' and Defendants' experts were sure to vary substantially and, in the end, this crucial element at trial would be reduced to a "battle of the experts."  The reaction of a jury to such expert testimony is highly unpredictable and "[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants," and find that there were no damages or only a fraction of the amount of damages Plaintiffs contended.  *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001).

While it is likely that Plaintiffs could present evidence at trial that the aggregate damages exceed the amount of the Settlement, that assumes that most, if not all, of the significant liability and damage issues would have been resolved in the Settlement Class' favor.  Even if Plaintiffs prevailed and obtained a substantial judgment after trial, there is little doubt that Defendants would have appealed.  The appeals process would have likely spanned several years, during which the

---

[7]     There was also no guarantee that the Court would grant a motion, if one was made, for leave to file a Second Amended Complaint to add detailed allegations to extend the class period to January 11, 2016-June 21, 2016, as originally pled.

Settlement Class would have received no distribution on any damage award.  In addition, an appeal of any verdict would carry the risk of reversal, in which case the Settlement Class would receive no recovery after having prevailed on the claims at trial.  Even if all went in Plaintiffs' favor, there is no guarantee that Defendants would be in a position to pay any judgment.

### c.        Certainty of a Recovery

Although Lead Counsel believes that the case is meritorious, its experience has taught it how the above-mentioned factors can make the outcome of a trial extremely uncertain.  Courts have long recognized that shareholder litigation is notably difficult and extremely uncertain.  *See S.C. Nat'l Bank*, 139 F.R.D. at 340.  Even if Plaintiffs were to prevail at trial, risks to the Settlement Class remain.[8]

The $6.5 million Settlement, at this juncture, results in an immediate, substantial, and tangible recovery.  *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").  This recovery amounts to nearly 25% of maximum estimated damages of $25 million for the certified class period (May 5, 2016-June 21, 2016).  Goldstein Decl., ¶7.  This percentage recovery far exceeds the median for settlements in the Fourth Circuit from 2008 through 2017 (1.8%).  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements:  2017 Review and Analysis* at 20, App. 3 (Cornerstone Research 2018) (attached as Exhibit 1 to the Goldstein Declaration).  Consideration of this factor supports approval of the Settlement.

---

[8]     *See Hubbard*, 688 F.3d 713 (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict for defendants).  Further, a successful jury verdict does not eliminate the risk to the class.  *See Robbins v. Koger Props.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict for securities fraud); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *4 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

- 14 -

Therefore, careful consideration of the above supports approval of the Settlement as adequate.

### 2. The Complexity, Length, and Expense of Further Litigation Support Approval of the Settlement

Securities class actions are extremely complex, time consuming, and expensive. Courts have repeatedly noted that "'[s]tockholder litigation is notably difficult and notoriously uncertain.'" *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 529 (E.D. Pa. 1990) (citation omitted). Indeed, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

There is no question that this case involves complex factual and legal issues and if not for this Settlement, the case would have continued to be fiercely contested by all parties. The parties would complete a lengthy, extensive, and time-consuming discovery program involving a review and analysis of documents from Defendants and third parties. Plaintiffs would also have to finish an extensive deposition program. The parties would also have to complete expert discovery, involving both the preparation of experts' reports and the depositions of the various experts. Trial of this matter would take several weeks and consume considerable judicial and financial resources. Additionally, even if Plaintiffs could recover a larger judgment after trial, the additional delay, through trial, post-trial motions, and the appellate process, could last for years.

Approval of the Settlement will mean a present and certain recovery for eligible claimants. This Settlement avoids the expenditure of substantial resources and provides an expeditious means of recovery for the Settlement Class without years of delays due to trial and the post-trial appellate process. A prolonged period of pretrial proceedings and a lengthy and uncertain trial would not serve the interest of the Settlement Class in light of the monetary benefits provided for by the

Settlement when weighed against the likelihood of a larger recovery after continued litigation.  Thus, the prospect of continued protracted expensive and uncertain litigation strongly supports approval of the Settlement.

### 3.    The Degree of Opposition to the Settlement

The attitude of class members, as either expressed or by failure to object after notice of the settlement, is a factor to be considered by the court.  *Flinn*, 528 F.2d at 1173.  "A lack of objections to settlement by class members and opt-outs from the class demonstrates low opposition and weighs in favor of approving a settlement."  *Genworth*, 210 F. Supp. 3d at 842.  To date, over 5,300 Notice Packages were mailed to potential Settlement Class Members and nominees.  Mailing Decl., ¶¶6-12. While the time period for objecting to the Settlement – December 26, 2018 – has not yet passed, as of the date of this filing, Lead Counsel has not received a single objection.  Importantly, the Plaintiffs' "active participation" in the negotiating process further weighs in favor of approving the Settlement.  *Genworth*, 210 F. Supp. 3d at 842.  The overwhelming approval by Settlement Class Members is an important factor in evaluating the fairness, reasonableness, and adequacy of the Settlement and supports approval by the Court.

## IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

The Plan of Allocation establishes the method by which the Net Settlement Fund will be distributed to Settlement Class Members who submit valid Proofs of Claim.  The Plan of Allocation, which was set forth in full in the Notice mailed to Settlement Class Members and can be found in paragraph 78 of the Goldstein Declaration, will distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a result of their purchase or acquisition of Emergent common stock during the Settlement Class Period and who submit valid claim forms. Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the

- 16 -

Federal Rules of Civil Procedure is governed by the same standard of review applicable to the settlement as a whole – the plan must be fair and adequate. *See Genworth*, 210 F. Supp. 3d at 842-43; *In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2011 U.S. Dist. LEXIS 155045, at *30-*31 (W.D.N.C. Oct. 24, 2011). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009) ("given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis").

