UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| WILLIAM SPONN, Individually and on Behalf of All Others Similarly Situated, | )  No. 8:16-cv-02625-RWT |
| )  | |
| Plaintiff, | )  <u>CLASS ACTION</u> |
| )  | |
| vs. | )  |
| )  | |
| EMERGENT BIOSOLUTIONS INC., et al., | )  |
| )  | |
| Defendants. | )  |
| )  | |

MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS
PURSUANT TO 15 U.S.C. §78u-4(a)(4)

1501994_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................................1

II.    ARGUMENT .........................................................................................................5

       A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate
             Method for Awarding Attorneys' Fees in Common Fund Cases ...........5

       B.    Lead Counsel's Fee Request Is Reasonable Under Fourth Circuit Criteria............8

             1.    The Time and Labor Involved in Obtaining the Settlement
                   Supports the Fee Request.................................................................9

             2.    The Novelty and Difficulty of the Questions Presented Supports
                   the Requested Fee .........................................................................10

             3.    The Skill Requisite to Perform the Legal Service Properly
                   Supports the Requested Fee ...........................................................13

             4.    The Customary Fee and Awards in Similar Cases Supports the
                   Requested Fee ...............................................................................14

             5.    The Contingent Nature of Lead Counsel's Representation Supports
                   the Requested Fee .........................................................................15

             6.    The Amount Involved and the Results Obtained Support Lead
                   Counsel's Fee Request....................................................................16

             7.    The Experience, Reputation, and Ability of Lead Counsel Supports
                   the Fee Request ..............................................................................17

             8.    The Undesirability of the Case Supports the Requested Attorneys'
                   Fees and  Expenses ........................................................................17

       C.    The Reaction of the Settlement Class Confirms that the Requested Fee Is
             Reasonable .......................................................................................18

       D.    Lead Counsel's Reasonable Expenses Were Necessarily Incurred and
             Should Be Awarded ..........................................................................18

III.   PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF REASONABLE
       COSTS AND EXPENSES.....................................................................................19

IV.    CONCLUSION.....................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...................................................................2

*Barber v. Kimbrell's*,
577 F.2d 216 (4th Cir. 1978) ............................................................8, 18

*Blum v. Stenson*,
465 U.S. 886 (1984) ..........................................................................5, 6

*Brown v. Phillips Petroleum Co.*,
838 F.2d 451 (10th Cir. 1988) ...........................................................6, 8

*Burges v. BancorpSouth, Inc.*,
No. 3:14-cv-01564, slip op.
(M.D. Tenn. Sept. 21, 2018) ...............................................................14

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ..............................................................6

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885) ..............................................................................5

*Deem v. Ames True Temper, Inc.*,
No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981
(S.D. W. Va. May 23, 2013) .............................................................7, 14

*Edmonds v. United States*,
658 F. Supp. 1126 (D.S.C. 1987) ........................................................13

*Epstein v. World Acceptance Corp.*,
No. 6:14-cv-01606-MGL, slip op.
(D.S.C. Dec. 18, 2017) .........................................................................20

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) .................................................................6

*Hackworth v. Telespectrum Worldwide, Inc.*,
No. 3:04-cv-1271, slip op.
(S.D. W. Va. Aug. 3, 2006) ...................................................................14

*Hardwick v. Rent-A-Center, Inc.*,
No. 3:06-cv-00901, slip op.
(S.D. W. Va. Feb. 3, 2009) ...................................................................14

- ii -

**Page**

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ..................................................................................6

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ....................................................................................19

*Helmick v. Columbia Gas Transmission*,
  No. 2:07-cv-00743, 2010 U.S. Dist. LEXIS 65808
  (S.D. W. Va. July 1, 2010)......................................................................................14

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...............................................................................................16

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792
  (S.D.N.Y. Oct. 24, 2005) .......................................................................................20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...............................................................................16

*In re aaiPharma Inc. Sec. Litig.*,
  No. 7:04-CV-27-D, slip op.
  (E.D.N.C. Oct. 2, 2007) .........................................................................................14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).....................................................................................4

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ...................................................................................6

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ............................................................. *passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)......................................................................................7

*In re King Res. Co. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976).........................................................................16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546
  (S.D.N.Y. Dec. 23, 2009) .......................................................................................20

- iii -

*In re Merry-Go-Round Enters.*,
  244 B.R. 327 (D. Md. 2000) ...................................................................................14

*In re MGM Mirage Sec. Litig.*,
  No. 2:09-cv-01558-GMN-VCF, slip op.
  (D. Nev. Mar. 1, 2016) .........................................................................................20

*In re Microstrategy, Inc.*,
  172 F. Supp. 2d 778 (E.D. Va. 2001) ...................................................................18

*In re Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ...........................................................................10

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................................................20

*In re PEC Sols., Inc. Sec. Litig.*,
  418 F.3d 379 (4th Cir. 2005) .................................................................................11

*In re Red Hat, Inc. Sec. Litig.*,
  No. 5:04-CV-473-BR, 2010 U.S. Dist. LEXIS 131249
  (E.D.N.C. Dec. 10, 2010) ......................................................................................20

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza
Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) .....................................................................................7