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). The proposed Plan of Allocation here distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants. *See* Notice (ECF No. 101-2) at 16-21. "The plan accounts for when claimants purchased their securities and for how long they held the stock, considerations that have been approved by courts in this district." *Genworth*, 210 F. Supp. 3d at 843; *see also In re NeuStar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 U.S. Dist. LEXIS 165320, at *18 (E.D. Va. Dec. 8, 2015). Moreover, there is no requirement that a settlement must benefit all class members equally. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000) (same); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly).

- 17 -

The decisions cited above acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into consideration the strength of claims based on available evidence. Here, Lead Counsel, in conjunction with its damages consultant, drafted a Plan of Allocation that would result in a fair distribution of the available Settlement proceeds based on Plaintiffs' theory of damages and taking into account that the Court certified a shorter class period than the one sought by Plaintiffs. *See* Goldstein Decl., ¶78, n.7. Lead Counsel believes that the Plan of Allocation will equitably apportion the net settlement proceeds among all eligible Settlement Class Members. Notably, no objections to the Plan of Allocation have been filed.

## V.       NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice to the Settlement Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). "'The Rule 23(e) notice is designed to summarize the litigation and the settlement and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation."'" *Dartell v. Tibet Pharms., Inc.*, No. 14-3620, 2017 U.S. Dist. LEXIS 100872, at *7 (D.N.J. June 29, 2017) (citation omitted).

Both the substance of the Notice and the method of its dissemination to potential Settlement Class Members satisfied these standards. The Court-approved Notice includes all the information required by Fed. R. Civ. P. 23(c)(2)(B) and the PSLRA, 15 U.S.C. §78u-4(a)(7), including: (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) an explanation of the reasons why the parties are proposing the Settlement; (vi) a statement

- 18 -

indicating the attorneys' fees and expenses that will be sought; (vii) a description of Settlement Class Members' right to opt out of the Settlement Class or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses, including an award to the Plaintiffs for their time and expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members.

As noted above, in accordance with the Court's Preliminary Approval Order, Gilardi & Co., LLC ("Gilardi"), the Court-appointed Claims Administrator, commenced the mailing of the Notice Package to potential Settlement Class Members, brokers, and nominees on November 16, 2018.  *See* Mailing Decl., ¶¶6-11.  As of November 20, 2018, over 5,300 copies of the Notice Package have been mailed.  *Id.*, ¶12.  Gilardi will also cause the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire* on November 21, 2018.  *Id.*, ¶13.  Additionally, on November 16, 2018, Gilardi posted copies of the Notice, Proof of Claim, Stipulation, Preliminary Approval Order, and the memorandum in support of preliminary approval of settlement on the website maintained for the Settlement.  *Id.*, ¶15.  This combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *Reed*, 2016 U.S. Dist. LEXIS 187745, at *6.

## VI.    CONCLUSION

This Settlement is a very favorable recovery for the Settlement Class, given the presence of skilled counsel for all parties, the complexity of the facts at issue, further substantial expense if this Litigation were to continue, the risks attendant to continued litigation, and the arm's-length negotiations assisted by an experienced and highly regarded mediator.  Therefore, for the reasons

- 19 -

discussed herein, in the Goldstein Declaration, and in the other declarations submitted in support of

this Motion, Plaintiffs respectfully request this Court approve the Settlement of this Litigation and

the Plan of Allocation as fair, reasonable, and adequate.

DATED: November 20, 2018                    Respectfully submitted,

                                            _____/s/ Jonah H. Goldstein_____
                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                            ELLEN GUSIKOFF STEWART
                                            (admitted *Pro Hac Vice*)
                                            JONAH H. GOLDSTEIN
                                            (admitted *Pro Hac Vice*)
                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)
                                            jonahg@rgrdlaw.com

                                            ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                            SAMUEL H. RUDMAN
                                            (admitted *Pro Hac Vice*)
                                            FRANCIS P. KARAM
                                            (admitted *Pro Hac Vice*)
                                            ROBERT D. GERSON
                                            (admitted *Pro Hac Vice*)
                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            srudman@rgrdlaw.com
                                            fkaram@rgrdlaw.com
                                            rgerson@rgrdlaw.com

                                            *Lead Counsel for Plaintiffs and Proposed*
                                            *Class Counsel*

                                            BROWN, GOLDSTEIN LEVY, LLP
                                            DANA W. McKEE (04447)
                                            120 E. Baltimore Street, Suite 1700
                                            Baltimore, MD 21202
                                            Telephone:  410/962-1030
                                            410/385-0869 (fax)
                                            dwm@browngold.com

                                            *Local Counsel for Plaintiffs*

- 20 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 20, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Jonah H. Goldstein
JONAH H. GOLDSTEIN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: JonahG@rgrdlaw.com

# Mailing Information for a Case 8:16-cv-02625-RWT City of Cape Coral Municipal Firefighters' Retirement Plan et al v Emergent Biosolutions, Inc., HQ et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Robert D Gerson**
  rgerson@rgrdlaw.com

- **Jonah H Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com,ldeem@rgrdlaw.com

- **Francis P Karam**
  fkaram@rgrdlaw.com

- **Dana Whitehead McKee**
  dwm@browngold.com,kgates@browngold.com,dcaimona@browngold.com

- **Mark T Millkey**
  mmillkey@rgrdlaw.com,e_file_ny@rgrdlaw.com,1781895420@filings.docketbird.com,e_file_sd@rgrdlaw.com

- **Yosef J. Riemer**
  yosef.riemer@kirkland.com,kenymanagingclerk@kirkland.com,ecf-0034f2ed07b9@ecf.pacerpro.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Solum**
  msolum@kirkland.com

- **Ellen Gusikof Stewart**
  elleng@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`