*In re Veeco Instruments Sec. Litig.*,
  No. 05-MD-01695(CM), 2007 U.S. Dist. LEXIS 85554
  (S.D.N.Y. Nov. 7, 2007) .........................................................................................9

*In re ViroPharma Inc. Sec. Litig.*,
  No. 12-2714, 2016 U.S. Dist. LEXIS 8626
  (S.D.N.Y. Jan. 25, 2016) ....................................................................................4, 9

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)
  *aff'd*, 798 F.2d 35 (2d Cir. 1986) .........................................................................13

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) .....................................................................5

*In re Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................................16

**Page**

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ...........................................................................8, 10

*Jones v. Dominion Res. Servs.*,
  601 F. Supp. 2d 756 (S.D. W. Va. 2009) ...........................................................9

*Kay Co. v. Equitable Prod. Co.*,
  749 F. Supp. 2d 455 (S.D. W. Va. 2010) ...........................................................9

*KBC Asset Mgmt. NV v. 3D Systems Corp.*,
  No. 0:15-cv-02393-MGL, 2018 WL 3105072
  (D.S.C. June 25, 2018).......................................................................................20

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ..............................................................................6

*Lamden Partners Inc. v. The Blackstone Grp. L.P.*,
  No. 08-cv-03601-HB-FM, slip op.
  (S.D.N.Y. Dec. 18, 2013) ..................................................................................14

*Millsap v. McDonnell Douglas Corp.*,
  No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223
  (N.D. Okla. May 28, 2003) ................................................................................17

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006)........................................................................19

*Phillips v. Triad Guar., Inc.*,
  No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950
  (M.D.N.C. May 9, 2016) ...............................................................................7, 15

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) .........................................................................16

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077
  (N.D. Tex. Nov. 8, 2005) ...................................................................................13

*Shaw v. Toshiba Am. Info. Sys.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000)...................................................................7

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
  890 F. Supp. 499 (E.D. Va. 1995) .......................................................................8

**Page**

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ................................................................6

*The Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 3:02-cv-1152-M, slip op.
    (N.D. Tex. Apr. 25, 2018) ..................................................................14

*Trs. v. Greenough*,
    105 U.S. 527 (1882) ............................................................................5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b) ................................................................................................11
    §78u-4 .................................................................................................2
    §78u-4(a)(4) ...................................................................................1, 19
    §78u-4(a)(6) ........................................................................................5

Federal Rules of Civil Procedure
    Rule 23(f) .........................................................................................3, 9

**SECONDARY AUTHORITIES**

Charles Silver, *Due Process and the Lodestar Method:*
    *You Can't Get There from Here*,
    74 Tul. L. Rev. 1809 (2000) ................................................................7

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
    108 F.R.D. 237 (Oct. 8, 1985) ............................................................6

*Manual for Complex Litigation* (4th ed. 2004)
    §14.121 ...............................................................................................6

## I.     INTRODUCTION

Lead Counsel's vigorous efforts in this Litigation have resulted in a settlement of $6.5 million in cash.  In recognition of these efforts, Robbins Geller respectfully requests an award of attorneys' fees of 33% of the Settlement Amount plus payment of litigation expenses of $233,426.78, plus interest on both amounts at the same rate and for the same period of time as that earned on the Settlement Fund until paid.  The $6.5 million all-cash recovery obtained for the Settlement Class was achieved through the skill, experience, and effective advocacy of Lead Counsel in the face of considerable risk and opposition from highly experienced and skilled defense counsel.[1] Robbins Geller's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved.[2]  In addition, Plaintiffs City of Cape Coral Municipal Firefighters' Retirement Plan ("Cape Coral Fire"), City of Sunrise Police Officers' Retirement Plan ("Sunrise Police") and Class Representative Geoffrey L. Flagstad ("Flagstad") seek a total of $48,063.81 for reimbursement of their time and expenses incurred in their representation of the Settlement Class.

The requested percentage fee is consistent with the fees awarded in similar actions in this Circuit and decisions throughout the country and is the appropriate method of compensating counsel.

---

[1]     Unless otherwise defined, all capitalized terms shall have the same meanings contained in the Stipulation of Settlement.  ECF No. 101.

[2]     Submitted herewith in support of approval of the proposed Settlement is the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (the "Settlement Memorandum") and the Declaration of Jonah H. Goldstein in Support of Plaintiffs' Motion for (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Goldstein Decl."), which more fully describes the history of the Litigation, the claims asserted, the investigation undertaken, the negotiation and substance of the Settlement, the substantial risks of the Litigation, and the reasonableness of the fee request.  Also submitted herewith is the declaration from Lead Counsel setting forth its time and expenses incurred in prosecuting the Litigation (the "Robbins Geller Fee Declaration"), and the Declarations of Damon Alimonti on behalf of City of Cape Coral Municipal Firefighters' Retirement Plan ("Cape Coral Fire Decl."), David M. Williams on behalf of City of Sunrise Police Officers' Retirement Plan ("Sunrise Police Decl.") and Geoffrey L. Flagstad ("Flagstad Decl.") (collectively, "Plaintiffs Decls.").

The amount requested is especially appropriate here in light of the favorable and certain recovery obtained for the Settlement Class under difficult and challenging circumstances, the efforts of counsel in obtaining this favorable result, and the significant obstacles and risk presented in bringing and prosecuting this Litigation against Defendants.  Importantly, the fee has been approved by Plaintiffs.  *See* Cape Coral Fire Decl., ¶7; Sunrise Police Decl., ¶7; and Flagstad Decl., ¶16.

The Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, and, therefore, was extremely risky and difficult.  The effect of the PSLRA is to make it harder for investors to successfully resolve securities class actions. Plaintiffs and their counsel were mindful of the fact that in this post-PSLRA environment, a greater percentage of cases are being dismissed than ever before amid defendants' constant attempts to push the envelope and contours of the PSLRA.  As the Fifth Circuit noted: "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Notwithstanding the significant challenges inherent in this Litigation, Lead Counsel undertook the representation of the Settlement Class on a contingent fee basis and no payment has been made to it to date for its services or for the litigation expenses incurred on behalf of the Settlement Class.  Robbins Geller, which has extensive experience and expertise in prosecuting securities class actions, firmly believes that the Settlement is the result of its diligent and effective advocacy, as well as its reputation as attorneys who are unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals.  In this case, which asserted claims based on complex legal and factual issues that were vigorously opposed by skilled and experienced defense counsel, Lead Counsel was able to

- 2 -

secure a very good result for the Settlement Class.  As a result, Lead Counsel submits that the requested fee is fair and reasonable and should be awarded by this Court.

In addition to the significant risks and obstacles presented, the prosecution of the Litigation required an extensive effort by Robbins Geller, who marshaled considerable resources and committed substantial amounts of time and expenses in the prosecution of this Litigation.  Indeed, by the time the Settlement was reached, Lead Counsel, among other things, had conducted an extensive investigation into the underlying facts and thoroughly researched the law pertinent to Settlement Class Members' claims and the Defendants' defenses.  Lead Counsel also prepared and filed a detailed Amended Complaint for Violations of the Federal Securities Laws ("Complaint") specifying Defendants' alleged violations of the federal securities laws; successfully opposed Defendants' motion to dismiss the Complaint; obtained class certification over Defendants' determined opposition and Defendants' *Daubert* challenges to Plaintiffs' market efficiency, causation and damages expert; successfully defeated Defendants' Rule 23(f) petition in the United States Court of Appeal for the Fourth Circuit; vigorously pursued document discovery from Defendants and third parties, ultimately receiving over 93,000 pages of documents; conducted three fact depositions; worked with Plaintiffs' expert to submit his report on loss causation and damages in connection with Plaintiffs' class certification motion; defended the depositions of Plaintiffs and their expert; and prepared to take the remaining fact depositions.  Lead Counsel also prepared opening and reply mediation briefs and attended a mediation session with Jed Melnick, Esq. of JAMS, an experienced mediator of complex issues such as this one.  In total, Lead Counsel and its paraprofessionals spent over 4,800 hours in prosecuting this Litigation with a resulting lodestar of over $3.1 million.  As a result, the requested fee of 33% of the Settlement Amount, or $2,145,000, represents a significantly negative multiple of counsel's lodestar.

- 3 -

For the reasons set forth herein, as well as in the Settlement Memorandum, the Goldstein Declaration, and the Plaintiff Declarations, Lead Counsel respectfully submits that the attorneys' fees requested are fair and reasonable under the applicable legal standards and in light of the contingency risk undertaken, the diligent efforts of counsel in prosecuting this Litigation on behalf of the Settlement Class and the substantial and certain benefits obtained, and therefore should be awarded by the Court.[3]  Moreover, the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of the Litigation.  Finally, Plaintiffs Cape Coral Fire, Sunrise Police, and Class Representative Flagstad should be awarded $820, $14,543.81 and $32,700, respectively, for their time spent representing the interests of the Settlement Class.

Members of the Settlement Class appear to agree that the requested fees and expenses are reasonable.  In accordance with this Court's Amended Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order") (ECF No. 106), to date over 5,300 copies of the Amended Notice of Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release ("Proof of Claim") (together, the "Notice Package") were sent to potential Settlement Class Members and nominees.[4]  The Notice informed Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees not to exceed 33% of the Settlement Amount plus expenses not to exceed

---

[3]     As previously noted, the requested fee has been approved by the Plaintiffs.  *See* Cape Coral Fire Decl., ¶7; Sunrise Police Decl., ¶7; and Flagstad Decl., ¶16.  Plaintiffs have evaluated the request for fees and expenses and have come to the conclusion that the requests are warranted based on their substantial involvement in the prosecution of the Litigation.  Plaintiffs also considered Lead Counsel's substantial efforts in obtaining the recovery, particularly in light of the substantial risks of litigation.  *Id.*  As a result, the fee result is entitled to a "presumption of reasonableness."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001); *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *46-*47 (S.D.N.Y. Jan. 25, 2016) ("Where the Lead Plaintiff approves the Lead Plaintiff's counsel's request[ed] fee award – as Lead Plaintiff does here – the Court should afford the fee requested a presumption of reasonableness.").

[4]     *See* paragraphs 6-12 of the Declaration of Carole K. Sylvester Regarding Class Action Fairness Act Notification, Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Mailing Decl."), submitted herewith.

$300,000, plus interest on such amounts.  The Notice also informed Settlement Class Members that Plaintiffs may seek reimbursement for their time and expenses incurred in representing the Settlement Class in an amount not to exceed $50,000 in the aggregate.  Although the time to object to counsel's fees and expenses has not yet expired, to date, not a single objection to Lead Counsel's request has been filed.

## II.     ARGUMENT

### A.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a common fund for the benefit of the Settlement Class, Robbins Geller seeks a reasonable percentage of the fund recovered as attorneys' fees.  Over the last few decades, the percentage method of awarding fees has become an accepted method, if not the prevailing method, for awarding fees in common fund cases throughout the United States.  This is particularly true in securities fraud class actions, where the PSLRA dictates that attorneys' fees shall not exceed a "reasonable percentage" of the damages recovered for the class.  15 U.S.C. §78u-4(a)(6).[5]

A percentage fee award is also appropriate because it encourages counsel to obtain the maximum recovery for the class at the earliest possible stage of the litigation and, hence, most fairly correlates plaintiffs' counsel's compensation to the benefit achieved for the class.  This rule, known as the common fund doctrine, is firmly rooted in U.S. case law.  *See, e.g.*, *Trs. v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).  In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class."  *Id.* at 900 n.16.  The

---

[5]     *See also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (the PSLRA contemplates that "the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

- 5 -

percentage-of-recovery method is the only method expressly approved by the Supreme Court in common fund cases. Moreover, supporting authority for the percentage method in federal courts throughout the United States is overwhelming.[6] The *Manual for Complex Litigation* also endorses the use of the percentage-of-the-fund method in awarding attorneys' fees in common fund cases. *See Manual for Complex Litigation* §14.121, at 187 (4th ed. 2004) (commenting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases") (footnotes omitted).

The rationale for compensating counsel in common fund cases on a percentage basis is sound. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[7] Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[8] Indeed, one of the nation's leading

---

[6]     Courts favor the percentage-of-recovery approach for the award of attorneys' fees in common fund cases. Two Circuits have ruled that the percentage method is mandatory in common fund cases. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). Other Circuits and commentators have expressly approved the use of the percentage method. *See Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) (authorizing percentage method and holding that use of lodestar/multiplier method was abuse of discretion); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing *Blum*, 465 U.S. at 900 n.16, recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (Oct. 8, 1985).

[7]     Courts are encouraged to look to the private marketplace in setting a percentage fee:

> The judicial task might be simplified if the judge and the lawyers [spent] their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character.

*In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).

[8]     In *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), the court stated:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client

- 6 -

scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights. Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000).

Numerous courts have criticized the lodestar method for encouraging plaintiffs' attorneys to needlessly drag out complex litigations for years in order to run up "lodestar" hours, even when their clients' and the class' interests would be much better served by an earlier, more efficient settlement of a case based on arm's-length negotiations conducted by experienced counsel.[9]

Importantly, it is generally accepted in the Fourth Circuit that there is a preference for awarding attorneys' fees based on a common fund recovery pursuant to the percentage-of-the-fund method of calculation. *See, e.g.*, *Phillips v. Triad Guar., Inc.*, No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *6 (M.D.N.C. May 9, 2016) ("'[o]verwhelmingly,' courts prefer the percentage method . . . , in part because the percentage method closely associates the attorneys' fees with the overall result achieved") (citations omitted); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981, at *10 (S.D. W. Va. May 23, 2013). Percentage-of-recovery fees also

---

gains. . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. . . .

At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

[9]     *See, e.g.*, *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (noting that lodestar method has been criticized for giving plaintiffs' counsel "the incentive to delay settlement in order to run up fees"); *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (lodestar method creates "'a disincentive for the early settlement of cases'") (citation omitted); *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) ("Again, simply put, the lodestar method rewards plodding mediocrity and penalizes expedient success.").

- 7 -

have the salutary effect of conserving judicial resources. Percentage fees are simple to calculate, are not subject to manipulation, and do not require the court to "second guess" each and every decision made by counsel during the course of a complex case. *See Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases").

**B.      Lead Counsel's Fee Request Is Reasonable Under Fourth Circuit Criteria**

Lead Counsel requests a fee representing 33% of the Settlement Amount, plus $233,426.78 for expenses incurred in the prosecution of the Litigation, plus interest on both amounts. These requests are fair and reasonable under the relevant standards. To determine the reasonableness of the percentage fee award sought by Lead Counsel in this action, this Court may elect to apply all or some of the factors that the Fifth Circuit announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which were adopted by the Fourth Circuit in *Barber v. Kimbrell's*, 577 F.2d 216, 226 (4th Cir. 1978). The relevant factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case: (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Notably, it is widely recognized that "rarely are all of the *Johnson* factors applicable." *Phillips Petroleum*, 838 F.2d at 456.[10]

As described below, an analysis of the applicable factors supports the requested fee.

---

[10]      The following factors do not pertain to this Litigation: preclusion of other employment; time limitations imposed by the client or the circumstances; and the nature and length of the professional relationship with the client. Thus, Lead Counsel will not analyze these factors.

### 1.   The Time and Labor Involved in Obtaining the Settlement Supports the Fee Request

Lead Counsel marshaled considerable resources and time in the research, investigation, and prosecution of this Litigation on behalf of the Settlement Class.  The Settlement was only reached after counsel, among other things: (a) conducted an extensive investigation into the underlying facts, including all the allegations set forth in the Complaint; (b) thoroughly researched the law pertinent to Settlement Class Members' claims and the defenses likely to be raised by Defendants; (c) successfully opposed Defendants' motion to dismiss; (d) consulted with and provided the report of an expert on loss causation and damages; (e) obtained class certification over Defendants' vigorous opposition and successfully opposed Defendants' Rule 23(f) petition; (f) engaged in comprehensive discovery, including document production and depositions; and (g) engaged in arm's-length mediation with Jed Melnick, Esq. of JAMS.  Goldstein Decl., ¶5.  The Settlement was reached at a time when Plaintiffs and their counsel were fully cognizant of the strengths and weaknesses of the case, and the risks of continued litigation.  Lead Counsel and its paraprofessionals have expended over 4,800 hours in the prosecution of this Litigation with a resulting lodestar of more than $3.1 million, which represents a negative multiplier of approximately 0.69 to counsel's lodestar. *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *54 (where lodestar was 0.90, "[t]he lodestar cross-check confirms that the percentage-of-recovery method produces an appropriate recovery"); *In re Veeco Instruments Sec. Litig.*, No. 05-MD-01695(CM), 2007 U.S. Dist. LEXIS 85554, at *31-*32 (S.D.N.Y. Nov. 7, 2007) ("Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar.").  Indeed, a negative multiplier is well below multipliers typically awarded by courts within this Circuit. *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 470 (S.D. W. Va. 2010) ("Courts have

- 9 -

generally held lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee").

Counsel spent a significant amount of time and resources in representing the Settlement Class and it was only after Lead Counsel was satisfied that a $6.5 million settlement was a fair, reasonable and adequate result for the Settlement Class under the circumstances that the Settlement was entered into.  Here, Lead Counsel was aggressive, efficient, and successful, resulting in a favorable monetary recovery for the Settlement Class.  This factor therefore strongly supports approval of the requested fee.

> **2.     The Novelty and Difficulty of the Questions Presented Supports the Requested Fee**

Courts have long recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *See Johnson*, 488 F.2d at 718; *see also In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The very nature of a securities fraud case demands a difficult level of proof to establish liability.  Elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish. . . .  Proving damages further implicate[s] complex economic modeling at the hands of sophisticated experts, who, in order to ascertain the fluid and shifting effects of alleged widespread fraudulent reporting, necessarily engage[] in complex measurements of stock valuation and price movement."); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) (same).  While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action.  From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, with no assurance whatsoever that the Litigation would survive Defendants' attacks on the pleadings, motion(s) for summary judgment, trial, and appeal.

- 10 -

In order to succeed on the §10(b) claim, Plaintiffs have the substantial burden of proving, *inter alia*, that each Defendant was responsible for an omission or a misstatement that was material, that the omission or misstatement impacted the market price of Emergent common stock and caused damage to the Settlement Class, and that each Defendant acted with scienter. *See In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir. 2005). In cases of this complexity, success at summary judgment or at trial is never certain. Defendants challenged each element of Plaintiffs' §10(b) claim and were confident that Plaintiffs would not prevail against a summary judgment motion or at trial. For instance, Defendants consistently maintained that Defendants' statements regarding the BioThrax Contract were not actionable. Goldstein Decl., ¶61. In particular, Defendants argued that Mr. Abdun-Nabi's May 5, 2016 "big, beautiful package" statement amounts to nothing more than classic, inactionable puffery, because it did not mention an actual dose quantity, number, or range of BioThrax doses for the follow-on contract. *Id.* Defendants also pointed out that no securities analysts referenced Mr. Abdun-Nabi's "big, beautiful package" statement in their contemporaneously issued reports following Emergent's May 5, 2016 earnings call. *Id.* Thus, Plaintiffs faced the risk that the strongest statement in the case would be held inactionable at the summary judgment stage.

Defendants also would continue to challenge Plaintiffs' scienter allegations, maintaining that deposition and document discovery showed that no one at Emergent was aware of the Government's procurement requirements before the issuance of the Sole-Source Notification on June 21, 2016. *Id.*, ¶62. This apparent lack of knowledge, if proven by Defendants, would be fatal to Plaintiffs' claims.

Defendants likewise argued that the Individual Defendants' class period (May 5 – June 21, 2016) stock sales did not raise a strong inference of scienter. *Id.*, ¶63. In particular, Defendants claimed that: (i) all of the stock sales were made pursuant to non-discretionary Rule 10b5-1 trading

plans; and (ii) none of the Individual Defendants sold a significant percentage of their personally-held shares.  *Id*.

Defendants also argued, at both the motion to dismiss and class certification stages, that Plaintiffs could not establish loss causation or damages.  For example, Defendants have argued that while Emergent's stock price declined on June 22, 2016, that drop does not give rise to liability because it was attributable to uncertainty and not fraud, as the price and delivery schedule for BioThrax under the follow-on contract had not yet been determined, and the Company had not yet been awarded a contract for its next-generation anthrax vaccine. *Id*., ¶64.  Defendants argued that on June 21, 2016, the Government was simply making preliminary announcements and the terms of the eventual follow-on BioThrax Contract, including an increased price for BioThrax and a front-loaded schedule, were positive developments for the Company.  *Id*.  Defendants also contended that when the full terms of the BioThrax Contract were announced on December 8, 2016, along with a new contract for NuThrax, the Company's stock price increased substantially, more than making up for the June 22, 2016 decline.  *Id*.  Although Plaintiffs believe that the documentary and testimonial evidence they would offer at trial supports their claims, loss causation and resulting damages would certainly be subject to a "battle of experts," the outcome of which was uncertain.

Moreover, even if Plaintiffs were ultimately successful at summary judgment or trial, the Litigation would likely continue through one or more levels of appellate review.  Indeed, as one court has observed:

> Even a victory at trial is not a guarantee of ultimate success.  If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

1501994_1

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985) (citing numerous examples), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

Despite the novelty and difficulty of the issues raised, counsel secured a very favorable result for the Settlement Class under difficult and challenging circumstances. This factor supports the requested award.

### 3. The Skill Requisite to Perform the Legal Service Properly Supports the Requested Fee

This Settlement was achieved by Lead Counsel – some of the preeminent class action attorneys in the country – with decades of experience in prosecuting and trying complex class actions. *See* www.rgrdlaw.com. As the court recognized in *Edmonds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987), the "prosecution and management of a complex national class action requires unique legal skills and abilities." *Id.* at 1137. These unique skills were called upon here and support the requested fee. From the outset, Lead Counsel set out to obtain the maximum recovery for the Settlement Class. The recovery obtained for the Settlement Class is the direct result of the significant efforts of Lead Counsel, whose reputation as attorneys who will zealously carry a meritorious case through the trial and appellate levels enabled it to negotiate the favorable recovery for the Settlement Class under difficult and challenging circumstances. *Genworth*, 210 F. Supp. 3d at 844.

The quality of opposing counsel can also be important in evaluating the quality of plaintiffs' counsel's work. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *100 (N.D. Tex. Nov. 8, 2005) (weighing standing of opposing counsel when determining attorneys' fees "because such standing reflects the challenge faced by plaintiffs' attorneys"). Defendants are represented by highly skilled and capable counsel from Kirkland & Ellis LLP, a law firm with a well-deserved reputation for vigorous advocacy in the defense of complex securities

- 13 -

class actions such as this. The ability of Lead Counsel to obtain a favorable settlement for the Settlement Class in the face of such formidable opposition confirms the quality of its representation.

### 4. The Customary Fee and Awards in Similar Cases Supports the Requested Fee

Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable. *Genworth*, 210 F. Supp. 3d at 845. For example, in *Deem*, the court noted that "the one-third fee requested by counsel is very much in line with fee awards in similar common-fund cases." *Deem*, 2013 U.S. Dist. LEXIS 72981, at *16. The requested fee is also supported by the following fee awards within this Circuit: *In re aaiPharma Inc. Sec. Litig.*, No. 7:04-CV-27-D, slip op. (E.D.N.C. Oct. 2, 2007); *In re Merry-Go-Round Enters.*, 244 B.R. 327 (D. Md. 2000) (holding that 40% negotiated contingency fee on $185 million settlement was appropriate in bankruptcy context); *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743, 2010 U.S. Dist. LEXIS 65808, at *15 (S.D. W. Va. July 1, 2010) (awarding one-third of settlement fund in fees); *Hackworth v. Telespectrum Worldwide, Inc.*, No. 3:04-cv-1271, slip op. (S.D. W. Va. Aug. 3, 2006) (awarding fees of one-third of settlement, plus expenses); *Hardwick v. Rent-A-Center, Inc.*, No. 3:06-cv-00901, slip op. (S.D. W. Va. Feb. 3, 2009) (awarding fees of one-third of amount of settlement, plus expenses). Thus, the requested fee is consistent with customary contingent fees in the private marketplace and supports a fee award of 33%.

Courts in other circuits likewise regularly award fees of 33% or more in securities class actions where appropriate. *See, e.g.*, *Burges v. BancorpSouth, Inc.*, No. 3:14-cv-01564, slip op. (M.D. Tenn. Sept. 21, 2018) (awarding 33-1/3% of $13 million settlement fund, plus expenses); *The Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, slip op. (N.D. Tex. Apr. 25, 2018) (awarding 33-1/3% of $100 million settlement fund, plus expenses); *Lamden Partners Inc. v. The*

*Blackstone Grp. L.P.*, No. 08-cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013) (awarding 33-1/3% of $85 million recovery, plus expenses).

**5.      The Contingent Nature of Lead Counsel's Representation
Supports the Requested Fee**

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement. *Genworth*, 210 F. Supp. 3d at 844; *Phillips*, 2016 U.S. Dist. LEXIS 60950, at *19-*20.  Lead Counsel undertook to represent the Settlement Class on a contingent fee basis, assuming a risk that the Litigation would yield no recovery and leave it uncompensated.  Unlike counsel for Defendants who are paid an hourly rate and paid for their expenses on a regular basis, Lead Counsel has not been compensated for its time or expense in representing the Settlement Class.

Lead Counsel prosecuted this Litigation for over two years on a wholly-contingent basis and has borne all the possible risks, including surviving dispositive motions, obtaining class certification, proving liability, causation and damages, prevailing in the "battle of the experts," and litigating the case through trial and possible appeals.  Lead Counsel understood from the outset that it was embarking on a complex, expensive and potentially lengthy litigation, which could require the investment of a significant amount of money and attorney time, with no guarantee of ever being compensated for the investment of such time and money.  Lead Counsel also understood that Defendants were well-financed and would (and, in fact, did) retain a large and highly experienced corporate defense firm to mount a strong defense.  In undertaking this risk, Lead Counsel was obligated to, and did, ensure that sufficient resources were dedicated to the prosecution of this Litigation.

Defendants steadfastly maintained they did nothing actionable, and had litigation continued, they would have persisted in attacking the elements of Plaintiffs' claims, including falsity,

- 15 -

materiality, scienter, loss causation, and damages.  Indeed, the risk of no recovery in complex cases of this type is very real.  There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  As one court recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Even plaintiffs who get past summary judgment and succeed at trial may find their judgment overturned on appeal or on a post-trial motion.[11]

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort.  Lead Counsel committed significant resources of both time and money to the vigorous and successful prosecution of this action for the benefit of the Settlement Class.  The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 6. The Amount Involved and the Results Obtained Support Lead Counsel's Fee Request

Courts have consistently recognized that the result achieved is one of the most important factors to be considered in making a fee award.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

---

[11]    *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

- 16 -

Here, a favorable and certain recovery of $6,500,000 in cash has been obtained through the efforts of Lead Counsel without the substantial expense, delay, and uncertainty of continued litigation. Plaintiffs and their counsel stepped forward to represent the Settlement Class. But for Plaintiffs and their counsel's efforts, it is unlikely that a $6.5 million settlement would have been obtained for the benefit of the Settlement Class. As a result of this Settlement, Settlement Class Members who have suffered losses on their purchase or acquisition of Emergent common stock between January 11, 2016 and June 21, 2016, not only will receive this favorable recovery but will also realize that recovery in the near future instead of a recovery many years down the road or no recovery at all.

### 7. The Experience, Reputation, and Ability of Lead Counsel Supports the Fee Request

Lead Counsel's efforts in efficiently bringing this Litigation against Defendants to a successful conclusion are the best indicator of the experience and ability of the attorneys involved. That Lead Counsel has managed the Litigation in a disciplined and pragmatic fashion confirms that this Litigation was ably prosecuted for the benefit of the Settlement Class. As discussed above, Lead Counsel is well regarded nationally and internationally for its successful representation of clients in complex class action matters. This factor supports the requested fee.

### 8. The Undesirability of the Case Supports the Requested Attorneys' Fees and Expenses

Class action cases have often been recognized as "undesirable" due to the financial burden on counsel, and the time demands of litigating class actions of this size and complexity. *See, e.g.,* *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *41 (N.D. Okla. May 28, 2003) ("This case is . . . undesirable, in the way that all contingent fee cases are undesirable, because it produced no income, but has required significant expenditures . . . .").

- 17 -

This was never an easy case and the risk of no recovery was always high.  When counsel undertook representation of Plaintiffs and the Settlement Class here, it was with the knowledge that it would have to spend substantial time and money and face significant risks without any assurance of being compensated for its efforts.  This "undesirability" of the litigation supports the requested percentage.

### C.     The Reaction of the Settlement Class Confirms that the Requested Fee Is Reasonable

Over 5,300 copies of the Notice Package were mailed to potential Settlement Class Members and nominees.[12]  Settlement Class Members were informed in the Notice that Lead Counsel would move the Court for attorneys' fees in an amount not to exceed 33% of the Settlement Amount and for payment of expenses in an amount not to exceed $300,000, plus interest on such amounts. Settlement Class Members were also advised of their right to object to the fee and expense request, and that such objections are required to be filed with the Court and served on counsel no later than December 26, 2018.  As of the date of this memorandum, not a single Settlement Class Member has objected to counsel's fee and expense request.[13]

As set forth herein, each of the applicable *Barber* factors supports the requested fee, and Lead Counsel respectfully requests that it be awarded in full.

### D.     Lead Counsel's Reasonable Expenses Were Necessarily Incurred and Should Be Awarded

Payment of reasonable costs and expenses to counsel who create a common fund is both necessary and routine.  *Genworth*, 210 F. Supp. 3d at 845; *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 791 (E.D. Va. 2001).  Payment of expenses like those requested here is routinely permitted.

---

[12]     *See* Mailing Decl., ¶12.

[13]     In accordance with the Court's Notice Order, Lead Counsel will address any objections in a reply brief to be filed on or before January 8, 2019.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.[14]

Counsel's expenses include the costs of an expert and other consultants, travel, mediating the Settlement Class' claims, and computerized research.  A complete breakdown of the expenses, which total $233,426.78, are documented in the Robbins Geller Fee Declaration, filed herewith. These expenses reflect reasonable costs expended for purposes of prosecuting this Litigation and thus should be paid.  Not a single objection to the expense amount set forth in the Notice has been received.  Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## III.   PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *See* 15 U.S.C. §78u-4(a)(4); *Genworth*, 210 F. Supp. 3d at 846.  Cape Coral Fire, Sunrise Police, and Flagstad request payments of $820, $14,543.81 and $32,700, respectively.  As set forth in the accompanying Plaintiff Declarations, Plaintiffs participated in this Litigation by (a) regularly consulting with counsel through written communications, telephone calls, and meetings; (b) reviewing pleadings filed in the case and various orders entered by the Court; (c) producing documents to the Defendants and providing deposition testimony; (d) reviewing mediation materials;

---

[14]    *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'") (citation omitted).

- 19 -

and (e) discussing the parameters for an appropriate resolution of the case and ultimately agreeing to the Settlement.  Cape Coral Fire Decl., ¶¶3-5; Sunrise Police Decl., ¶¶3-5; Flagstad Decl., ¶¶2-11.  These are precisely the types of activities that courts have found to support awards to lead plaintiffs, and in fact courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."  *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *see also KBC Asset Mgmt. NV v. 3D Systems Corp.*, No. 0:15-cv-02393-MGL, 2018 WL 3105072 (D.S.C. June 25, 2018); *Epstein v. World Acceptance Corp.*, No. 6:14-cv-01606-MGL, slip op. at 3 (D.S.C. Dec. 18, 2017); *Genworth*, 210 F. Supp. 3d at 846; *In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR, 2010 U.S. Dist. LEXIS 131249, at *4 (E.D.N.C. Dec. 10, 2010); *In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-VCF, slip op. at 2 (D. Nev. Mar. 1, 2016); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $214,657 to the lead plaintiffs in the action "to compensate them for their reasonable costs and expenses incurred in managing this litigation and representing the Class"); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2007) (finding it "appropriate to reimburse Lead Plaintiffs [a total of $29,913.80 to the four Lead Plaintiffs] for their reasonable costs and expenses").

The request by Plaintiffs is supported by sworn declarations, including a description of the hours directly dedicated to the Litigation, Cape Coral Fire Decl., ¶¶9-10; Sunrise Police Decl., ¶¶9-10; Flagstad Decl., ¶¶2-12, and should be granted.  There have been no objections to these requests.

1501994_1

## IV.    CONCLUSION

The 33% fee requested by Lead Counsel is reasonable under all applicable standards, is supported by the Plaintiffs, and there have been no objections to it submitted by Settlement Class Members.  Lead Counsel, therefore, respectfully requests that the Court award attorneys' fees of 33% of the Settlement Amount and expenses in the amount of $233,426.78, plus interest on both amounts at the same rate as earned by the Settlement Fund.  In addition, Cape Coral Fire, Sunrise Police, and Flagstad respectfully request that this Court award them $820, $14,543.81 and $32,700, respectively, for their time spent in representing the Settlement Class.

DATED:  November 20, 2018                    Respectfully submitted,

                                             _____/s/ Jonah H. Goldstein_____
                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             JONAH H. GOLDSTEIN
                                             (admitted *Pro Hac Vice*)
                                             ELLEN GUSIKOFF STEWART
                                             (admitted *Pro Hac Vice*)
                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)
                                             jonahg@rgrdlaw.com
                                             elleng@rgrdlaw.com

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             (admitted *Pro Hac Vice*)
                                             FRANCIS P. KARAM
                                             (admitted *Pro Hac Vice*)
                                             ROBERT D. GERSON
                                             (admitted *Pro Hac Vice*)
                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)
                                             srudman@rgrdlaw.com
                                             fkaram@rgrdlaw.com
                                             rgerson@rgrdlaw.com

                                             *Lead Counsel for Plaintiffs and Proposed*
                                             *Class Counsel*

- 21 -

1501994_1

BROWN, GOLDSTEIN LEVY, LLP
DANA W. McKEE (04447)
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Telephone:  410/962-1030
410/385-0869 (fax)
dwm@browngold.com

*Local Counsel for Plaintiffs*

- 22 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 20, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Jonah H. Goldstein
JONAH H. GOLDSTEIN

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  JonahG@rgrdlaw.com

# Mailing Information for a Case 8:16-cv-02625-RWT City of Cape Coral Municipal Firefighters' Retirement Plan et al v Emergent Biosolutions, Inc., HQ et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Robert D Gerson**
  rgerson@rgrdlaw.com

- **Jonah H Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com,ldeem@rgrdlaw.com

- **Francis P Karam**
  fkaram@rgrdlaw.com

- **Dana Whitehead McKee**
  dwm@browngold.com,kgates@browngold.com,dcaimona@browngold.com

- **Mark T Millkey**
  mmillkey@rgrdlaw.com,e_file_ny@rgrdlaw.com,1781895420@filings.docketbird.com,e_file_sd@rgrdlaw.com

- **Yosef J. Riemer**
  yosef.riemer@kirkland.com,kenymanagingclerk@kirkland.com,ecf-0034f2ed07b9@ecf.pacerpro.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Solum**
  msolum@kirkland.com

- **Ellen Gusikof Stewart**
  elleng@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)