UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| WILLIAM SPONN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 8:16-cv-02625-RWT |
| | ) ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| EMERGENT BIOSOLUTIONS INC., et al., | ) ) | |
| Defendants. | ) ) | |

COMPENDIUM OF UNREPORTED AUTHORITIES CITED IN SUPPORT OF
MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS
PURSUANT TO 15 U.S.C. §78u-4(a)(4)

**COMPENDIUM OF UNREPORTED AUTHORITIES CITED IN SUPPORT OF MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)**

| CASE | Tab |
|---|---|
| *Burges v. BancorpSouth, Inc.*, <br> No. 3:14-cv-01564, slip op. (M.D. Tenn. Sept. 21, 2018) | 1 |
| *Epstein v. World Acceptance Corp.*, <br> No. 6:14-cv-01606-MGL, slip op. (D.S.C. Dec. 18, 2017) | 2 |
| *Hackworth v. Telespectrum Worldwide, Inc.*, <br> No. 3:04-cv-1271, slip op. (S.D. W. Va. Aug. 3, 2006) | 3 |
| *Hardwick v. Rent-A-Center, Inc.*, <br> No. 3:06-cv-00901, slip op. (S.D. W. Va. Feb. 3, 2009) | 4 |
| *In re aaiPharma Inc. Sec. Litig.*, <br> No. 7:04-CV-27-D, slip op. (E.D.N.C. Oct. 2, 2007) | 5 |
| *In re MGM Mirage Sec. Litig.*, <br> No. 2:09-cv-01558-GMN-VCF, slip op. (D. Nev. Mar. 1, 2016) | 6 |
| *Lamden Partners Inc. v. The Blackstone Grp. L.P.*, <br> No. 08-cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013) | 7 |
| *The Erica P. John Fund, Inc. v. Halliburton Co.*, <br> No. 3:02-cv-1152-M, slip op. (N.D. Tex. Apr. 25, 2018) | 8 |

DATED:  November 20, 2018

_____/s/ Jonah H. Goldstein_____
ROBBINS GELLER RUDMAN
  & DOWD LLP
JONAH H. GOLDSTEIN
(admitted *Pro Hac Vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jonahg@rgrdlaw.com

1504617.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
(admitted *Pro Hac Vice*)
FRANCIS P. KARAM
(admitted *Pro Hac Vice*)
ROBERT D. GERSON
(admitted *Pro Hac Vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
fkaram@rgrdlaw.com
rgerson@rgrdlaw.com

*Lead Counsel for Plaintiffs and Proposed*
*Class Counsel*

BROWN, GOLDSTEIN LEVY, LLP
DANA W. McKEE (04447)
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Telephone:  410/962-1030
410/385-0869 (fax)
dwm@browngold.com

*Local Counsel for Plaintiffs*

# TAB 1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| WILLIAM E. BURGES and ROSE M. BURGES, Individually and on Behalf of All Others Similarly Situated, )))))) | |
| Plaintiffs, )) | **Civil Action No. 3:14-cv-01564** |
| vs. ))) | **The Honorable Waverly D. Crenshaw, Jr.** **The Honorable Jeffery S. Frensley** |
| BANCORPSOUTH, INC., et al., )) | **CLASS ACTION** |
| Defendants. ))) | |

<u>**ORDER AWARDING ATTORNEYS' FEES AND EXPENSES**</u>

This matter having come before the Court on September 21, 2018, on Class Counsel's motion for an award of attorneys' fees and expenses incurred in this action, the Court, having considered all papers filed and proceedings conducted herein, having found the settlement of this action to be fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      All of the capitalized terms used herein shall have the same meanings as set forth in the Stipulation of Settlement dated March 30, 2018 (the "Stipulation"). (Doc. No. 245.)

2.      This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Class who have not timely and validly requested exclusion.

3.      The Court hereby awards Class Counsel attorneys' fees of one-third of the Settlement Amount, and litigation expenses in the total amount of $528,469.01, together with the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid.  Said fees and expenses shall be allocated amongst counsel in a manner

- 1 -

which, in Class Counsel's good faith judgment, reflects each such counsel's contribution to the institution, prosecution and resolution of the Litigation. The Court finds that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method considering, among other things, the following: the highly favorable result achieved for the Class; the contingent nature of Class Counsel's representation; Class Counsel's diligent prosecution of the Litigation; the quality of legal services provided by Class Counsel that produced the Settlement; that the Class Representative appointed by the Court to represent the Class approved the requested fee; the reaction of the Class to the fee request; and that the awarded fee is in accord with legal authority and consistent with other fee awards in cases of this size.

4.    The awarded attorneys' fees and expenses shall be paid to Class Counsel immediately after the date this Order is executed subject to the terms, conditions and obligations of the Stipulation and in particular ¶6.2 thereof, which terms, conditions and obligations are incorporated herein.

5.    Pursuant to 15 U.S.C. §78u-4(a)(4), Class Representative City of Palm Beach Gardens Firefighters' Pension Fund is awarded $1,235 as payment for its time and expenses representing the Class.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

# TAB 2

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| EDNA SELAN EPSTEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>WORLD ACCEPTANCE CORPORATION, et al.,<br><br>                              Defendants. | Civil Action No. 6:14-cv-01606-MGL<br><br>CLASS ACTION<br><br>ORDER AWARDING ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4) |

1332812_1

This matter having come before the Court on December 18, 2017, on the motion of Lead Counsel for an award of attorneys' fees and expenses (the "Fee Motion"), the Court, having considered all papers filed and proceedings conducted herein, having found the Settlement of this Litigation to be fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Order incorporates by reference the definitions in the Stipulation of Settlement dated August 24, 2017 (the "Stipulation"), and all capitalized terms used, but not defined herein, shall have the same meanings as set forth in the Stipulation.

2.      This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Settlement Class who have not timely and validly requested exclusion.

3.      Notice of Lead Counsel's Fee Motion was given to all Settlement Class Members who could be located with reasonable effort.  The form and method of notifying the Settlement Class of the Fee Motion met the requirements of Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. §78u-4(a)(7), the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      The Court hereby awards Lead Counsel attorneys' fees of 30% of the Settlement Fund (or $4,800,000), plus expenses in the amount of $472,044.02, together with the interest earned on both amounts for the same time period and at the same rate as that earned on the Settlement Fund until paid.  The Court finds that the amount of fees awarded is appropriate and that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method.

- 1 -

5.    The awarded attorneys' fees and expenses and interest earned thereon, shall be paid to Lead Counsel subject to the terms, conditions, and obligations of the Stipulation, and in particular, ¶7.2 thereof, which terms, conditions, and obligations are incorporated herein.

6.    In making this award of fees and expenses to Lead Counsel, the Court has considered and found that:

(a)    the Settlement has created a fund of $16,000,000 in cash that is already on deposit, and numerous Settlement Class Members who submit, or have submitted, valid Proof of Claim and Release forms will benefit from the Settlement created by Lead Counsel;

(b)    over 54,400 copies of the Notice were disseminated to potential Settlement Class Members indicating that Lead Counsel would move for attorneys' fees in an amount not to exceed 30% of the Settlement Amount and for expenses in an amount not to exceed $500,000, and no objections to the fees or expenses were filed by Settlement Class Members;

(c)    Lead Counsel has pursued the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d)    Lead Counsel has expended substantial time and effort pursuing the Litigation on behalf of the Settlement Class;

(e)    Lead Counsel pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee amount has been contingent on the result achieved;

(f)    the Litigation involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(g)    had Lead Counsel not achieved the Settlement, there would remain a significant risk that the Settlement Class may have recovered less or nothing from Defendants;

(h)    Lead Plaintiff's Counsel have devoted over 9,000 hours, with a lodestar value of $4,949,997.50, to achieve the Settlement;

(i)    public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation; and

(j)    the attorneys' fees and expenses awarded are fair and reasonable and consistent with awards in similar cases within the Fourth Circuit.

7.    Any appeal or any challenge affecting this Court's approval regarding the Fee Motion shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

8.    Pursuant to 15 U.S.C. §78u-4(a)(4), the Court awards $4,760.00 to Lead Plaintiff Operating Engineers Construction Industry and Miscellaneous Pension Fund for the time it spent directly related to its representation of the Settlement Class.

9.    In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided in the Stipulation and shall be vacated in accordance with the Stipulation.

DATED: December 18, 2017

s/Mary Geiger Lewis
_____
THE HONORABLE MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

1332812_1

# TAB 3

### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF WEST VIRGINIA

#### HUNTINGTON DIVISION

HEATHER HACKWORTH, CYNTHIA SHAUGHNESSY,
VICTORIA BARKER, DOTTIE HOLSINGER,
WILLIAM RYMAN, MONTY KEYSER and
LISA LAYMAN, on behalf of Themselves
and the class of Persons Similarly Situated,

                    Plaintiffs,

v.                                     CIVIL ACTION NO. 3:04-1271

TELSPECTRUM WORLDWIDE, INC.,
et al.

                    Defendants.

**ENTERED**

AUG - 3 2006

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

#### FINAL ORDER OF JUDGMENT

WHEREAS, certain parties to this action, Plaintiffs HEATHER HACKWORTH,
CYNTHIA SHAUGHNESSY, VICTORIA BARKER, DOTTIE HOLSINGER, WILLIAM
RYMAN, MONTY KEYSER, EVANGELINE HINKLE and LISA LAYMAN (the "Named
Plaintiffs") and Defendants TELESPECTRUM, INC. and THE RESOURCE GROUP
INTERNATIONAL, LTD. (collectively, the "Settling Defendants") have agreed, subject to
Court approval following notice to the Settlement Class and a hearing, to settle this action as to
the claims against the Settling Defendants upon the terms and conditions set forth in the
Stipulation and Settlement Agreement of Class Action Claims (the "Settlement Agreement"),
which has been filed with the Court as an attachment to the Plaintiffs' Motion for An Order (1)
Preliminarily Approving a Partial Settlement, (2) Approving the Parties' Proposed Form and

Method of Providing Notice, (3) Modifying the Class Definition, and (4) Setting this Matter for a Fairness Hearing (the "Motion") [Docket No. 107]; and

WHEREAS, the Plaintiffs having made application, pursuant to Federal Rule of Civil Procedure 23, for an Order finally approving the Settlement Agreement [Docket No. 113], which sets forth the terms and conditions for a proposed settlement of the Action and for partial dismissal of the Action with prejudice upon the terms and conditions set forth therein; and

WHEREAS, the Court preliminarily approved the Settlement Agreement by an Order Preliminarily Approving Class Action Settlement and Providing for Notice ("Preliminary Approval Order") dated April 25, 2006 [Docket No. 109], and Notice was given to all members of the Settlement Class pursuant to the terms of the Preliminary Approval Order; and

WHEREAS, all defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement; and

WHEREAS, the Court has read and considered the papers filed in support of the Motion, including the Settlement Agreement and the exhibits thereto, memoranda and arguments submitted on behalf of the Settlement Class and the Settling Defendants, and supporting declarations. The Court also notes that no written comments or objections were filed with the Clerk of the Court by absent class members, and that no potential class members chose to opt-out of the settlement. The Court held a hearing on July 10, 2006, at which time the parties were heard in support of the proposed settlement. No other interested persons were present or requested to speak in opposition to the proposed settlement; and

WHEREAS, based on the papers filed with the Court and the presentations made to the Court by the parties and by other interested persons at the hearing, it appears to the Court that the settlement set forth in the Settlement Agreement is fair, adequate, and reasonable. Accordingly,

2

**IT IS HEREBY ORDERED THAT:**

1.      For purposes of this settlement only, the Court has jurisdiction over the subject matter of the Action and personal jurisdiction over the parties and the members of the Settlement Class described below.

2.      Pursuant to the Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Court confirms its prior certification of the following Settlement Class for purposes of settlement only: All persons employed at the call center located on 3rd Avenue, Huntington, West Virginia, as of October 29, 2004, except those who experienced employment loss due to discharge for cause, voluntary departure or retirement.[1]

3.      The Court confirms the appointments of the Class Representatives and Class Counsel with respect to the Settlement Class, as follows: Named Plaintiffs HEATHER HACKWORTH, CYNTHIA SHAUGHNESSY, VICTORIA BARKER, DOTTIE HOLSINGER, WILLIAM RYMAN, MONTY KEYSER, EVANGELINE HINKLE and LISA LAYMAN are appointed class representatives, and Brian A. Glasser, Esq., H.F. Salsbery, Esq., John Barrett, Esq., and Leah Macia, Esq., of Bailey & Glasser, LLP are appointed Class Counsel.

4.      With respect to the Settlement Class, this Court confirms its previous preliminary findings in the Preliminary Approval Order that, for settlement purposes only, (a) the Settlement Class as defined above is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the claims of the Named Plaintiffs (the "Class Representatives"), identified in paragraph 3 above, are typical of the claims of their

---

[1]      In an agreed order entered on March 14, 2006, the class was defined as "all persons employed at the call center located at 3rd Avenue, Huntington, West Virginia after September 21, 2004, except those who experienced employment loss due to discharge for cause, voluntary departure or retirement." The parties previously sought to amend the class definition. The amendment, approved by the Court in its April 25, 2006 Order preliminarily approving the settlement, defined the class as "all persons employed . . . as of October 29, 2004." The plaintiffs reasoned that the call center employees were not actually terminated in violation of the WARN Act's notice provisions until October 29, 2004. Therefore, the plaintiffs' WARN Act claims only accrued for those persons employed at the call center on October 29, 2004.

respective class; (d) the Class Representatives will fairly and adequately protect the interests of the Settlement Class; (e) the questions of law of fact common to the members of the Settlement Class predominate over the questions affecting only individual members; and (f) certification of the Settlement Class is superior to other available methods for the fair and efficient adjudication of the controversy.  In the event the Settlement Agreement terminates pursuant to its terms or does not become final for any reason, the conditional certification of the Settlement Class pursuant to this Order shall be vacated automatically and shall be null and void, and this action shall revert to its status, immediately prior to the execution of the Settlement Agreement.

5.     The Court finds that Notice was given to members of the Settlement Class in accordance with the Preliminary Approval Order and such Notice by first-class mail adequately informed members of the Settlement Class of all material elements of the proposed settlement, constituted valid, due, and sufficient notice to all members of the Settlement Class, constituted the best notice practicable under the circumstances, and fully satisfied all requirements of Rule 23(c) of the Federal Rules of Civil Procedure and applicable law.

6.     The Court notes that no potential class members requested exclusion from the Settlement Class.

7.     The Settlement Agreement was arrived at as a result of arms-length negotiations conducted in good faith by counsel for the Parties, and is supported by the Class Representatives of the Settlement Class.

8.     The Action presents issues as to liability and damages as to which there are substantial grounds for differences of opinion.

9.     The Court finally approves the settlement of the Action in accordance with the terms of the Settlement Agreement and finds that the settlement is fair, reasonable, and adequate

4

in all respects in light of the complexity, expense and duration of litigation and the risks involved in establishing liability, damages and in maintaining the class action through trial and appeal.

10. Payment of cash as provided under the Settlement Agreement constitutes fair value given in exchange for the release of the Plaintiffs' claims against the Settling Defendants. The Court finds that the consideration to be paid to Settlement Class Members is well within the range of reasonableness considering the facts and circumstances of the employment at issue, the numerous types of claims and affirmative defenses asserted in the Action and the potential risks and likelihood of success of alternatively pursuing trial on the merits.

11. The Court also finds the proposed plan of allocation of settlement funds to class members to be fair, adequate and reasonable. Under the plan, a settlement class member's settlement award is the settlement class member's "pro rata share," as defined below, of the "net settlement amount." The net settlement amount is the remainder of the settlement fund after payment of attorney fees, costs, service awards, and costs of administration and notice. Each settlement class member's pro rata share shall be a proportional amount of his or her salary and benefits for 42 work days, in relation to the total salary and benefits for 42 work days of all settlement class members, times the net settlement amount. For example, if the total salary and benefits for 42 work days of all settlement class members is $250,000, and settlement class member Smith's salary and benefits for 42 work days is $3,000, and if the net settlement amount is $100,000, then Smith's settlement award is calculated as ($3,000/$250,000) x $100,000 = $1,200.

12. The Court orders the Parties to the Settlement Agreement to perform their obligations thereunder pursuant to the terms of the Settlement Agreement.

13.    The Court also finds that, in addition to the 104 persons listed on Exhibit 1 to the Settlement Agreement, Kayla Stockdale and Carolyn Workman are class members entitled to payment through the settlement.

14.    The Court dismisses this Action as against Defendants TELESPECTURM, Inc. and The Resource Group International, Ltd. with prejudice and without costs (except as otherwise provided herein and in the Settlement Agreement), and adjudges that all of the claims described in the Settlement Agreement are released against the Settling Defendants.

15.    The Court adjudges that the Class Representatives and all Settlement Class Members who receive money from the Settlement Fund under the Settlement Agreement shall be deemed to have, fully, finally and forever released, relinquished and discharged all claims against the Settling Defendants, as defined by the Settlement Agreement.  The Court further adjudges that each Class Member who did not timely and validly request exclusion from this settlement (the "Non-Opt Outs") shall be deemed to have fully, finally and forever released and extinguished his or her right (if any ever existed) to adjudicate a claim against the Settling Defendants.

16.    The Court further adjudges that upon the Effective Date, each of the Settling Defendants and all signatories to the Settlement Agreement shall be deemed to have fully, finally and forever released, relinquished and discharged Plaintiffs, Class Counsel, and the Settling Defendants and their counsel in this Action from any claims (including any unknown claims) for abuse of process, libel, malicious prosecution or similar claims arising out of, relating to, or in connection with the institution, prosecution, defense, assertion, or resolution of the Action, including any right under any statute or federal law to seek counsel fees and costs.

17.     Plaintiffs and Settlement Class Members are permanently barred and enjoined from asserting, commencing, prosecuting or continuing any claim against the Settling Defendants as described in the Settlement Agreement.

18.     It is in the best interests of the Parties and the Settlement Class Members and consistent with principles of judicial economy that any dispute between any Settlement Class Member (including any dispute as to whether any person is a Settlement Class Member) and any Settling Defendant which in any way relates to the applicability or scope of the Settlement Agreement or this Final Order of Judgment should be presented exclusively to this Court for resolution by this Court. Therefore, without affecting the finality of this Final Order of Judgment in any way, the Court retains jurisdiction over: (a) implementation and enforcement of the Settlement Agreement until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto shall have been performed pursuant to the Settlement Agreement; (b) any other action necessary to conclude this settlement and to administer, effectuate, interpret and monitor compliance with the provisions of the Settlement Agreement; and (c) the distribution through *cy pres* of any funds that cannot be distributed in accordance with this Order.

19.     The Court grants Plaintiffs' Petition for Attorney Fees and Costs. The Court approves of Class Counsel receiving attorneys' fees in the amount of $61,666.05, which represents one-third the gross amount of the $185,000 common fund established through the settlement. The Court also approves the award of litigation costs in the amount of $6,026.16. In this regard, the Court finds the percentage method of determining attorney fees in a class action common fund case is the preferred method, and that district courts within the Fourth Circuit have consistently endorsed the percentage method. "Where there is a common fund in a class

7

settlement, application of a percentage method to calculate an attorney's fee award is now favored." *Kidrick v. ABC Television & Appliance Rental*, 1999 WL 1027050 *1 (N.D. W.Va. 1999) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). *See also Teague v. Bakker*, 213 F. Supp. 2d 571, 582 (W.D. N.C. 2002) ("The percentage recovery method is generally favored in cases involving a common fund."); *Goldenberger v. Marriott PLP Corp.*, 33 F. Supp.2d 434, 437-38 (D. Md. 1998) (applying the percentage method, and noting the general trend in favor thereof); *Strang v. JHM Mortgage Securities Limited Partnership*, 890 F. Supp. 499, 504-03 (E.D. Va. 1995) (holding that calculating fees based upon a percentage of the settlement fund "is a more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"); *Edmonds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987) (finding percentage method preferable in common fund case).   In light of these principles, the Court finds the fees and costs awarded are reasonable and fair to the class.

20.     The Court approves the service fee payment of $1,000 for Class Representative Heather Hackworth. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

21.     The Court approves the service fee payment of $1,000 for Class Representative Cynthia Shaugnessy. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

22.     The Court approves the service fee payment of $1,000 for Class Representative Victoria Barker. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

23.    The Court approves the service fee payment of $1,000 for Class Representative Dottie Holsinger.  This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

24.    The Court approves the service fee payment of $1,000 for Class Representative William Ryman.  This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

25.    The Court approves the service fee payment of $1,000 for Class Representative Monty Keyser.  This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

26.    The Court approves the service fee payment of $1,000 for Class Representative Lisa Layman.  This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

27.    The Court approves the service fee payment of $1,000 for Class Representative Evangeline Hinkle.  This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

28.    Neither this Final Order of Judgment nor the Settlement Agreement is an admission or concession by any of the Settling Defendants of any fault, omission, liability, or wrongdoing.  This Final Order of Judgment shall not constitute a finding of either fact or law as to the merits or the validity or invalidity of any claims in this Action or a determination of any wrongdoing by the Settling Defendants, or a finding as to any obligation of the Settling Defendants to take any actions agreed to be done or avoided as necessary in order to bring them into compliance with law.  The final approval of the Settlement Agreement does not constitute

any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of the Settling Defendants or the Settlement Class members.

29.     The Court finds that no just reason exists for delay in entering this Final Order of Judgment.   Accordingly, the Clerk is hereby directed forthwith to enter this Final Order of Judgment.   As stated above in Paragraph 18, the Court shall retain jurisdiction over this action. Therefore, the action shall remain on the Court's docket until further order.

ENTER: ~~July~~  AUG. 3 _____, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

10

# TAB 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**



ENTERED

FEB - 3 2009

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

**JIMMY and MICHELLE HARDWICK, and
YVETTE SPENCER, individually and on
behalf of others similarly situated,**

     **Plaintiffs,**

**v.**                                **CIVIL ACTION NO. 3:06-0901**

**RENT-A-CENTER, INC, a Delaware
corporation, and RENT-A-CENTER
EAST, INC. a Delaware corporation,**

     **Defendants.**

**ORDER APPROVING SETTLEMENT AMONG RENT-A-CENTER, INC. AND
RENT-A-CENTER EAST, INC. AND PLAINTIFFS, CERTIFYING CLASS,
AWARDING ATTORNEYS' FEES AND COSTS, AND DIRECTING ENTRY OF
FINAL JUDGMENT AND DISMISSAL**

     The Court has reviewed and considered the Plaintiffs' Unopposed Motion for Final Approval of Settlement and Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards to the Representative Plaintiffs.  The Court has furthered issued a Preliminary Approval Order and conducted a Fairness Hearing, and has heard from all persons who submitted objections in accordance with the Preliminary Approval Order.  The Court makes the following findings:

     A.     The Court has jurisdiction over the subject matter of these Actions pursuant to 28 U.S.C. §§ 1332, and all acts within this Action, and over all the parties to this Action, and all members of the Class.

     B.     Capitalized terms in this Order that are not otherwise defined herein have the meaning assigned to them in the Settlement Agreement.

     C.     The Class conditionally certified in the Preliminary Approval Order

has been appropriately certified for settlement purposes. The Court incorporates herein all grounds for certification outlined in the Preliminary Approval Order.

     D.    Notice to members of the Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice (i) constituted the best notice to members of the Class that was practicable under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object and to appear at the Settlement Hearing or to exclude themselves from the Settlement, and the binding effect of a class judgment; (iii) was reasonable and constituted due, adequate, and sufficient notice to persons entitled to be provided with notice; and (iv) fully complied with the requirements of due process and Federal Rules of Civil Procedure.

     E.    The Court has held a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, has been advised of all objections to the Settlement and have given fair consideration to such objections.

     F.    The Settlement is the product of good faith, arm's-length negotiations between Representative Plaintiffs and Class Counsel on one hand, and Rent-A-Center, Inc. and Rent-A-Center East, Inc. (sometimes, "RAC"), on the other hand.

     G.    The Settlement, as provided for in the Settlement Agreement, is in all respects fair, reasonable, adequate and proper and in the best interest of the Class. In assessing the fairness of a proposed Settlement, the court has

considered the following four factors: "(a) the posture of the case at the time the settlement was proposed; (b) the extent of discovery that had been conducted; (c) the circumstances surrounding the negotiations; and (d) the experience of counsel in the area of class action litigation." *In re Serzone Prod. Liability Litig.*, 231 F.R.D. 221, 243 (S.D. W. Va. 2005) (citations omitted). In determining the "adequacy" of the proposed Settlement, the court should look to the following: "(a) the relative strength of the plaintiffs' case on the merits; (b) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (c) the anticipated duration and expense of additional litigation; (d) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (e) the degree of opposition to the settlement." *Id.* (citations omitted). The Court has addressed these considerations in the Preliminary Approval Order.

H.      A list of those members of the Class who have timely elected to opt out of the Settlement and the Class and who therefore are not bound by the Settlement, the provisions of the Settlement Agreement, this Order and the Judgment to be entered by the Clerk of the Court, has been submitted to the Court as an exhibit to the Affidavit of Amy Lake sworn to on December 22, 2008. A copy of such exhibit is attached hereto an incorporate by reference herein. All other members of the Class (as permanently certified below) shall be subject to all of the provisions of the Settlement, the Settlement Agreement, this Order and the Judgment to be entered by the Clerk of the Court.

I.      The dismissal with prejudice and entry of Judgment contemplated

3

by the Settlement and this Order will dispose of all of the claims at issue and parties to this Action.  The Court finds that there is no just reason for delay in entering judgment in the form attached hereto (the "Judgment") dismissing the Action with prejudice as to Company and that entry of the Judgment is warranted.

J.      Regard Plaintiffs' Motion for Attorney Fees and Costs, the Court finds the percentage method of determining attorney fees in a class action common fund case is the preferred method, and that district courts within the Fourth Circuit have consistently endorsed the percentage method.  "Where there is a common fund in a class settlement, application of a percentage method to calculate an attorney's fee award is now favored." *Kidrick v. ABC Television & Appliance Rental*, 1999 WL 1027050 *1 (N.D. W.Va. 1999) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  *See also Teague v. Bakker*, 213 F. Supp. 2d 571, 582 (W.D. N.C. 2002) ("The percentage recovery method is generally favored in cases involving a common fund."); *Goldenberger v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 437-38 (D. Md. 1998) (applying the percentage method, and noting the general trend in favor thereof); *Strang v. JHM Mortgage Securities Limited Partnership*, 890 F. Supp. 499, 504-03 (E.D. Va. 1995) (holding that calculating fees based upon a percentage of the settlement fund "is a more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"); *Edmonds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987) (finding percentage method preferable in common fund case).

4

K.     Also regarding fees, the Court notes that a fee of one-third of a recovery is presumptively reasonable. *Eriksen Const. Co., Inc. v. Morey,* 923 F.Supp. 878, 881 (S.D.W.Va. 1996)(citing *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73, 80 (1986)); *F.S. & P. Coal Co. v. Inter-Mountain Coals, Inc.,* 179 W. Va. 190, 366 S.E.2d 638 (1988) (a one-third attorneys fee is the "going rate" in contingency fee cases).

L.     Some courts commonly consider certain factors in analyzing the reasonableness of fees determined by the percentage of recovery method. These factors can include:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Cendant,* 243 F.3d at 733 (quoting *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1) (citations omitted).  As outlined in the Preliminary Approval Order and the Plaintiffs' moving papers, the settlement creates a substantial fund that benefits tens of thousands of class members; class members voiced only minimal objections; the Plaintiffs' attorneys are skilled in litigating class actions; the litigation was complex, and required extensive briefing and discovery efforts; and the Plaintiffs' counsel devoted considerable time and effort in litigating the case.   The Court has further reviewed Plaintiffs' Motion, and finds that the proposed one-third fee is similar to awards in numerous similar cases filed in

West Virginia and elsewhere.    Consideration of all of the above leads the Court to conclude the proposed one-third fee is fair, adequate and reasonable.

On the basis of the foregoing findings and the submissions and proceedings referred to above, **IT IS HEREBY ORDERED ADJUDGED AND DECREED:**

1.    For purposes of this Settlement only, this Court has jurisdiction over the subject matter of the Action and personal jurisdiction over the parties and the members of the Settlement Class described below.

2.    The Settlement and Settlement Agreement are approved as fair, reasonable, adequate and in the best interests of the Class, and the requirements of due process and Rule 23 of the Federal Rule of Civil Procedure have been satisfied.    The objections to the Settlement and the Settlement Agreement are overruled and denied in all respects.

3.    The Court having found that each of the elements of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure are satisfied, for purposes of settlement only, the Action is permanently certified as a class action on behalf of the following persons (the "Class"):

> [All] consumers who rented or purchased merchandise from any "Rent-A-Center" branded store in West Virginia in non-skip transactions commencing from October 23, 2002 through the September 8, 2008 (the "Settlement Class Period").    The Settlement Class shall not include consumers who rented or purchased merchandise from other rent-to-own dealers, or customers identified in RAC's database as "stolen" or "skips."

The persons identified on the list submitted to the Court (attached hereto as Exhibit 1) as having timely and properly elected to opt out from the Settlement

6

and the Class are hereby excluded from the Class and shall not be entitled to any of the monetary or other benefits afforded to the Class under the Settlement Agreement and shall release nothing against the Defendants in connection with this settlement.   The Court readopts and incorporates herein by reference its preliminary conclusions as to the satisfaction of the requirements of Rule 23(a) and Rule 23(b)(2) and 23(b)(3) set forth in the Preliminary Approval Order and notes again that because this certification of the Class is in connection with the Settlement rather than litigation, the Court need not address any issues of manageability presented by certification of the Class defined in the Complaint.

4.      For purposes of this Settlement only, the Court certifies the appointments of the Class Representatives as representatives of the Class and Class Counsel as counsel to the Class, as follows:  Named Plaintiffs Jimmy and Michelle Hardwick and Yvette Spencer Parks are appointed class representatives, and Brian A. Glasser, Esq., John W. Barrett, Esq., and Eric B. Snyder, Esq., of Bailey & Glasser, LLP are appointed Class Counsel.

5.      The Court concludes that Class Counsel and Class Representatives have fairly and adequately represented the Class with respect to the Settlement and the Settlement Agreement.

6.      In the event the Settlement Agreement terminates pursuant to its terms or does not become final for any reason, the conditional certification of the Settlement Class pursuant to this Order shall be vacated automatically and shall be null and void, and this action shall revert to its status, immediately prior to the execution of the Settlement Agreement.

7

7.      The Court has reviewed the establishment of the Common Fund and the payment of cash as provided under the Settlement Agreement and recognizes that it constitutes fair value given in exchange for the release of the Plaintiffs' claims against the Defendants.  The Court finds that the consideration to be paid to Settlement Class Members is well within the range of reasonableness considering the facts and circumstances of the employment at issue, the numerous types of claims and affirmative defenses asserted in the Action and the potential risks and likelihood of success of alternatively pursuing trial on the merits.

8.  .    The Court has also reviewed the proposed plan of allocation of settlement funds to class members and finds it to be fair, adequate and reasonable.

9.      As part of the settlement, the Court enjoins RAC and orders that the prices for used goods of Rent-A-Center on future agreements will be established by using a terming matrix in the form of the matrix attached as Exhibit A to this Order.  Such a matrix will be used so that the lower number of rental payments, as reflected on the attached matrix, results in a lower total of payments and a lower retail value for the used merchandise based on its age and condition.  RAC will keep in electronic or hard copy form, the matrix used, together with a record of the number of periodic payments provided in the first rent-to-own agreement for the item when it was offered as new, as well as a record of the item's condition each time it is priced as used.  These records will be preserved as long as the item is owned by RAC.  RAC and its subsidiaries

and affiliates are enjoined from pricing used goods in the future in excess of those prices dictated by the attached matrix.

10. RAC is enjoined and required to disclose in writing the dollar amount of the "early purchase option," as the term is defined in W. Va. Code § 46B-3-9, on the receipt given to the customer on acceptance of every rental payment. Ownership of the item will transfer to the customer when he or she makes an affirmative request to exercise the early purchase option and makes the required early purchase option payment.

11. The injunction described in the preceding paragraphs will remain in effect for two years from the date it took effect. Because the purposes of this injunction are to lower prices for consumer goods in West Virginia rent-to-own transactions by the placement of an effective price cap, ensure RAC's compliance with existing West Virginia law and create a pricing method and an early purchase option procedure which RAC may use to comply with existing West Virginia law, this injunction will be dissolved if the West Virginia Legislature changes the substance of the Consumer Goods Rental Protection Act, W. Va. Code § 46B-1-1, or if the West Virginia Attorney General changes the substance of the regulations implementing the Consumer Goods Rental Protection Act as either relates to retail values or the early purchase option. This injunction will also dissolve if this Order is successfully challenged on appeal.

12. The Parties to the Settlement Agreement shall perform their obligations thereunder pursuant to the terms of the Settlement Agreement.

9

13.     The Court dismisses this Action as against Defendants RENT-A-CENTER, INC. and RENT-A-CENTER EAST, INC. with prejudice and without costs (except as otherwise provided herein and in the Settlement Agreement), and adjudges that the release set forth in the Settlement Agreement will become effective in accordance with the terms of that agreement.

14.     The Court adjudges that the Class Representatives and all Settlement Class Members who have not properly excluded themselves have, fully, finally and forever released, relinquished and discharged all Released Claims against all Released Parties, as those terms are defined in the Settlement Agreement.

15.     The Court further adjudges that each of the Defendants and all signatories to the Settlement Agreement have fully, finally and forever released, relinquished and discharged Plaintiffs, Class Counsel, and the Defendants pursuant to the applicable provisions of the Settlement Agreement.

16.     It is in the best interests of the Parties and the Settlement Class Members and consistent with principles of judicial economy that any dispute between any Settlement Class Member (including any dispute as to whether any person is a Settlement Class Member) and any Defendant which in any way relates to the applicability or scope of the Settlement Agreement or this Final Order of Judgment should be presented exclusively to this Court for resolution by the Court. Therefore, without affecting the finality of this Final Order of Judgment in any way, the Court retains jurisdiction over:   (a) implementation and enforcement of the Settlement Agreement until the final judgment contemplated

hereby has become effective and each and every act agreed to be performed by the parties hereto shall have been performed pursuant to the Settlement Agreement; and (b) any other action necessary to conclude this settlement and to administer, effectuate, interpret and monitor compliance with the provisions of the Settlement Agreement.

17.     The Court grants Plaintiffs' Motion for Attorney Fees and Costs. The Court approves of Class Counsel receiving attorneys' fees in the amount of one-third the gross amount of the Common Fund. The Court also approves the award of litigation costs in the amount of $139,962.00. These amounts shall be paid in accordance with the terms of the Settlement Agreement.

18.     The Court has also reviewed the application for a fee award to Class Representatives Jimmy and Michelle Hardwick and approves the proposed service-fee payment of $10,000 to Mr. and Mrs. Hardwick. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

19.     The Court approves the service fee payment of $10,000 for Class Representative Yvette Spencer Parks. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

20.     Neither this Final Order of Judgment nor the Settlement Agreement is an admission or concession by any of the Settling Defendants of any fault, omission, liability, or wrongdoing. This Final Order of Judgment shall not constitute a finding of either fact or law as to the merits or the validity or invalidity of any claims in this Action or a determination of any wrongdoing by the

Defendants, or a finding as to any obligation of the Defendants to take any actions agreed to be done or avoided as necessary in order to bring them into compliance with law. The final approval of the Settlement Agreement does not constitute any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of the Defendants or the Settlement Class members.

21.    The Court finds that no just reason exists for delay in entering this Final Order of Judgment.  Accordingly, the Clerk is hereby directed forthwith to enter this Final Order of Judgment. As stated above in Paragraph 16, the Court shall retain jurisdiction over this action. ~~Therefore, the action shall remain on the Court's docket until further order.~~

The Clerk is directed to send a certified copy of this Order to all counsel of record and to any unrepresented parties.

ENTER: _February 3_ , 2009

_/s/ Robert C. Chambers_
Robert C. Chambers, Judge
United States District Court

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| JIMMY and MICHELLE HARDWICK, and YVETTE SPENCER, individually and on Behalf of others similarly situated, | ) ) ) | |
| | ) | CIVIL ACTION NO. 3:06-0901 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| RENT-A-CENTER INC, a Delaware Corporation, and RENT-A-CENTER EAST, INC. a Delaware corporation, | ) ) ) | |
| Defendants. | ) | |

## DECLARATION OF AMY LAKE
## WITH RESPECT TO DUE DILIGENCE AND MAILING

I, Amy Lake, being fully sworn according to law, depose and say as follows:

1.    I am a Senior Project Administrator for Rust Consulting, Inc. ("Rust Consulting"). My business address is 201 S. Lyndale Avenue, Faribault, Minnesota 55021. My telephone number is (507) 333-4307. I am over twenty-one years of age and authorized to make this declaration on behalf of Rust Consulting and myself.

2.    Rust Consulting has extensive experience in class action matters, having provided services in class action lawsuits affecting millions of class members in cases involving employment wage and hour, employment discrimination, antitrust, securities fraud, property damage, product liability, insurance and consumer issues. We have provided notification and/or claims administration services in more than 2,000 class action cases.

3.    Rust Consulting was engaged by Counsel for Rent-A-Center East, Inc., ("Defendants") to provide settlement administration services in the *Rent-A-Center* Settlement. Duties include: a) preparing, printing, and mailing to Settlement Class Members the *Notice of Class Action Settlement* (referred to as "Notice"); b) the receipt of Request for Exclusions submitted by Settlement Class Members; c) the receipt of other

communications about the proposed settlement; d) printing and mailing of settlement award payments; e) establishing and maintaining a toll free telephone line; (f) establishing and maintaining a website; and g) filing all required reports with the Court.

    4.      Rust Consulting obtained a Post Office box (under the name of Rent-A-Center Class Action Settlement, PO Box 1953, Faribault, MN 55021-6099) for receiving incoming claim forms, requests for exclusion, undeliverable mail, and other communications about the proposed settlement.

    5.      A toll-free telephone number (1-877-874-7563) was included in the Notice for the purpose of allowing the Settlement Class Members to call Rust Consulting and make inquiries regarding the settlement. As of December 20, 2008, there have been 1,876 calls received to this toll-free phone number.

    6.      A website was established (www.rentalsettlement.com) to provide additional information, this website contains the Settlement Agreement, the Notice to Class Members, a Claim Form that can be printed, contact information, important dates relevant to the settlement, and the option to submit a claim form online. As of December 20, 2008, there have been 3,301 visits to the website.

    7.      On October 10, 2008, Counsel for the Defendant provided Rust Consulting with Excel data files containing names, last known addresses, Social Security numbers for members of the Settlement Class, and the category transaction type(s).

    8.      The mailing addresses contained in the data files were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U. S. Postal Service. The NCOA contains all requested changes of address filed with the U. S. Postal Service. In the event that any individual had filed a U. S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notices.

    9.      On September 8, 2008, Notices mailed via first class mail to 14,341 Settlement Class Members who had active agreements as of September 8, 2008.

10.     On October 25, 2008, Notices were mailed to 61,370 Settlement Class Members via first class mail, of which 56,565 included a notice and claim form and 4,805 received the notice only.  A copy of the notice is attached as Exhibit A.

11.     Pursuant to this Court's Order, Rust Consulting also submitted a Court-approved 1/8 page summary notice for publication in all West Virginia daily newspapers with a circulation over 10,000 and all daily West Virginia newspapers.  The summary notice published in the Charleston Gazette, Wheeling Intelligencer, Beckley Register-Herald, Huntington Herald, Parkersburg News, Morgantown Dominion Post, Martinsburg Journal, Bluefield Daily, Clarksburg Exponent, Elkins Inter-Mountain, Fairmont Times WV, Williamson Daily News, Logan Banner, Weirton Daily Times, Point Pleasant Register, Lewisburg WV Daily News, and Moundsville Daily Echo on November 12, 2008 and again on November 17, 2008.  The publication notice obligation has been met. The Summary notice is attached as Exhibit B.

12.     As of December 19, 2008, there have been 17,991 Notices returned; of which 522 included a U.S. Postal Service label detailing a forwarding address.  Those 522 Notices were subsequently re-mailed and the Settlement Class database was revised to include these addresses.  All undeliverable mail was traced via Accurint, a service of LexisNexis which searches multiple public and credit bureau records in an attempt to locate a better address.  As a result there were 10,672 Notices remailed.

13.     Rust Consulting is responsible for receipt of all Requests for Exclusion submitted.  As of December 19, 2008, Rust Consulting has received five Requests for Exclusion.  A list of individuals who submitted Request for Exclusions is attached as Exhibit C.

14.     As of December 19, 2008, Rust Consulting has received no written objections.

I declare, under penalty of perjury, under the laws of the State of West Virginia, that the foregoing is true and correct to the best of my knowledge.  Executed this 22nd day of December 2008 in Faribault, Minnesota.


_Amy Lake_
Amy Lake

**Exhibit A**

<u>Notice of a Proposed Class Action Settlement</u>

> **If you rented or purchased merchandise from a Rent-A-Center store in West Virginia from October 23, 2002 to September 8, 2008, please read this Notice.**
>
> **A Court has authorized this Notice. It describes important rights you have and requires that you make a choice about how to proceed.**

### Answers to Frequently-Asked Questions

| | |
|---|---|
| 1. Why did I get this Notice? | 13. What do I do if I want to exclude myself? |
| 2. What is this lawsuit about? | 14. When and where will the Court decide whether to approve the settlement? |
| 3. Why is this a class action? | settlement? |
| 4. Why is there a settlement? | 15. Do I have to come to the hearing? |
| 5. How do I know if I am part of the settlement? | 16. What if I do nothing? |
| 6. What does the settlement provide? | 17. What if I want to object to the settlement? |
| 7. How much will my payment be? | 18. What is the difference between excluding myself and objecting? |
| 8. How can I get a payment? | 19. Who are the lawyers for the class? |
| 9. Do I have to provide proof that I had agreements in order to get a cash payment? | 20. How will class counsel's fees and expenses be paid? |
| 10. When would I get my payment? | 21. Do the class representatives get additional compensation? |
| 11. Am I giving anything up if I stay in the class or get a payment? | 22. What if the Court does not approve the settlement? |
| 12. Can I exclude myself from the settlement (sometimes called "opting out")? | 23. Where do I get additional information? |

### 1. Why did I get this Notice?

You received this Notice because Rent-A-Center's records show that you rented or purchased merchandise from a Rent-A-Center branded store in West Virginia. You received this notice to inform you of a settlement of a class action lawsuit that may affect your rights. This notice provides information about all of your options, so that you can evaluate those options before the Court decides whether to approve the settlement. Those options include making a claim for money from the settlement (see Questions 7-10), excluding yourself from the settlement (Questions 12 & 13) or raising concerns about the fairness of the settlement (Question 17). This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

### 2. What is the lawsuit about?

The Plaintiffs contend that, in violation of West Virginia law, Rent-A-Center has imposed rental charges of more than 240% of the retail value of rented goods. The Plaintiffs also allege the letters Rent-A-Center sent to customers to terminate their accounts violated the law, and that Rent-A-Center charged too much to customers who made the final two payments of the rental term. Rent-A-Center denies that it has violated any laws, did anything wrong, or that anyone was harmed by its conduct.

### 3. Why is this a class action?

This action is a class action because the Court has determined it should proceed as a class action so the parties can settle the case. In a class action, one or more people called class representatives (in this case Jimmy Hardwick, Michelle Hardwick, and Yvette Spencer), sue on behalf of people who have similar claims against the same Defendant. All these people are called a class or class members. One court resolves the issues for all class members, except for those who exclude themselves from the class.

### 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or Rent-A-Center. The Plaintiffs think they could have won if they went to trial. Rent-A-Center thinks the Plaintiffs would have lost, and that Rent-A-Center would have won. But there was no trial. Instead, both sides agreed to a settlement. This avoids the cost of a trial, and the people affected have an opportunity to be paid. The class representative and the attorneys think the settlement is best for all class members.

### 5. How do I know if I am part of the settlement?

The class approved by the Court (the "Class") consists of:

All consumers who rented or purchased merchandise from any "Rent-A-Center" branded store in West Virginia in transactions commencing from October 23, 2002 through September 8, 2008 (the "Class Period").

Excluded from the class are consumers who, according to Rent-A-Center's records, kept Rent-A-Center's merchandise without making the payments necessary to own the merchandise. These persons are designated in the records as "skips" or "stolen." They will not be eligible to receive any payment through the settlement, and will release no claims against Rent-A-Center. Rent-to-own agreements with other rent-to-own stores are not included in this settlement.

1

### 6. What does the settlement provide?

The settlement requires Rent-A-Center to: (a) pay at least $3.5 million in cash into what is called a "common fund"; (b) pay reasonable costs to administer the settlement including giving reasonable notice of the settlement to class members; (c) reform rental contracts which were active on September 8, 2008 to reduce the cost by an estimated average of $54 for new merchandise and $108 for used merchandise in the event the customer makes all of the rental payments required to obtain ownership; and (d) to implement an effective cap on its rent-to-own prices for used merchandise under future agreements for two years, or until the applicable pricing laws change, whichever is shorter.

If the Court approves the settlement, class members who satisfy the criteria for eligibility are entitled to a payment from the common fund, after deductions are made for requested attorney fees, expenses and service awards to the class representatives, plus any interest the fund accrues until the settlement becomes final ("Net Settlement Fund").

Payments to class members from the Net Settlement Fund will be calculated as follows:

- **Category A transactions.** These transactions are (a) completed rent-to-own agreements commenced during the Class Period for new goods as of September 8, 2008, and (b) completed rent-to-own agreements commenced during the Class Period for used goods in which the customer returned the goods to Rent-A-Center before September 8, 2008 after making rental payments for less than two months.

  Customers with Category A transactions will divide approximately 27% of the Net Settlement Fund in equal portions, according to the number of such transactions they had.

- **Category B transactions.** These transactions are completed rent-to-own agreements commenced during the Class Period for used goods in which the customer paid for the goods for more than two months, but returned the goods to Rent-A-Center before September 8, 2008 and did not acquire ownership of them.

  Customers with Category B transactions will divide approximately 38.5% of the Net Settlement Fund in equal portions, according to the number of such transactions they had.

- **Category C transactions.** These are completed rent-to-own agreements commenced during the Class Period for used goods which resulted in the customer owning the goods, either because the customer made all of the required rental payments or exercised the "early purchase option" available under the rent-to-own agreement before September 8, 2008.

  Customers with Category C transactions will divide approximately 34.5% of the Net Settlement Fund in equal portions, according to the number of such transactions they had.

- **Category D transactions.** These are all rent-to-own agreements commenced during the Class Period that were active as of September 8, 2008.

Customers with Category D transactions have already had their rental agreements modified by (a) reducing the term of the agreement, (b) reducing the "retail value" of the merchandise, (c) reducing the "total of all payments" and (d) reducing the "early purchase option" payment. The term of active agreements for used goods has been reduced by four (4) weeks and reduced by two (2) weeks for new goods. Customers with Category D transactions will not need to do anything to receive this particular benefit. The result has been to reduce the cost to customers by an estimated average of $54 for new merchandise and $108 for used merchandise over the full term of each agreement in the event they make all of the rental payments required to obtain ownership. No settlement payment or refund will be paid to customers for these Category D transactions.

Finally, Rent-A-Center has also agreed to adopt an effective price cap on RAC's used goods under future agreements. RAC may price used goods under future agreements at or below, but not above, the price established by the formula set forth in Appendix A of the Settlement Agreement. A copy of the new formula is available on the settlement website. This will not affect the price of new goods or the price under any agreement in the Class Period.

### 7. How much will my payment be?

Class members who submit valid claims will receive: at least $6 for each Category A transaction; at least $36 for each Category B transaction; and at least $26 for each Category C transaction. Persons with Category D transactions have had their rent-to-own agreements modified by Rent-A-Center (see Question 6).

### 8. How can I get a cash payment?

To qualify for a payment, you must send in a complete and valid claim form. If Rent-A-Center's records indicate you are eligible for a cash payment, a claim form is attached to this Notice. If you did not get a claim form, but believe you are entitled to a cash payment, you may get a claim form from the Settlement Administrator's website, www.wvrentalsettlement.com. Read the instructions carefully, fill out the form, include all the information the form asks for, sign it, and mail it so that it is postmarked no later than March 4, 2009. You may also complete the claim form on line at the web address above. If you submit the claim form online, you must do so no later than midnight on March 4, 2009.

If you have rent-to-own agreements with Rent-A-Center that were commenced on or after October 23, 2002 and terminated on or before

2

December 5, 2004, there are special procedures, in addition to those above, that you will need to follow in order to receive a payment for those agreements. **You should not follow these procedures unless you have one or more of these older agreements that ended before December 5, 2004.** To be paid for one or more of these older agreements, you need to submit a completed claim form on time AND include with your claim form one or more of the following:

- a copy of the older agreement,
- a copy of a certificate of ownership of the goods rented through the older agreement,
- one or more payment receipts you were issued for the older agreement, or
- other documentation referencing an agreement number not in RAC's database.

**ALL CLAIMS MUST BE SENT TO THE ADMINISTRATOR BEFORE MIDNIGHT ON MARCH 4, 2009.**

### 9. Do I have to provide proof that I had agreements in order to get a cash payment?

Not necessarily. If you had rental agreements commenced after December 5, 2004, and you did not steal or keep the rented merchandise without making all of the payments required to obtain ownership, you will get paid for those agreements if you complete and submit a claim form on time. You do not need to provide any other documentation in order to be paid for those agreements. On the other hand, if you had an older Rent-A-Center rental agreement commenced on or after October 23, 2002 and terminated on or before December 5, 2004, you need to submit the proof mentioned in Question 8 if you want to be paid for those older agreements.

### 10. When would I get my cash payment?

The Court will hold a hearing at 1:30 p.m. on February 2, 2009 at the Sidney L. Christie Federal Building, 845 Fifth Avenue, Huntington, West Virginia to decide whether to approve the settlement. If the Court approves the settlement after that, there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. The settlement administrator will keep the settlement website at www.wvrentalsettlement.com updated so that everyone who is in the class may keep informed of the progress of the settlement. You may also call the Administrator at 1-877-874-7563. Please be patient.

### 11. Am I giving up anything if I stay in the class and get a payment?

Unless you exclude yourself, also called "opting out" (see Question 12), you will be considered a member of the class, which means that you can't sue, continue to sue, or be part of any other lawsuit against Rent-A-Center about the legal issues in this case. Giving up your claims is called a "release." Unless you exclude yourself from the settlement, you will release your claims related to the issues in the case whether or not you submit a claim form and receive payment.

However, certain claims are not released even if you stay in the class. These claims are those that are unrelated to Rent-A-Center's prices, pricing policies, agreement terms, disclosures, or termination letters.

### 12. Can I exclude myself from the settlement (sometimes called "opting out")?

Yes, you may "opt out" and exclude yourself from the class. If you opt out, you will receive no cash payment through the settlement, you will not release any claims you may have against Rent-A-Center, and you will not be bound by anything that happens in the lawsuit. If you opt out, you will be free to pursue whatever legal rights you may have by bringing your own lawsuit against Rent-A-Center at your own risk and expense.

### 13. What do I do if I want to exclude myself?

If you want to opt out and exclude yourself from the class, you must send a signed "request for exclusion" to the Settlement Administrator at Rent-A-Center Class Action Settlement, P.O. Box 1953, Faribault, MN 55021-6099. Your request for exclusion must be in writing and received by the Settlement Administrator no later than December 8, 2008. To be effective, a request for exclusion must contain: (a) your name, address, telephone number and Social Security number, (b) a statement that you want to opt out of the settlement, and (c) your signature.

### 14. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at 1:30 p.m. on February 2, 2009 at the Sidney L. Christie Federal Building, 845 Fifth Avenue, Huntington, West Virginia, in the courtroom of the Hon. Robert C. Chambers. At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to class counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take. The hearing can be continued at any time by the Court without any further notice to you.

### 15. Do I have to come to the hearing?

No. You are not required to attend the hearing, but you are welcome to come at your own expense.

### 16. What if I do nothing?

If you do nothing, you'll get no money from this settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Rent-A-Center about the legal issues in this case. If you have a Category D Agreement, you will get the benefit of the term reduction described in Question 6 even if you do nothing.

3

**17. What if I want to object to the settlement?**

If you're a class member who has not requested exclusion, you can object to the settlement if you don't like it. If you wish to object, you must write a letter with a complete statement of your objections, the specific reasons for each objection (including any legal support you want to bring to the Court's attention) and a description of any evidence you wish to introduce in support of your objections. You must include your name, address, telephone number and your signature. Also include the name and number of this action (*Hardwick v. Rent-A-Center, Inc.*, Civil Action No. 3-06-0901).

If you want to object to the settlement and have only rent-to-own agreements with Rent-A-Center that were commenced after October 23, 2002 and terminated on or before December 5, 2004, there are special procedures, in addition to those above, that you must follow. You must provide, along with your objections, (i) a copy of your agreement(s), (ii) a copy of a certificate of ownership of the goods rented through the agreement(s), (iii) a payment receipt you were issued for the agreement(s), or (iv) other documentation referencing an agreement number not in RAC's database. You must also submit a signed statement affirming that you entered into the rental-purchase agreement, that it commenced after October 23, 2002, and terminated on or before December 5, 2004, and did not retain the goods without making all of the payments required for ownership.

In either case, your objections must be received in these three different places no later than December 8, 2008:

| *Class Counsel:* | *Rent-A-Center:* | *The Court:* |
|---|---|---|
| Brian A. Glasser, Esq. | Wayne Bost, Esq. | Clerk of Court |
| Bailey & Glasser, LLP | Winstead PC | U.S. District Court |
| 209 Capitol Street | 401 Congress Ave., Ste 2100 | 845 Fifth Avenue |
| Charleston, WV 25301 | Austin, TX 78701 | Huntington, WV. 25701 |

**18. What is the difference between excluding myself and objecting?**

Excluding yourself is telling the Court that you don't want to be part of the class. If you exclude yourself, you have no basis to object because the case no longer affects you. Objecting is telling the Court that you don't like something about the settlement and you don't want the Court to approve it. You can object only if you stay in the class.

**19. Who are the lawyers for the class?**

The Court has appointed Brian A. Glasser, John W. Barrett and Eric B. Snyder, of the law firm of Bailey & Glasser LLP, 209 Capitol Street, Charleston, West Virginia 25301, to represent the class. These lawyers are called class counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

**20. How will class counsel's fees and expenses be paid?**

Class counsel will ask the Court to approve an award of attorneys' fees of not more than 1/3 of the cash common fund. The fees would pay class counsel for investigating the facts, litigating the case, and negotiating the settlement. Class counsel will also seek reimbursement from the common fund of their expenses of the lawsuit, up to $150,000. The Court will determine the amount of any fees and expenses awarded to class counsel.

**21. Do the class representatives get additional compensation?**

Subject to Court approval, the Plaintiffs who brought this lawsuit will seek "service awards" for their active participation in this litigation. Plaintiff Jimmy and Michelle Hardwick will seek a total service award of $10,000. Plaintiff Yvette Spencer will also seek a service award of $10,000. The Court will determine whether they receive a service award and the amount of that award.

**22. What if the Court does not approve the settlement?**

If the Court does not approve the proposed settlement as being fair, adequate and reasonable, the settlement agreement will be null and void, and all parties will be returned to their respective pre-settlement status.

**23. Where do I get additional information?**

This Notice is only a summary of the claims and issues in the case. For more information, including a copy of the complaint and other case documents, visit the Settlement Administrator's website, www.wvrentalsettlement.com. You can also get a copy of the Settlement Agreement from the website, or by writing to the Settlement Administrator at Rent-A-Center Class Action Settlement, P.O. Box 1953, Faribault, MN 55021-6099. If you cannot get the information you need from this notice or from the Settlement Administrator, you may contact class counsel.

**Please Do Not Contact The Court Or Rent-A-Center For Information.**

BY ORDER OF THE COURT
The Honorable Robert C. Chambers
Judge, United States District Court for the Southern District of West Virginia

Dated: October 10, 2008

4

Legal Notice

### Summary Notice of Proposed Class Action Settlement

## If you rented or purchased merchandise from a Rent-A-Center store in West Virginia from October 23, 2002 to September 8, 2008, please read this Notice carefully. It concerns settlement of a lawsuit which may affect you.

The United States District Court for the Southern District of West Virginia has authorized this Notice. It concerns a case called Hardwick v. Rent-A-Center, Inc., Civil Action No. 3-06-0901. A class action settlement has been proposed in the case. If you qualify, you may be able to send in a claim form later to get money, or you can exclude yourself from the settlement, or you can object to it. Before any money is paid, the Court will have a hearing to decide whether to approve the settlement.

### What is the lawsuit about?

The lawsuit claimed that, in violation of West Virginia law, Rent-A-Center imposed rental charges of more than 240% of the retail value of rented goods. The lawsuit also claimed that the letters Rent-A-Center sent to customers to terminate their accounts violated the law, and that Rent-A-Center charged too much to customers who made the final two payments of the rental term. Rent-A-Center denies that it did anything wrong, and defended the lawsuit on grounds that all of its rental charges and other policies fully complied with the law. The Court did not decide which side was right. But both sides agreed to the settlement to resolve the case and get benefits to Rent-A-Center customers. The two sides disagree on how much money could have been won if the Rent-A-Center customers who brought the suit had won at a trial.

### Who is included in the settlement?

You are a class member if you rented or purchased merchandise from any "Rent-A-Center" branded store in West Virginia in transactions commencing from October 23, 2002 through September 8, 2008. You are excluded from the class if Rent-A-Center's records reflect that you kept its merchandise without making the payments necessary to own the merchandise.

**Please do not contact the Court or Rent-A-Center for information.**

### How do I ask for a payment?

You can get a detailed notice about the settlement and your rights to claim money under it by visiting www.wvrentalsettlement.com, or by calling toll free 1-877-874-7563, or by writing the Settlement Administrator at P.O. Box 1953, Faribault, MN 55021-6099. The detailed notice and claim form package contains everything you need. The quickest way to get the notice and claim form package is to visit the website.

To qualify for a payment, you must send in a claim form. Claim forms must be received by the Settlement Administrator by MARCH 4, 2009.

### What Are Your Other Options?

If you decide to remain a member of the settlement class but do not submit a claim form, you will not receive any money from the settlement. If you don't want to be legally bound by the settlement, you must exclude yourself by December 8, 2008, or you won't be able to sue, or continue to sue, Rent-A-Center about the legal claims in this case. If you exclude yourself, you can't get money from this settlement. If you stay in the settlement, you may object to it by October 8, 2008. The detailed notice explains how to exclude yourself or object. The Court will hold a hearing in this case on February 2, 2009 to consider whether to approve the settlement and a request by the law firm representing the class for an award of attorneys' fees and costs for investigating the facts, litigating the case, and negotiating the settlement. You may ask to appear at the hearing, but you don't have to.

For more information, visit www.wvrentalsettlement.com, call toll free 1-877-874-7563, or write the Settlement Administrator at P.O. Box 1953, Faribault, MN 55021-6099.

www.wvrentalsettlement.com

# TAB 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re AAIPHARMA INC. | ) | Consolidated Civil Action No. |
| SECURITIES LITIGATION, | ) | 7:04-CV-27-D |
| | ) | |
| ———————————————— | ) | |
| | ) | **ORDER** |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |
| | ) | |
| ———————————————— | ) | |

FILED IN OPEN COURT
ON _October 2, 2007_
Dennis P. Iavarone, Clerk
US District Court
Eastern District of NC

This matter came before the Court for hearing pursuant to the Order ("Order") dated June 18, 2007, on the application of the parties for approval of the settlement set forth in the Stipulation of Partial Settlement dated as of February 23, 2007 (the "Stipulation"). Due and adequate notice having been given to the Class as required in said Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. This Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein.

2. This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all members of the Class.

3. The Court hereby certifies the following class for settlement purposes only:

All Persons who purchased or otherwise acquired aaiPharma Publicly Traded Securities between April 24, 2002, and June 15, 2004, inclusive. Excluded from the Class are the Settling Defendants, members of the immediate families of the Defendants, the former and current directors, officers, subsidiaries and affiliates of

aaiPharma, as well as any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest and the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded party. Also excluded from the Class are those Persons who timely and validly requested exclusion from the Class pursuant to the Notice of Pendency and Proposed Partial Settlement of Class Action. (Identified on Exhibit A attached hereto.)

4. Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the settlement set forth in the Stipulation and finds that said settlement is, in all respects, fair, reasonable, and adequate to the Class.

5. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Stipulation and settlement are fair, reasonable, and adequate as to each of the Settling Parties, and that the Stipulation and settlement are hereby finally approved in all respects, and the Settling Parties are hereby directed to perform its terms.

6. Accordingly, the Court authorizes and directs implementation of all the terms and provisions of the Stipulation, as well as the terms and provisions hereof. The Court hereby dismisses, as to the Settling Defendants only, the Litigation and all Released Claims of the Class with prejudice, without costs as to any Settling Party, except as and to the extent provided in the Stipulation and herein.

7. Upon the Effective Date hereof, the Lead Plaintiff shall, and each of the Class Members shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release form.

8. Upon the Effective Date hereto, each of the Settling Defendants shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged the Lead Plaintiff, each and all of the Class Members and Plaintiffs' Counsel from all

2

claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.

9.  Lead Plaintiff, all members of the Class, the successors and assigns of any of them and anyone claiming through or on behalf of any of them, are hereby permanently BARRED, ENJOINED and RESTRAINED from instituting, commencing or prosecuting, either directly or in any other capacity, in the Litigation or any other action or proceeding any Released Claims against any of the Released Persons. The Released Claims against each and all of the Released Persons shall be released and dismissed with prejudice and on the merits. Nothing in this paragraph shall release the Released Claims against the Released Persons of any Person who submitted a timely, signed request for exclusion from the Class and who did not submit a timely, signed request to revoke the prior request for exclusion ("Opt-Out Plaintiffs").

10.  The Non-Settling Defendant, any other defendant or third party defendant in the Litigation, whether named in the Complaint or hereafter named as a defendant or third party defendant, and all other Persons and entities, are hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim for contribution against the Released Persons or any other claim against the Released Persons where the injury to such entity/individual is the entity's/individual's actual or threatened liability to the Lead Plaintiff, named plaintiffs and other Class Members (whether contractual or otherwise and whether characterized as contribution, indemnity or otherwise) including any amounts paid in settlement of such actual or threatened liability, or any other costs or expenses (including attorneys' fees) incurred in connection with the Litigation; provided, however, that the Bar Order stated in this paragraph shall not apply to claims that may be asserted by any Opt-Out Plaintiff, or between and/or among any defendants in cases brought by Opt-Out Plaintiffs (but only to the extent such a claim between and/or among

3

defendants is based upon the defendants' actual or threatened liability solely to the Opt-Out Plaintiffs or the costs and expenses incurred solely in connection with a claim asserted by an Opt-Out Plaintiff). For purposes of this Bar Order, Barred Persons shall be defined as any Person who is barred and/or enjoined by this ¶ 10.

11. Barred Persons shall be entitled to a judgment credit *(i.e.,* a reduction to the total amount of the judgment for each claim entered in the action) in an amount that is the greater of: (i) the total Settlement Amount paid by or on behalf of the Settling Defendants, as allocated to claims for which contribution would besought; or (ii) the amount that corresponds to the percentage of responsibility of the Settling Defendants as determined at trial.

12. The Released Persons are hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim for contribution against the Barred Persons or any other claim against the Barred Persons where the injury to the Released Person is the Released Person's actual or threatened liability to the Lead Plaintiff, named plaintiffs and other Class Members (whether contractual or otherwise and whether characterized as contribution, indemnity or otherwise) including any amounts paid in settlement of such actual or threatened liability, or any other costs or expenses (including attorneys' fees) incurred in connection with the Litigation, provided, however, that the Bar Order stated in this paragraph shall not apply to claims that may be asserted by the Released Persons in any case brought by an Opt-Out Plaintiff or between and/or among any defendants in cases brought by Opt-Out Plaintiffs (but only to the extent such a claim by a Released Person is based upon such Released Person's actual or threatened liability solely to the Opt-Out Plaintiffs or the costs and expenses incurred solely in connection with a claim asserted by an Opt-Out Plaintiff).

13. The provisions in this Bar Order are reciprocal and in the event that any Person or entity

4

asserts and is legally not barred by the Bar Order from bringing any claim, action or actions, cause or causes of action, suits, debts, liens, contracts, agreements, promises, liabilities, claims, rights, demands, damages, losses, costs, charges or expenses falling within the scope of this Bar Order (the "First Person") against any other person (the "Second Person"), this Bar Order shall not bar, enjoin or restrain the Second Person from asserting or bringing any claim, action or actions, cause or causes of action, suits, debts, liens, contracts, agreements, promises, liabilities, claims, rights, demands, damages, losses, costs, charges or expenses falling within the scope of this Bar Order against the First Person.

14. The Notice of Pendency and Proposed Partial Settlement of Class Action given to the Class was the best notice practicable under the circumstances, including the individual notice to all members of the Class who could be identified through reasonable effort. Said notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed settlement set forth in the Stipulation, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23, §21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended including by the Private Securities Litigation Reform Act of 1995 and the requirements of due process.

15. Any plan of allocation submitted by Lead Counsel or any order entered regarding any attorneys' fee and expense application shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

16. Neither the Stipulation nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Settling Defendants or their respective Related

Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Settling Defendants or their respective Related Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Settling Defendants and/or their respective Related Parties may file the Stipulation and/or the Judgment from this action in any other action in which they are parties or that may be brought against them in order to support a defense, claim or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

17.   Without affecting the finality of this Judgment in any way, this Court hereby retains continuing exclusive jurisdiction over: (a) implementation of this settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, expenses and interest in the Litigation; (d) all parties hereto for the purpose of construing, enforcing and administering the Stipulation; and (e) exclusive jurisdiction to enforce the provisions of the Bar Orders in this Judgment.

18.   The Court finds that during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

19.   In the event that the settlement does not become effective in accordance with the terms of the Stipulation, or the Effective Date does not occur, or in the event that the Settlement Fund, or any portion thereof, is returned to the Settling Defendants, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void

6

to the extent provided by and in accordance with the Stipulation.

20. Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

21. There is no reason for delay in the entry of this Partial Final Judgment and Order of Dismissal with Prejudice and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS

22. Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finds and concludes that due and adequate notice was directed to persons and entities who are Class Members, advising them of the Plan of Allocation and of their right to object thereto, and a full and fair opportunity was accorded to all persons and entities who are Class Members to be heard with respect to the Plan of Allocation.

23. The Court hereby finds and concludes that the formula for the calculation of the claims of Authorized Claimants which is set forth in the Notice of Pendency and Proposed Partial Settlement of Class Action (the "Notice") sent to Class Members, provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund, established by the Stipulation, among Class Members, with due consideration having been given to administrative convenience and necessity.

24. The Court hereby finds and concludes that the Plan of Allocation set forth in the Notice is in all respects fair and reasonable and the Court hereby approves the Plan of Allocation.

## ATTORNEYS' FEES

25. The court finds that the amount of fees awarded is fair and reasonable under the percentage of-recovery method and further finds that a fee award of 30% of the Settlement Fund is

consistent with awards made in similar cases.

26. The Court thereby awards Lead Counsel attorneys' fees of 30% of the Settlement Fund. The Court hereby awards reimbursement of expenses in an aggregate amount of $233,168.26 to be paid from the Settlement Fund. Said fees and expenses shall include interest earned on the Settlement Fund for the same time period and at the same rate as that earned on the Settlement Fund until paid. Said fees shall be allocated by Lead Counsel in a manner which, in their good faith judgment, reflects each counsel's contribution to the institution, prosecution and resolution of the Litigation.

5. The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid from the Settlement Fund immediately after the date this Order is executed subject to the terms, conditions, and obligations of the Stipulation and in particular thereof, which terms, conditions, and obligations are incorporated herein.

SO ORDERED. This _2_ day of October 2007.

JAMES C. DEVER III
United States District Judge

# TAB 6

KESSLER TOPAZ MELTZER
  & CHECK, LLP
ELI R. GREENSTEIN (*Pro Hac Vice*)
JENNIFER L. JOOST (*Pro Hac Vice*)
PAUL A. BREUCOP (*Pro Hac Vice*)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  415/400-3000
415/400-3001 (fax)
           – and –
GREGORY M. CASTALDO (*Pro Hac Vice*)
280 King of Prussia Rd.
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY (*Pro Hac Vice*)
ELLEN GUSIKOFF STEWART (*Pro Hac Vice*)
BRIAN O. O'MARA (Nevada Bar #8214)
RYAN A. LLORENS (*Pro Hac Vice*)
MATTHEW I. ALPERT (*Pro Hac Vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

NIX PATTERSON & ROACH, LLP
BRADLEY E. BECKWORTH (*Pro Hac Vice*)
JEFFREY J. ANGELOVICH (*Pro Hac Vice*)
SUSAN WHATLEY (*Pro Hac Vice*)
LISA P. BALDWIN (*Pro Hac Vice*)
205 Linda Drive
Daingerfield, TX  75638
Telephone:  903/645-7333
903/645-4415 (fax)

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re MGM MIRAGE SECURITIES LITIGATION | ) ) ) ) | No. 2:09-cv-01558-GMN-VCF <br><br> CLASS ACTION |
| This Document Relates To: <br><br> ALL ACTIONS. | ) ) ) ) ) ) | [PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES AND LEAD PLAINTIFFS' EXPENSES PURSUANT TO 15 U.S.C. §78u-4(a)(4) <br><br> DATE:  March 1, 2016 <br> TIME:   9:00 a.m. <br> CTRM:  The Honorable Gloria M. Navarro |

THIS MATTER having come before the Court on March 1, 2016, on the motion of Lead

Plaintiffs for an Award of Attorneys' Fees and Expenses to Lead Counsel and Awards to Lead

Plaintiffs (the "Motion") (Dkt. No. 358) in the above-captioned action; the Court, having considered

all papers filed and proceedings conducted herein, having found the Settlement of the Action to be

fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause

appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.     For purposes of this Order, the capitalized terms used herein shall have the same

meanings as set forth in the Stipulation and Agreement of Settlement dated August 28, 2015 (the

"Settlement Agreement"), and filed with the Court.

2.     The Court has jurisdiction to enter this Order.  This Court has jurisdiction over the

subject matter of the Motion and all matters relating thereto, and over all Settling Parties to the

Action, including all members of the Class who have not timely and validly requested exclusion.

3.     Pursuant to and in full compliance with Rule 23 of the Federal Rules of Civil

Procedure, the Court finds and concludes that due and adequate notice of the Motion was directed to

all Persons and entities who are Class Members, including individual notice to those who could be

identified with reasonable effort, advising them of the Motion and of their right to object thereto, and

a full and fair opportunity was accorded to all Persons and entities who are Class Members to be

heard with respect to the Motion.

4.     The Court hereby awards Lead Counsel attorneys' fees of 25% of the Settlement

Amount and expenses of $1,937,528.73 together with the interest earned thereon for the same time

period and at the same rate as that earned by the Settlement Amount until paid.  The foregoing

attorneys' fees and expenses shall be paid from the Settlement Fund in accordance with the terms of

- 1 -

the Settlement Agreement.  The Court finds that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method, which is the preferred method for awarding fees in common fund cases in the Ninth Circuit, considering, among other things, the substantial risks of no recovery; the result obtained for the Class; the awarded fee is in accord with the Ninth Circuit's benchmark fee award and consistent with empirical data regarding fee awards in cases of this size; the quality and extent of legal services provided by Lead Counsel that produced the Settlement; Lead Plaintiffs appointed by the Court to represent the Class reviewed and approved the requested fee; and the reaction of the Class to the fee request supports the fee awarded.

5.     Pursuant to 15 U.S.C. §78u-4(a)(4), the Court hereby awards Lead Plaintiffs for their costs and expenses directly related to their representation of the Class as follows:  $11,853.00 to Arkansas Teacher Retirement System; $4,400.00 to Philadelphia Board of Pensions and Retirement; $5,075.00 to Luzerne County Retirement System; and $11,300.00 to Stichting Pensioenfonds Metaal en Techniek.

6.     The Court has considered the objections filed by Nickolas A. Kacprowski, Colorado Public Employees' Retirement Association, National Automatic Sprinkler Industry Pension Fund and William E. Stafford, Jr., and finds them to be without merit.  Therefore, the Court overrules them in their entirety.

7.     The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid to Lead Counsel from the Settlement Fund immediately after the date this Order is executed subject to the terms, conditions, and obligations of the Settlement Agreement, which terms, conditions, and obligations are incorporated herein.

1111107_1

8.      Jurisdiction is hereby retained over the Settling Parties and Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Order.

9.      The Court directs immediate entry of this Order by the Clerk of the Court.

IT IS SO ORDERED.

DATED:  March 1, 2016      _____

THE HONORABLE GLORIA M. NAVARRO
CHIEF UNITED STATES DISTRICT JUDGE

- 3 -

1111107_1

# TAB 7

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12|18|13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

LANDMEN PARTNERS INC., Individually   :
and On Behalf of All Others Similarly Situated, :

                                 :

                Plaintiff,   :

                                 :

    vs.                      :

THE BLACKSTONE GROUP L.P., et al.,   :

                           :

           Defendants.   :

———————————————————————— x

Civil Action No. 08-cv-03601-HB-FM

CLASS ACTION

FINAL JUDGMENT AND ORDER OF
DISMISSAL WITH PREJUDICE

       This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement and Providing for Notice to the Class ("Notice Order") dated August 30, 2013, on the unopposed application of Lead Plaintiffs for approval of the Settlement set forth in the Settlement Agreement, dated August 28, 2013 ("Stipulation"), and following a hearing on December 18, 2013. Due and adequate notice having been given to the Class as required in said Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor,

       **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

       1.     This Final Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein.

       2.     This Court has jurisdiction over the subject matter of the Action and over all Settling Parties to the Action, including all members of the Class.

       3.     For purposes of this Judgment, as certified by the Court's August 13, 2013 Order, the Class is defined as all Persons who purchased the common units of The Blackstone Group L.P. ("Blackstone") in Blackstone's initial public offering ("IPO") or in the open market on the New

York Stock Exchange between June 21, 2007 and March 12, 2008, inclusive, and who sustained compensable damages in connection with any such purchase of Blackstone units pursuant to Sections 11 and 15 of the Securities Act of 1933.

Excluded from the Class are: (i) the persons who submitted valid and timely requests for exclusion from the Class, who are listed on Exhibit A hereto; (ii) Defendants; (iii) members of the immediate family of each of the Defendants; (iv) any Person that acted as an underwriter of the IPO; (v) any natural Person who sold Blackstone common units to the public in the IPO or who serves or served as an officer or director of Blackstone or as a partner of any predecessor to Blackstone, the members of the immediate families of any such persons, and any entity in which any of Defendants have or had a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded Person (collectively, "Excluded Persons").

For the avoidance of doubt, the Excluded Persons are excluded from the Class only to the extent they purchased Blackstone common units in the IPO for their own account and not for or on behalf of a third-party customer or for resale to customers. Further, to the extent that any of the Excluded Persons was a statutory "seller" who resold the Blackstone common units to a third-party customer, client, account, fund, trust, or employee benefit plan that otherwise falls within the Class, or purchased Blackstone common units in a fiduciary capacity or otherwise on behalf of any third-party customer, client, account, fund, trust, or employee benefit plan that falls within the Class, the Excluded Person is excluded from the Class but the third-party customer, client, account, fund, trust, or employee benefit plan is not excluded from the Class with respect to such purchases of Blackstone common units.

4.     For purposes of this Judgment, as certified by the Court's August 13, 2013 Order, Lead Plaintiffs Martin Litwin and Francis Brady are Class Representatives, and Lead Counsel

Robbins Geller Rudman & Dowd LLP and Brower Piven, A Professional Corporation, are Class Counsel.

5.        Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the Settlement set forth in the Stipulation and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Class. There are no objections to the proposed Settlement.

6.        Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Stipulation and Settlement are fair, reasonable, and adequate as to each of the Settling Parties, and that the Stipulation and Settlement are hereby finally approved in all respects, and the Settling Parties are hereby directed to perform its terms.

7.        Accordingly, the Court authorizes and directs implementation of all the terms and provisions of the Stipulation, as well as the terms and provisions hereof. The Court hereby dismisses, as to Defendants, the Action and all Released Claims of the Class with prejudice, without costs as to any Settling Party, except as and to the extent provided in the Stipulation and herein.

8.        Upon the Effective Date hereof, and as provided in the Stipulation, Lead Plaintiffs shall, and each of the Class Members shall, be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release.

9.        Upon the Effective Date hereof, and as provided in the Stipulation, each of the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiffs, each and all of the Class Members, Lead Counsel and Abraham Fruchter & Twersky LLP from all claims (including, without

- 3 -

limitation, Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement, or resolution of the Action.

10.     Upon the Effective Date hereof, and as provided in the Stipulation, Lead Plaintiffs and each of the Class Members who have not validly opted out of the Class, and their respective predecessors, successors, agents, representatives, attorneys, and affiliates, and the respective heirs, executors, administrators, successors, and assigns of each of them, directly or indirectly, individually, derivatively, representatively, or in any other capacity, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged against the Released Persons (whether or not such Class Members execute and deliver the Proof of Claim and Release forms) any and all Released Claims (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Action or the Released Claims.

11.     Upon the Effective Date, Lead Plaintiffs and each of the Class Members who have not validly opted out of the Class, and their respective predecessors, successors, agents, representatives, attorneys, and affiliates, and the respective heirs, executors, administrators, successors, and assigns of each of them, directly or indirectly, individually, derivatively, representatively, or in any other capacity, shall be permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against any Released Person, in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Action or the Released Claims.

- 4 -

12.     The Notice of Proposed Settlement of Class Action ("Notice") given to the Class in accordance with the Notice Order, entered on August 30, 2013, was the best notice practicable under the circumstances, including the individual notice to all members of the Class who could be identified through reasonable effort, of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Stipulation, the proposed Plan of Distribution of the proceeds of the Settlement set forth in the Notice, Lead Counsel's application for attorneys' fees and reimbursement of expenses, and Lead Plaintiffs' request for an award of reasonable costs and expenses relating to their representation of the Class, and said Notice and notice procedures fully satisfied the requirements of Federal Rule of Civil Procedure 23, the Private Securities Litigation Reform Act of 1995, and the requirements of due process. There are no objections to the Notice and/or notice procedures.

13.     The Court hereby approves the Plan of Distribution as set forth in the Notice as fair and equitable. The Court directs Lead Counsel to proceed with processing Proofs of Claim and the administration of the Settlement pursuant to the terms of the Plan of Distribution and, upon completion of the claims processing procedure, to present to this Court a proposed final distribution order for the distribution of the Net Settlement Fund to eligible Class Members, as provided in the Stipulation and the Plan of Distribution. There are no objections to the Plan of Distribution.

14.     The Court hereby awards Lead Counsel attorneys' fees equal to 33.33% percent of the Settlement Fund (including interest accrued thereon), and litigation expenses in the amount of $1,047,005.77, with interest to accrue thereon at the same rate and for the same periods as has accrued by the Settlement Fund from the date of this Judgment to the date of actual payment of said attorneys' fees and expenses to Lead Counsel as provided in the Stipulation. The Court finds the amount of attorneys' fees awarded herein are fair and reasonable based on: (a) the work performed

- 5 -

and costs incurred by Lead Counsel; (b) the complexity of the case; (c) the risks undertaken by Lead Counsel and the contingent nature of their employment; (d) the quality of the work performed by Lead Counsel in this Action and their standing and experience in prosecuting similar class action securities litigation; (e) awards to successful plaintiffs' counsel in other, similar litigation; (f) the benefits achieved for Class Members through the Settlement; and (g) the absence of any objections from any Class Members to either the application for an award of attorneys' fees or expenses to Lead Counsel.

15.     The Court also finds that the requested expenses are proper as the expenses incurred by Lead Counsel, including the costs of experts, were reasonable and necessary in the prosecution of this Action on behalf of Class Members. There are no objections to Lead Counsel's application for reimbursement of their expenses.

16.     The Court approves payment of $15,000.00 to Lead Plaintiff Martin Litwin for his reasonable time and expenses (including lost wages) relating to their representation of the Class. Such payment shall be paid out of the Settlement Fund. There are no objections to Lead Plaintiff Litwin's application for reimbursement of his costs and expenses.

17.     All fees and expenses awarded or allowed in this Judgment shall, except as otherwise expressly provided in the Stipulation, be paid from the Settlement Fund.

18.     Lead Counsel may apply, from time to time, for any fees and/or expenses incurred by them solely in connection with the administration of the Settlement and distribution of the Net Settlement Fund to Class Members which, except as expressly provided in the Stipulation, shall be paid from the Settlement Fund.

19.     Neither appellate review nor modification of the Plan of Distribution set forth in the Notice, nor any action in regard to the motion by Lead Counsel for attorneys' fees and/or expenses

- 6 -

and the award of costs and expenses to Lead Plaintiffs, shall affect the finality of any other portion of this Judgment, nor delay the Effective Date of the Stipulation, and each shall be considered separate for the purposes of appellate review of this Judgment.

20.    Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Persons, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or the Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Defendants and/or the Released Persons may file the Stipulation and/or this Judgment from this Action in any other action in which they are parties or that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

21.    Without affecting the finality of this Judgment in any way, this Court hereby retains continuing exclusive jurisdiction over: (a) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, interest, and expenses in the Action; (d) payment of taxes by the Settlement Fund; (e) all Settling Parties hereto for the purpose of construing, enforcing, and administering the Stipulation; and (f) any other matters related to finalizing the Settlement and distribution of proceeds of the Settlement.

22.    In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, or the Effective Date does not occur, or in the event that the Settlement

- 7 -

Fund, or any portion thereof, is returned to Defendants, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

23.     Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

24.     The Court finds that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

25.     The Court directs immediate entry of this Final Judgment by the Clerk of the Court.

IT IS SO ORDERED.

DATED: _Dec 18, 2013_

_____
THE HONORABLE HAROLD BAER, JR.
UNITED STATES DISTRICT JUDGE

- 8 -

# TAB 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| THE ERICA P. JOHN FUND, INC., et al., | § | |
| *on Behalf of Itself and All Others Similarly* | § | |
| *Situated*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:02-cv-1152-M |
| v. | § | |
| | § | |
| HALLIBURTON COMPANY and | § | |
| DAVID J. LESAR, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On February 21, 2017, the Erica P. John Fund, Inc. ("EPJF"), Lead Plaintiff in this

securities class action case, filed a Stipulation of Settlement, (ECF No. 794), and a Motion for

Preliminary Approval of Class Action Settlement, (ECF No. 795). The Court granted

preliminary approval. (ECF No. 805).

EPJF then filed the Motion for Final Approval of Class Action Settlement and Plan of

Allocation. (ECF No. 818). Class Counsel—Boies Schiller Flexner LLP ("BSF"), Kahn Swick

& Foti, LLC ("KSF"), and Lawrence "Larry" Vincent—filed the Motion for Award of

Attorneys' Fees and Reimbursement of Litigation Expenses. (ECF No. 820). Several other

firms have also moved for fees and expenses, namely Federman & Sherwood, (ECF No. 812),

Kilgore & Kilgore, PLLC (ECF No. 815), and Robbins Geller Rudman & Dowd LLP, (ECF No.

817). Robbins Geller Rudman & Dowd has since withdrawn its request for fees and instead

seeks only expenses. (ECF No. 823).

On July 31, 2017, the Court held a final fairness hearing regarding the Motion for Final

Approval and heard argument on the fee and expense motions. For the reasons stated below and

1

on the record, the Motion for Final Approval of Class Action Settlement and Plan of Allocation

is **GRANTED**; Class Counsel's Motion for Award of Attorneys' Fees and Reimbursement of

Litigation Expenses is **GRANTED**; Federman & Sherwood's Motion for Attorney Fees and

Reimbursement of Expenses is **GRANTED IN PART** and **DENIED IN PART**; Kilgore &

Kilgore's Motion for Award of Attorneys' Fees and Expenses is **GRANTED IN PART** and

**DENIED IN PART**; and Robbins Geller Rudman & Dowd's Motion for Award of Expenses is

**GRANTED**.

I. **Factual and Procedural Background**

a. **Background of the Case**

> Erica P. John Fund, Inc. (EPJ Fund), is the lead plaintiff in a putative class
> action against Halliburton and one of its executives (collectively Halliburton)
> alleging violations of section 10(b) of the Securities Exchange Act of 1934, and
> Securities and Exchange Commission Rule 10b–5. According to EPJ Fund,
> between June 3, 1999, and December 7, 2001, Halliburton made a series of
> misrepresentations regarding its potential liability in asbestos litigation, its
> expected revenue from certain construction contracts, and the anticipated benefits
> of its merger with another company—all in an attempt to inflate the price of its
> stock. Halliburton subsequently made a number of corrective disclosures, which,
> EPJ Fund contends, caused the company's stock price to drop and investors to lose
> money.

*Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2405–08 (2014) (*Halliburton I*).

Numerous complaints alleging misrepresentations by Halliburton were filed in 2002 and

consolidated into this action. (ECF No. 22). Four lead plaintiffs were appointed, including the

Archdiocese of Milwaukee Supporting Fund, Inc. ("AMSF"), the precursor in name to EPJF.

(*Id.* at 22). Schiffrin & Barroway, LLP ("S&B") was appointed as lead counsel, and Federman

& Sherwood ("F&S") and The Emerson Firm were appointed co-liaison counsel. (*Id.*)

On May 10, 2004, all lead plaintiffs except for AMSF moved for preliminary approval of

settlement, asserting that all claims had been settled for $6 million. (ECF No. 94). AMSF

opposed the settlement, arguing that it had not been included in settlement discussions and that

the proposed figure was insufficient.  AMSF further moved to have S&B removed as lead

counsel.  Following a final fairness hearing, the Court denied approval and held that there was

insufficient proof that the proposed settlement was fair, reasonable, and adequate.  (ECF No. 133

at 16).  On October 7, 2004, Kilgore & Kilgore, PLLC ("K&K") was appointed local counsel for

AMSF.  (ECF No. 149).  On May 3, 2005, S&B was removed as lead counsel.  (ECF No. 195).

AMSF became the sole remaining lead plaintiff in the action, and at its request and with the

Court's approval, Scott+Scott, LLP and Lerach Coughlin Stoia Geller Rudman & Robbins LLP

were appointed co-lead counsel.  (*Id.*)

In February of 2007, Scott+Scott and Lerach Coughlin Stoia Geller Rudman & Robbins

were relieved of their duties as lead counsel and were replaced by BSF.  (ECF No. 308).  AMSF

subsequently changed its name to the "Erica P. John Fund, Inc."  (ECF No. 472).  At the class

certification stage, the case was subject to multiple appeals, and the Supreme Court granted

certiorari twice to resolve various issues.  *See Halliburton I*, 563 U.S. 804 (2011); *Halliburton*

*Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) (*Halliburton II*).  The following excerpt

from *Halliburton II* provides a concise summary of the procedural history and legal issues raised

during this stage:

> EPJ Fund moved to certify a class comprising all investors who purchased
> Halliburton common stock during the class period. . . .  [E]xcept for one difficulty,
> the court would have also concluded that the class satisfied the requirement of Rule
> 23(b)(3) that "the questions of law or fact common to class members predominate
> over any questions affecting only individual members."  The difficulty was that
> Circuit precedent required securities fraud plaintiffs to prove "loss causation"—a
> causal connection between the defendants' alleged misrepresentations and the
> plaintiffs' economic losses—in order to invoke Basic's presumption of reliance and
> obtain class certification.  Because EPJ Fund had not demonstrated such a
> connection for any of Halliburton's alleged misrepresentations, the District Court
> refused to certify the proposed class.  The United States Court of Appeals for the
> Fifth Circuit affirmed the denial of class certification on the same ground.
> *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co*., 597 F.3d 330
> (2010).

> We granted certiorari and vacated the judgment, finding nothing in "Basic or its logic" to justify the Fifth Circuit's requirement that securities fraud plaintiffs prove loss causation at the class certification stage in order to invoke Basic's presumption of reliance. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. —— —, ——, 131 S.Ct. 2179, 2185–2186, 180 L.Ed.2d 24 (2011) (*Halliburton I*). "Loss causation," we explained, "addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock." We remanded the case for the lower courts to consider "any further arguments against class certification" that Halliburton had preserved.
>
> On remand, Halliburton argued that class certification was inappropriate because the evidence it had earlier introduced to disprove loss causation also showed that none of its alleged misrepresentations had actually affected its stock price. . . . The District Court declined to consider Halliburton's argument, holding that the Basic presumption applied and certifying the class under Rule 23(b)(3).
>
> The Fifth Circuit affirmed. 718 F.3d 423 (2013). The court found that Halliburton had preserved its price impact argument, but to no avail. *Id.,* at 435–436. While acknowledging that "Halliburton's price impact evidence could be used at the trial on the merits to refute the presumption of reliance," *id.,* at 433, the court held that Halliburton could not use such evidence for that purpose at the class certification *2407 stage, *id.,* at 435. "[P]rice impact evidence," the court explained, "does not bear on the question of common question predominance [under Rule 23(b)(3)], and is thus appropriately considered only on the merits after the class has been certified." *Ibid.* We once again granted certiorari, this time to resolve a conflict among the Circuits over whether securities fraud defendants may attempt to rebut the Basic presumption at the class certification stage with evidence of a lack of price impact.

*Halliburton II*, 134 S. Ct. at 2405–08. In *Halliburton II*, the Supreme Court held that Halliburton could introduce evidence of a lack of price impact at the class certification stage to show the absence of predominance. *Id.* at 2414–17. The Supreme Court again vacated the judgment of the Fifth Circuit and remanded the case to this Court for further proceedings. *Id.* at 2417. After briefing and oral argument addressing *Halliburton II*, this Court certified the class. (ECF No. 601). After Defendants took another appeal to the Fifth Circuit, EPJF filed the Stipulation of Settlement. (ECF No. 794).

### b. Summary of the Settlement

The Stipulation of Settlement is between EPJF, on behalf of itself and each of the class members, and Defendants Halliburton Company and David Lesar. (ECF No. 794). Plaintiffs are

agreeing to release all claims based on the purchase or acquisition of common stock during the

Class Period, which is defined as between August 16, 1999, and December 7, 2001, inclusive.

The Parties agreed to settle the case for $100,000,000.00 subject to the Court's approval. The

Stipulation of Settlement does not include claims stemming from purchases of stock between

December 8, 2001, and July 22, 2002, which are part of the *Magruder* putative class action. *See*

*Magruder v. Halliburton Co.*, No. 3:05-cv-1156-M (N.D. Tex.). These claims are expressly not

released.

## II. Motion for Final Approval of Class Action Settlement

Under Rule 23(e), a court must review any "settlement, voluntary dismissal, or

compromise" of the "claims, issues, or defenses of a certified class." FED. R. CIV. P. 23(e). Rule

23(e) establishes certain procedures in considering a proposed settlement, each of which will be

considered in turn:

> (1) The court must direct notice in a reasonable manner to all class members who
> would be bound by the proposal.

> (2) If the proposal would bind class members, the court may approve it only after
> a hearing and on finding that it is fair, reasonable, and adequate.

> (3) The parties seeking approval must file a statement identifying any agreement
> made in connection with the proposal.

> (4) If the class action was previously certified under Rule 23(b)(3), the court may
> refuse to approve a settlement unless it affords a new opportunity to request
> exclusion to individual class members who had an earlier opportunity to request
> exclusion but did not do so.

> (5) Any class member may object to the proposal if it requires court approval under
> this subdivision (e); the objection may be withdrawn only with the court's
> approval.

*Id.*

### a.   Notice Must Be Directed in a Reasonable Manner to All Class Members

Notice of the settlement was reasonable, provided ample due process,[1] and satisfied the

requirements for settlement notices set out in the Private Securities Litigation Act ("PSLA").[2]

Notice was disseminated through the procedures provided in the Court's Preliminary Approval

Order.  (ECF No. 805).  In the Motion for Final Approval, Class Counsel stated that by April 14,

2017, 42,194 copies of the notice had been mailed to potential class members identified through

Halliburton's transfer agent records and their nominees, and as of June 28, 2017, an additional

67,008 copies had been sent.  (ECF No. 818 at 21).  Notice was published in *Investor's Business*

*Daily* and disseminated on PR Newswire.  (*Id.*)  The Claims Administrator maintained a toll-free

phone number and a website providing additional information; as of April 27, 2017, the Claims

Administrator had received 56 calls and 174 hits on the website.  (*Id.*)  In terms of timing, the

---

[1] "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements[.]"  *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).  Instead, "a settlement notice need only satisfy the broad reasonableness standards imposed by due process."  *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotation marks omitted).  Due process is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*; *see also Wal–Mart Stores*, 396 F.3d at 114 (explaining that "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").  However, due process does not require actual notice to each party intended to be bound by the adjudication of a representative action.  *Mullane v. Cent. Hanover Bank & Trust. Co.*, 339 U.S. 306, 313–14 (1950) ("A construction of the Due Process Clause which would place impossible or impracticable obstacles in the way could not be justified."); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110–11 (10th Cir. 2001) (holding Rule 23 and due process requisites satisfied where the record indicated that only seventy-seven percent of class members actually received notice of the settlement).

[2] The PSLA requires that notices of settlement must state: (A) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (B) if the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter (as is the case here), a statement from each settling party concerning the issue or issues on which the parties disagree; (C) if any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (D) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class; (E) a brief statement explaining the reasons why the parties are proposing the settlement; (F) such other information as may be required by the court.  15 U.S.C. § 78u-4(a)(7)(A)–(F).

class members had 87 days between the initial mailing of the notice on April 14, 2017, and the

deadline to request exclusion from the class, which was on July 16, 2017.  *See DeJulius v. New*

*Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 946 (10th Cir. 2005) (notice program

upheld as providing sufficient due process even though 70.7% of the class members received

fewer than thirty-two days' notice); *Silber v. Mabon*, 18 F.3d 1449, 1452, 1454 (9th Cir. 1994)

(due process requirement and Rule 23 satisfied when settlement notices were sent out forty days

before the opt-out deadline).  Furthermore, the fairness hearing was scheduled more than 75 days

after the notice date.  *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *11 (N.D. Tex. Nov. 8,

2005) (stating that a gap of 62 days between when notice was first sent out and the fairness

hearing was adequate).  Except for the lead plaintiff in *Magruder*, the Court received no

objections to the settlement, and only one objection to the fees sought.

### b.  The Proposed Settlement Must be Fair, Reasonable, and Adequate

Courts evaluate the *Reed* factors to determine whether a proposed class action settlement

is fair, reasonable, and adequate.  *See Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir.

1983).  The *Reed* factors are: (1) evidence that the settlement was obtained by fraud or collusion;

(2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation

and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of

possible recovery and certainty of damages; and (6) the opinions of class counsel, class

representatives, and absent class members.  *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir.

2004).  In light of the *Reed* factors, the proposed settlement is fair, reasonable, and adequate.

### i.  Evidence that the Settlement Was Obtained by Fraud or Collusion

Nothing in the record indicates that the current settlement was the result of secret

negotiations or improper collusion.  No parties (other than the lead plaintiff in *Magruder*) have

objected, and those objections do not assert any fraud or collusion.  Furthermore, the settlement

was obtained through formal mediation before former U.S. District Judge Layn R. Phillips,

which strongly suggests that the settlement was not the result of improper dealings.  *See In re*

*Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (noting that the

"presence of a neutral mediator" is a factor "weighing in favor of a finding of non-

collusiveness").

### ii.  The Complexity, Expense, and Likely Duration of the Litigation

Having been heard twice by the Supreme Court and multiple times by the Fifth Circuit,

and having lasted more than fifteen years, this case is indisputably complex and of lengthy

duration.

### iii.  Stage of the Litigation and Available Discovery

The litigation was set for trial, subject to the last appeal.  The parties have produced over

1.3 million documents and have taken 28 fact depositions.  The appendices to the cross-motions

for summary judgment exceeded 9,400 pages.

"A presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery."  *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1063 (S.D.

Tex. 2012) (internal quotation marks omitted).  Here, the parties have engaged in substantial and

meaningful discovery, and thus the parties were fully aware of the complete facts and the

strengths and weaknesses of their respective positions.

### iv.   The Probability of Plaintiffs Prevailing on the Merits

EPJF succeeded in certifying the class on the December 7, 2001, disclosure and had a not insignificant probability of prevailing on the merits.  However, there remained a substantial risk for all parties in proceeding to trial.

### v.   Range of Possible Recovery and Certainty of Damages

In the Motion for Final Approval, EPJF states that the "$100,000,000 all cash recovery constitutes approximately 11.8% of the maximum recoverable damages for the Class (approximately $848 million, as determined in consultation with Lead Plaintiff's damages expert)."  (ECF No. 818 at 14).  However, EPJF also points out that Defendants had strong arguments that the alleged misrepresentations were not wholly actionable, which would have limited "the maximum recoverable damages to as low as $233 million according to Lead Plaintiff's damages expert."[3]  (*Id.* at 14-15).  Under this lower recovery, the $100 million settlement would constitute 42.9% of the maximum recoverable damages for the class.

The focus of this factor is whether the settlement falls within the range of reasonableness. The Court is not to try the case via the fairness hearing because "the very purpose of the compromise is to avoid the delay and expense of such a trial."  *Reed*, 703 F.2d at 172.  In ascertaining whether a settlement falls "within the range of possible approval," courts will compare the settlement amount to the relief the class could expect to recover at trial, i.e., the strength of the plaintiff's case.  *See, e.g.*, *In re Nat'l Football League Platers' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("To determine whether a settlement falls 'within the range of possible approval,' a court must 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'").  "The fact that a proposed settlement may

---

[3] At the final settlement hearing, Lead Plaintiff's damages expert provided testimony on how these estimated recoveries were calculated.

only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974)).

Here, the recovery is 11.8% to 42.9% of the maximum possible recovery, depending on the conservativeness of the figures set forth by EPJF. As final approval is frequently given to settlements even when "the settlement amount is a very small fraction of the damages amount projected by the Plaintiffs," this recovery is reasonable in light of the possible damages. *See In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 228 F.R.D. 451, 566 (S.D. Tex. 2005). Even the "low" estimate, 11.8%, is a fairly sizeable recovery compared to other approved securities class action settlements. *See, e.g.*, *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (approving a settlement representing two percent of aggregated expected recovery). Furthermore, the amount to be recovered is more than fifteen times what the Court rejected in 2004, when it found a $6 million settlement not fair, reasonable, or adequate.

### vi. Opinions of Class Counsel, Class Representatives, and Absent Class Members

Class Counsel and Lead Plaintiff all agree to the settlement. *See also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."). After notice to the class was given, the only person objecting to the Settlement is Magruder, who is not a member of the class. "Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement." *In re Enron Corp.*, 228 F.R.D. at 567 (internal quotation marks omitted).

### c. The Parties Seeking Approval Must File a Statement Identifying Any Agreement Made in Connection with the Proposal

Rule 23(e) requires "[t]he parties seeking approval [to] file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). This requirement does not only concern disclosure of the basic settlement terms; "[i]t aims instead at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." *Id.* Committee Notes (2003). "The spirit of [Rule 23(e)(3)] is to compel identification of any agreement or understanding," written or oral, "that might have affected the interests of class members by altering what they may be receiving or foregoing." *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *6 (S.D. Tex. Jan. 23, 2015) (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004)).

The parties have satisfied this requirement by filing the Stipulation of Settlement, which publicly discloses the terms of the agreement between EPJF and Defendants made in connection with the settlement. The Stipulation also describes a "supplemental confidential agreement" between the parties, which "gives Halliburton the right, but not the obligation, to terminate the settlement in the event that a certain portion of the Class delivers timely and valid requests for exclusion from the Class." (ECF No. 794 at 36-37).

### d. An Additional Opt-Out Opportunity

Rule 23(e)(4) provides that "[i]f the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Rule 23(e)(4) "comes into play when the opt-out opportunity expired before the members received notice of a proposed settlement." *Slipchenko*, 2015 WL

338358, at *7.  This factor is inapplicable here.  The members of the class received notice of the

Settlement well before the opt-out opportunity expired.[4]

### e.   Class Member Objections

Class members must be provided an opportunity to object to the proposed settlement.

FED. R. CIV. P. 23(e).  The notice sent to the class here informed them of their right to object and

outlined the process for doing so.  To date, there have been a total of two objections filed to any

aspect of the settlement: one by Patricia Magruder, the lead plaintiff in the *Magruder* class

action, to the settlement itself, (ECF No. 810), and one by Channa Weeratunge in a one-page

objection to Class Counsel's Motion for Award, (ECF No. 808).  As discussed later below, the

Court holds that the fee award sought by Class Counsel is reasonable.

Magruder objects to the proposed settlement as being (1) unfair to the shareholders, and

(b) an "unlawful infringement on the right of the Magruder Class Claims."  (ECF No. 810 at 1).

Magruder argues that the release provided for in the Stipulation of Settlement is too broad,

arguing that EPJF has "abandoned all other claims, and those [abandoned] claims are the subject

of the Magruder Action."  (*Id.* at 4).

Magruder's objection is **OVERRULED**.  Because she is not a member of the class in this

case, she lacks standing to object to the settlement.  An objector who does not prove her

membership in the class lacks standing to object to a settlement reached in a securities class

action.  *See Feder v. Electronic Data Systems Corp.*, 248 F. App'x 579, 580 (5th Cir. 2007)

("[O]nly class members have an interest in the settlement funds, and therefore only class

members have standing to object to a settlement."); *see also In re Deepwater Horizon*, 739 F.3d

790, 809 (5th Cir. 2014) (holding that the district court did not abuse its discretion in deeming

---

[4] The deadline to submit requests for exclusion from the class was July 10, 2017.  (ECF No. 805 at 7).

objectors who did not substantiate their membership in the class to have waived and forfeited their objections to settlement); *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 974–75 (E.D. Tex. 2000) (noting that an objector who failed to substantiate his membership in the class did not have "proper standing" to object to class action settlement).

Magruder, as the party seeking to establish jurisdiction, bears the burden of proving standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Stipulation of Settlement defines the class as "all Persons (including, as to all such Persons, their beneficiaries) who purchased or otherwise acquired common stock of Halliburton Company between August 16, 1999 and December 7, 2001."[5] (ECF No. 794 at 3). Magruder purchased her shares on December 10, 2001.[6] (ECF No. 810 at 2). Magruder provides no other evidence showing that she is a member of the Class and cites to no other authority to suggest that non-class members have standing to object to a proposed settlement.

Instead, Magruder states that she "derives her status to object to this current settlement from (1) being an original objector to the *[earlier]* settlement and (2) as an intervenor who is now Lead Class Plaintiff in the Magruder Class Action." (ECF No. 810 at 3). The fact that Magruder is the lead plaintiff in another class action is irrelevant for determining standing to object to the proposed settlement in this class action. Furthermore, Magruder cites to no authority that being an objector in the earlier $6 million settlement gives standing for her to object now, after her case was severed from this action by the Court's June 3, 2005, Order. (ECF No. 207). Magruder's case became a distinct, independent action upon severance, and she did

---

[5] In response to the Court's March 21, 2017, Order, (ECF No. 802), EPJF and Halliburton updated the definition of "Released Claim" to remove any ambiguity about whether the release covered Magruder's claims. (*See* ECF No 804).

[6] "Patricia A. Magruder purchased 200 shares of Halliburton stock on December 10, 2001 at a price of $13.97 per share through her online account at CSFB Direct. December 10, 2001 (a Monday) was the first trading day after December 7, 2001 (a Friday). She continues to hold those shares to this date." (ECF No. 810 at 2).

not retain membership in this class.  *See also Allied Elevator, Inc. v. E. Tex. State Bank of Buna*,

965 F.2d 34, 36 (5th Cir. 1992) ("Severance under Rule 21 creates two separate actions or suits

where previously there was but one.  Where a single claim is severed out of a suit, it proceeds as

a discrete, independent action, and a court may render a final, appealable judgment in either one

of the resulting two actions notwithstanding the continued existence of unresolved claims in the

other.").

## III.   Class Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses

Class Counsel applies for attorney's fees in the total combined amount of

$33,333,333.33, or one-third of the Settlement Fund, plus interest.  The request for one-third of

the Fund is intended as an award to BSF, KSF, and Lawrence "Larry" Vincent, who "served as

local counsel to BSF and later KSF in this action."  (ECF No. 820 at 4).  Class Counsel indicates

that the award will be divided among Class Counsel as follows:

> BSF and KSF have agreed, after paying Mr. Vincent at his lodestar, with the same
> negative multiplier as Class counsel is seeking, to share remaining fees on a 65/35%
> basis with BSF receiving 65% of the fees and KSF 35%.

(*Id.* at 4 n.1).  In addition, Class Counsel seeks reimbursement for $5,969,540.84 in

expenses, plus interest.  (*Id.* at 3).  Class Counsel also asks for a $100,000 compensation

award, plus interest, to Lead Plaintiff.  (*Id.*)

Class Counsel argues that the requested fees are reasonable under either the "percentage

of the fund" method or the "lodestar" method for calculating fees.  In their Reply to the Motion

for Award, Class Counsel advocates using a "scaled back lodestar analysis" as a "cross-check" to

the percentage method as "a rough gauge of the reasonableness of the proposed fees."  (ECF No.

831 at 5–6).  Class Counsel points to other district courts in the Fifth Circuit that have accepted

fee awards calculated under the percentage method in light of the *Johnson* factors and have then

used the lodestar method as a rough means of checking their work.  (*Id.* at 5).  Class Counsel

states that the requested award equates to a "negative multiplier of 0.77 of Class Counsel's

lodestar," and thus argues that the requested award is also reasonable under the lodestar method.

(ECF No. 820 at 3).

Broadly, Class Counsel argues that they are entitled to this fee for several reasons,

including: overcoming the initial denial of class certification in *Halliburton I*, successfully

overcoming efforts to eliminate the fraud-on-the-market presumption in *Halliburton II*, serving

more than 60 third-party subpoenas, filing eight motions to compel, reviewing more than 1.3

million pages of documents, taking or defending 40 fact depositions, and taking or defending 11

expert depositions.  (ECF No. 820 at 2).  Class Counsel also describes the settlement as an

"exceptional result," which was the result of many years of hard work.  (*Id.*)

### a.  Legal Standard

The use of a common fund to pay attorney's fees in class action settlements is well

established.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has

recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of

persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as

a whole.").  Courts typically use one of two methods for calculating attorney's fees in common

fund cases: (1) the percentage method, in which the court awards fees as a reasonable percentage

of the common fund, or (2) the lodestar method, in which the court computes fees by multiplying

the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its

discretion, applying an upward or downward multiplier.  *Union Asset Mgmt. Holding A.G. v.

Dell, Inc.*, 669 F.3d 632, 642–435 (5th Cir. 2012).

Regardless of whether the court uses the percentage method or the lodestar method, it must consider the *Johnson* factors in calculating attorney's fees.  The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases.  *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

The PSLA expressly contemplates the percentage method, providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. § 78u–4(a)(6); *see also Union Asset Mgmt.*, 669 F.3d at 644–45 (affirming an 18% fee award in a PSLA case, so long as the *Johnson* framework for assessing the reasonableness of a fee award is used).  The statute does not define "reasonable percentage," but the Motion for Final Approval cites to numerous courts in the Fifth Circuit that have approved applications for fee awards of 33⅓% in class actions.  *See, e.g.*, *In re Olicom Sec. Litig.*, No. 94-0511 (N.D. Tex. Aug. 30, 1996); *Sims v. Shearson Lehman Bros., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 98, 134, at 98,976 (N.D. Tex. Nov. 29, 1993).

If the lodestar method is used, the lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work.  *See Smith & Fuller, P.A. v. Cooper Tire & Rubber*

*Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking reimbursement of attorney's fees

bears the burden of establishing the number of hours expended by presenting adequate time

records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court should

use this time as a benchmark and then exclude any time that is excessive, duplicative,

unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably

expended, and there is a strong presumption of the reasonableness of the lodestar amount. *See*

*Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d

795, 800 (5th Cir. 2006).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community

for similar services by lawyers of reasonably comparable skills, experience, and reputation."

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing

*Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the

community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th

Cir. 2002). The burden is on the movant to "produce satisfactory evidence—in addition to the

attorney's own affidavits—that the requested rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and

reputation." *Blum*, 465 U.S. at 896 n.11. After calculating the lodestar, the Court may either (1)

accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case,

taking into account the *Johnson* factors.

"[D]istrict courts in [the Fifth Circuit] regularly use the percentage method blended with

a *Johnson* reasonableness check." *Union Asset Mgmt.*, 669 F.3d at 643 (endorsing the use of the

percentage method, so long as it is cross-checked with "a meticulous *Johnson* analysis");[7] *see*

---

[7] "To be clear, we endorse the district courts' continued use of the percentage method cross-checked with the
*Johnson* factors. We join the majority of circuits in allowing our district courts the flexibility to choose between the

*also In Re: Oil Spill*, 2016 WL 6215974, at *19 (E.D. La. Oct. 25, 2016) ("[T]he loadstar [sic] cross-check is a streamlined process, avoiding the detailed analysis that goes into a traditional lodestar examination.").   Courts often then apply a lodestar calculation as a cross-check of the percentage method.  *See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) (conducting "a rough lodestar analysis to cross-check the reasonableness of the percentage fee award"); *In re Vioxx Prod. Liab. Litig.*, 2013 WL 5295707, at *3 (E.D. La. Sept. 18, 2013) ("The lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method").  The lodestar cross-check is usually applied "to avoid windfall fees, i.e., to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple."  *Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1086 (S.D. Tex. 2012).

Furthermore, courts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records.  *See, e.g.*, *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1086–87 ("Those circuits approving the lodestar cross-check have made it clear that district courts need not scrutinize counsel's billing records with the thoroughness required were the lodestar method applied by itself . . . .  In this case, the court has reviewed the fees-and-costs reports that counsel submitted and has examined many of the pages thoroughly.  It has not taken the extraordinary amount of time needed, however, for a thorough examination of all the time and billing records that counsel generated for purposes of a standalone lodestar analysis.").

---

percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations."  *Union Asset Mgmt.*, 669 F.3d at 644.

Class Counsel argues that the proposed settlement is reasonable under both the percentage method and the lodestar method.  Based on the Fifth Circuit's precedent, the Court believes that proceeding with the percentage method analyzed under the *Johnson* factors will be sufficient for analyzing fees.  The Court will also perform a simplified lodestar analysis as a cross-check.

### a.  Percentage Method

Class Counsel argues that the percentage of the fund that they request for their award of attorney's fees—one-third of the fund, or 33⅓%—is within the range of percentage fees awarded in the Fifth Circuit in other complex cases.

"The Manual for Complex Litigation states that '[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund.'"  *Klein v. O'Neal, Inc*., 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010) (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2010)); *Schwartz*, 2005 WL 3148350, at *27 ("The requested fee award of 22.2% of the Settlement Fund is consistent with and, in fact, significantly less than awards made in similar cases.").  However, numerous courts in this Circuit have awarded fees in the 30% to 36% range.[8]

---

[8] *See Hoeck v. Compusa, Inc. et al.*, No. 3:98–CV–0998–M (N.D. Tex. Oct. 14, 2003) (Lynn, C.J.) (approving 30% fee); *In re Firstplus Fin. Group, Inc. Sec. Litig., Master File*, No. 3:98–CV–2551–M (N.D. Tex. Oct. 14, 2003) (Lynn, C.J.) (approving 30% fee in securities class action); *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, No. 4:00–CV–355-Y (N.D. Tex. Mar. 9, 2005) (Means, J.) (approving 30% fee in securities class action); *Scheiner v. i2 Techs., Inc., et al.*, No. 3:01–CV–418–H (N.D. Tex. Oct. 1, 2004) (Sanders, J.) (approving fee of 25% of $80 million settlement in securities class action); *Warstadt v. Hastings Entm't, Inc., et al.*, No. 2:00–CV–089–J (N.D. Tex. Mar. 10, 2003) (Robinson, J.) (approving 30% fee in securities class action); *Silver v. UICI, et al.*, No. 3:99-CV-2860–L (N.D. Tex. Mar 3, 2003) (Lindsay, J.) (approving 30% fee in securities class action); *In re Unistar Fin. Serv. Corp. Sec. Litig.*, No. 3:99–CV–1857–D (N.D. Tex. Aug. 17, 2001) (Fitzwater, J.) (approving 30% fee in a securities class action); *Kisilenko v. STB Sys., Inc.*, No. 3:99–CV–2872–M (N.D. Tex. Nov. 3, 2000) (Lynn, C.J.) (approving 30% fee in a securities class action); *In re Landry's Seafood Rests., Inc. Sec. Litig.*, No. H–99–1948 (S.D. Tex. Jun. 13, 2002) (Harmon, J.) (approving 30% fee in securities class action); *In re Intellicall Sec. Litig.*, No. 3:91–CV–0730–P (N.D. Tex. Sept. 22, 1993) (Solis, J.) (approving 30% fee in a securities class action); *Robertson, et al. v. Strassner, et al.*, No. H–98–0364 (S.D. Tex. Jan. 5, 2000) (Atlas, J.) (approving 30% fee in a securities class action); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1156 (W.D. La. 1997) (Haik, J.) (approving fee of 36% of $127 million settlement); *Neibert, et al. v. Monarch Dental Corp., et al.*, No. 3:99–CV–762–X (N.D. Tex. Jun. 19, 2000) (Kendall, J.) (approving 30% fee); *In re Olicom Sec. Litig.*, No. 3:94–CV–0511–D (N.D. Tex. Aug. 30, 1996) (Fitzwater, J.) (approving 33–1/3% fee); *Belman, et al. v. Warrington, et al.*, No. H–91–3767 (S.D. Tex. Nov. 16, 1993) (Hoyt, J.) (approving 33% fee); *Sims v. Shearson Lehman Bros., Inc*., Fed. Sec. L. Rep. (CCH) ¶ 98, 134, at

"If the request is relatively close to the average awards in cases with similar characteristics, the court may feel a degree of confidence in approving the award." *Klein*, 705 F. Supp. 2d at 675.

Here, the 33⅓% requested is slightly above the fee range suggested by the Manual for Complex Litigation, but it is not necessarily excessive for that reason alone. The fee request is further analyzed in the context of the *Johnson* factors to see whether it is fair, reasonable, and adequate.

### b. *Johnson* Factors

"The court must scrutinize the agreed-to fees under the standards set forth in [*Johnson*], and not merely ratify a pre-arranged compact." *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1988). The court's analysis under *Johnson* must not be merely conclusory, but must establish grounds for the court's decision on each of the relevant factors. *Klein*, 705 F. Supp. 2d at 676; *but see In re High Sulfur*, 517 F.3d 220, 228–29 (5th Cir. 2008) ("If the district court has articulated and clearly applied the correct criteria, we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose."). However, "[e]ven though it is apparent that the Johnson factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered." *In re Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997).

---

98,976 (N.D. Tex. Nov. 29, 1993) (Kendall, J.) (approving fee of 33–1/3% of $30 million settlement in securities case); *In re ProNet, Inc.1933 Act Sec. Litig.*, No. 3:96–CV–1795–P (N.D. Tex. Nov. 19, 1997) (Solis, J.) (awarding 30% fee); *In re Granada P'ships Sec. Litig.*, No. H–90–0214 (S.D. Tex. Oct. 19, 1992) (Harmon, J.) (approving 30% fee); *Orzel v. Gilliam, et al.*, No. 3:90–CV–0044–G (N.D. Tex. May 16, 1995) (Fish, J.) (approving 30% fee in securities case); *Courtney, et al. v. Am. Airlines, Inc., et al.*, No. 4:97–CV–668–A (N.D. Tex. Sept.3, 1999) (McBryde, J.) (approving 30% fee); *Transamerican Ref. Corp. v. Dravo Corp.*, No. H–88–789 (S.D. Tex. Nov. 16, 1992) (Black, J.) (approving 30% fee); *Plains*, 2001 U.S. Dist. LEXIS 25532 (Rosenthal, J.) (approving 30% fee in securities class action). These cases were compiled by Judge Kinkeade in *Schwartz*, 2005 WL 3148350, at *27.

### i. Factor 1: The Time and Labor Required

This case is over fifteen years old. There are over 800 filings on the docket. The docket indicates that there have been at least 17 hearings. There were three appeals to the Fifth Circuit, and two to the Supreme Court. The Court concludes that this case has required an enormous amount of time and labor.

BSF was appointed Class Counsel on February 23, 2007. (ECF No. 308). In the joint declaration of Carl Goldfarb and Kim Miller, Class Counsel describes the efforts put forth to prosecute Lead Plaintiff's claims over the many years that this case has been pending. (ECF No. 819 at App.01–131). Class Counsel states that it has dedicated over 67,399.7 hours to the prosecution and resolution of the claims against Defendants. (*Id.* at App.64). The joint declaration also describes how Class Counsel "overcame various legal and factual hurdles, including two trips to the U.S. Supreme Court related to class certification, the completion of extensive fact and expert discovery, including at least 40 fact depositions (4 of which were two-day depositions), 11 expert depositions, the review of over 1.3 million pages of documents, and summary judgment and *Daubert* briefing." (*Id.* at App.63).

### ii. Factor 2: The Novelty and Difficulty of the Legal Issues

Class Counsel is correct that the multiple trips to the Supreme Court, and in particular the Supreme Court's reversal of Fifth Circuit precedent in *Halliburton I*, demonstrate the novelty and difficulty of the legal issues in this case:

> Class Counsel had to challenge and ultimately reverse the Fifth Circuit's now discredited precedent holding that plaintiffs had to establish loss causation by a preponderance of the evidence at class certification in order to invoke the fraud-on-the-market presumption. Even after doing so, because of the evolving case law, Class Counsel had to face novel legal questions regarding when and how the fraud-on-the-market presumption could be rebutted, what type of evidence or argument could be used to rebut the presumption at class certification, the quantum of evidence necessary to do so, and even what weight to accord the presumption

during the analysis. The fact that the Supreme Court agreed to hear this case twice, and the Fifth Circuit agreed to hear it three times is one indication of the novelty and difficulty of the issues presented, and weighs in favor of granting Class Counsel's fee request.

(ECF No. 820 at 13–14).

### iii. Factors 3 and 9: The Skill Required to Perform the Legal Service Properly and the Experience, Reputation, and Ability of the Attorneys

In its briefing, Class Counsel lumps in Factor 3, "the skill required to perform the legal service properly," with Factor 9, the "experience, reputation, and ability of the attorneys." (ECF No. 820 at 15). Class Counsel argues that this case required expertise at the trial, appellate, and Supreme Court levels. Furthermore, Class Counsel describes how much of the trial preparation—in particular, discovery and the dispositive motion preparation—occurred at the same time as the issues being heard on appeal. Class Counsel points to David Boies's "decades of experience in complex litigation" and KSF's specialized skills as securities class action litigators. (*Id.* at 16 ("Currently KSF is lead or co-counsel in ten securities putative class action litigations, including a number of high profile actions.")).

Class Counsel also points to the "quality of the opposition faced by Class Counsel" as a relevant factor in assessing their performance. *See Schwartz*, 2005 WL 3148350, at *30 ("The ability of Plaintiff's Counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). The Court agrees that, in this case, that was a substantial factor due to the very high quality of defense counsel's work.

### iv.   Factor 4: The Preclusion of Other Employment by the Attorney as a Result of Taking the Case

Class Counsel "spent over 67,399 hours prosecuting the Action, with the bulk of that work taking place between February of 2007 and December 2016.  Those hours were time that Class Counsel's attorneys could not devote to other matters."  (ECF No. 820 at 17).  The Court agrees that such a level of work would inevitably preclude other representations.

### v.   Factor 5: The Customary Fee

Class Counsel points to similar fees awarded in prior, comparable cases.  The Court believes that this is one of the *Johnson* factors that does not necessarily need to be considered in this case, because cases like these do not have "customary fees."  *See In re Combustion, Inc.*, 968 F. Supp. at 1135 ("Even though it is apparent that the Johnson factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered.").

### vi.   Factor 6: Whether the Fee Is Fixed or Contingent

Class Counsel prosecuted this case on a fully contingent basis, and accordingly, this factor supports the requested fee.  The contingent nature of Class Counsel's fee is also significant considering that at numerous points this case stood on shaky ground, such as when the Court denied class certification and was affirmed in doing so by the Fifth Circuit.

### vii.   Factor 7: Time Limitations Imposed by the Client or Other Circumstances

This factor does not apply in this case because there is no indication that Lead Plaintiff imposed any time limits in the prosecution of this case.

### viii.   Factor 8: The Monetary Amount Involved and the Results Obtained

The Fifth Circuit has called this factor the "most critical" factor.  *See Migis v. Pearle Vision, Inc*., 135 F.3d 1041, 1047 (5th Cir. 1998) (degree of success is "most critical [*Johnson*] factor") (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

According to Lead Plaintiff's damages expert, if Plaintiffs prevailed at trial, the maximum amount of damages estimated was $848 million, and the minimum was $233 million. A settlement of $100 million reflects a reasonable recovery based on the estimated damages figures that the class could have hoped to recover at trial, and as discussed above, the current settlement is more than fifteen times larger than the earlier settlement that the Court rejected.

### ix.   Factor 10: Whether the Case Is Undesirable

Class Counsel points to BSF being the third lead counsel in this case as evidence of the undesirability of the case, as well as the uphill battle Class Counsel and Lead Plaintiff faced in continuing to prosecute this case after the Court denied class certification in 2008.  Additionally, the "risk of non-recovery" and "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee" has been held to make a case undesirable, warranting a higher fee.  *Braud v. Transport Serv. Co*., 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010).

### x.   Factor 11: The Nature and Duration of the Professional Relationship with the Client

BSF was appointed counsel for Lead Plaintiff on February 23, 2007, and thus has been Class Counsel for more than a decade.  Considering that Class Counsel was replaced twice before BSF was appointed, the longevity of BSF's appointment indicates that the professional relationship with Lead Plaintiff was positive.

### xi. Factor 12: Awards in Similar Cases

The 33⅓% requested by Class Counsel is within the range of typical awards, and is not the highest fee awarded in securities class action cases. *See In re Combustion*, Inc., 968 F. Supp. at 1156 (approving fee of 36% of $127 million settlement)*; see also In re Olicom Sec. Litig*., No. 3:94–CV–0511–D (N.D. Tex. Aug. 30, 1996) (approving 33⅓% fee); *Belman, et al. v. Warrington, et al.*, No. H–91–3767 (S.D. Tex. Nov. 16, 1993) (approving fees representing 33% of the settlement fund in securities case); *Sims v. Shearson Lehman Bros., Inc*., Fed. Sec. L. Rep. (CCH) ¶ 98, 134, at 98,976 (N.D. Tex. Nov. 29, 1993) (approving fee of 33⅓% of $30 million settlement in securities case).

### xii. Conclusion

After considering all of the *Johnson* factors, the Court concludes that the percentage requested by Class Counsel is reasonable and fair. Compared to other common fund cases in this Circuit, Class Counsel is not asking for an unusually large or high fee. Furthermore, there are significant considerations that further justify the fee, such as the dogged perseverance Class Counsel showed in this case, such as eventually convincing the Supreme Court to overturn adverse Fifth Circuit precedent. Other than Channa Weeratunge's objection, which is **OVERRULED**, there were no objections from class members to the fee award. Although the lack of objections is not a *Johnson* factor, the Court finds it relevant in considering the reasonableness and fairness of the award.

### c. Lodestar Method

A court is to apply a lodestar calculation as a cross-check of the percentage method. Under this method, the court takes the recorded hours worked by the attorneys and multiplies them by a reasonable hourly rate. *See, e.g.*, *Forbush v. J.C. Penney Co*., 98 F.3d 817, 821 (5th

Cir. 1996). The resulting lodestar amount may then be adjusted upward or downward depending on the court's application of the *Johnson* factors. *See id.*

BSF presents evidence that it has spent 42,489.70 hours of attorney and other professional time prosecuting this action since February 23, 2007. (ECF No. 819 at App.133-34). Based on current rates,[9] BSF assert that its lodestar is equal to $26,738,490.50. (*Id.*) KSF asserts that it has been involved as "Special Counsel to Lead Plaintiff" since 2009. (*Id.* at App.137). KSF asserts that the firm has spent 24,910 hours prosecuting this action, resulting in a total lodestar amount of $16,385,469.50. (*Id.* at App.137-38)

Lawrence Vincent states that he began working with Lead Plaintiff in 2006, specifically to investigate the removal of then-lead class counsel William Lerach. (ECF No. 819 at App.142). After BSF was appointed lead counsel, Vincent states that he assisted primarily in appellate briefing and serving as local counsel. Vincent asserts that he has performed 321.8 hours of work in connection with the prosecution of the case and that the hourly rate he charges in comparable and non-contingent matters is $600, which results in his lodestar of $193,080. (*Id.* at App.140).

The total lodestar for Class Counsel (BSF, KSF, and Vincent) is $43,317,040.00, representing 67,721.5 hours of work.[10] The Court has examined the contemporaneous billing records submitted by Class Counsel and find them reasonable. The requested fee of $33,333,333.33 is less than the lodestar; specifically, Class Counsel is asking for 77% of their

---

[9] Both BSF and KSF state that each firm's lodestar was compiled using 2017 hourly rates for individuals still at each respective firm, and for individuals no longer at the firm, by using their last hourly rates. (ECF No. 819 at App.133).

[10] The Motion for Award states that Class Counsel "spent a total of more than 67,399" hours, which is the total number of hours worked by BSF and KSF, excluding Vincent's hours. (ECF No. 820 at 8). Similarly, the Motion for Award states that Class Counsel's total lodestar is $43,123,960.00, which is the total lodestar of BSF and KSF, excluding Vincent's individual lodestar. (*Id.*)

lodestar.[11]  Because there is a strong presumption that the lodestar represents a reasonable fee, *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable.

### d.  Expenses

Class Counsel also seeks reimbursement of its reasonable expenses in the amount of $5,969,540.84, plus interest.  (ECF No. 820 at 24).  In the Motion for Preliminary Approval and in the Notice, Class Counsel indicated that it would seek a maximum of $7,500,000.00 in expenses, and thus the requested reimbursement is below the noticed expenses cap.  (ECF No. 795 at 16).  Class Counsel has provided a 472-page appendix detailing the expenses for which it seeks reimbursement.  (ECF No. 834).

"Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."  *Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *10 (N.D. Tex. Aug. 4, 2011).  In *Schwartz*, Judge Kinkeade reimbursed expenses that were "reasonably and necessarily incurred in prosecuting this action and achieving the proposed Settlement."  2005 WL 3148350, at *34.  These expenses included consulting expert fees, transportation, meals and lodging, in-house and outsourced photocopying, research, court reporting fees and deposition transcripts, overnight courier services, postage, and other services. *Id.*

The joint declaration of Carl Goldfarb and Kim Miller, of BSF and KSF, respectively, describes why, and for what, the expenses were incurred.  (ECF No. 819 at App.070–72).  A significant amount—64% of the requested expenses, or $3,818,406.07—was spent on experts

---

[11] The inclusion or exclusion of Vincent's hours in the total lodestar does not dramatically change the 0.77 multiplier.  If Vincent's time is included in the lodestar, the requested fee is 0.7695 of the lodestar (i.e., $33,333,333.33 / $43,317,040).  If Vincent's time is excluded from the lodestar, the requested fee is 0.7729 (i.e., $33,333,333.33 / $43,123,960).

and consultants, which Class Counsel claims were necessary to establish the basic elements of

Lead Plaintiff's claims, and thus were necessary in the prosecution of this case. Other large

expenditures include document maintenance necessary to process and maintain the 1.3 million

documents in this case (11% of total); legal research (7% of total); and mediation fees, which

were shared with Defendants (0.6% of total). Overall, the expenses were reasonable and

necessary for successful prosecution of this case, and there have been no objections to the

amount requested. Accordingly, the expenses are reimbursed.

### e.   $100,000 Award for Lead Plaintiff

Class Counsel seeks a $100,000 award for Lead Plaintiff as compensation for the time it

dedicated in supervising this action. (ECF No. 820 at 3). Lead Plaintiff provides a declaration

from the CEO of EPJF, Paula John, detailing the involvement of the Lead Plaintiff in this action,

including discussing strategy, reviewing pleadings, participating in discovery, being deposed,

and attending mediation. (ECF No. 819 at App.150–57). Paula John and EPJF's CFO, Patrick

Byrne, argue that the time spent on this case precluded them from working on other matters. (*Id.*

at App.155).

Representative parties may be awarded "reasonable costs and expenses (including lost

wages)" relating to the representation of the class:

> The share of any final judgment or of any settlement that is awarded to a
> representative party serving on behalf of a class shall be equal, on a per share basis,
> to the portion of the final judgment or settlement awarded to all other members of
> the class. *Nothing in this paragraph shall be construed to limit the award of
> reasonable costs and expenses (including lost wages) directly relating to the
> representation of the class to any representative party serving on behalf of the
> class.*

15 U.S.C. § 77z-1(4) (emphasis added).

As stated at the July 31, 2017, hearing, the request for the $100,000 award for Lead

Plaintiff is granted.  Without the hard and diligent work of Lead Plaintiff over fifteen years, this

recovery would not have been possible.  The requested fee is reasonable based on the value of

the time of Lead Plaintiff, and no one has objected to this award.

### f.   Scott+Scott Expenses

Scott+Scott does not file a separate motion for its expenses.  However, Class Counsel

"has included in its application the request by [Scott+Scott] for reimbursement of $300,652.90."

(ECF No. 820 at 25).  In support, Class Counsel attaches Scott+Scott's expense report, (ECF No.

834), and the declaration of Geoffery Johnson, (ECF No. 819 at App.178-82).

The expenses requested by Scott+Scott are reasonable, and there have been no objections

to the amount requested.  A significant amount—55% of the requested expenses, or

$163,933.33—was spent on experts, consultants, and investigators—which Mr. Johnson claims

was necessary to contact confidential witnesses and to prepare confidential witness memoranda

used to support allegations in the complaint—and thus was reasonably necessary in the

successful prosecution of this case.  *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308, 308 (2007) (allowing scienter to be inferred from confidential sources).  Accordingly,

the expenses are reimbursed.

### IV.   F&S's Motion for Award of Attorney Fees and Reimbursement of Expenses

### a.   Fees

For their work as original co-liaison counsel on behalf of the class, F&S seeks an award

of attorney's fees in the amount of its actual lodestar, without a multiplier or interest, of

$200,703.75.  (ECF No. 812 at 1).  F&S began serving as local counsel to original lead counsel,

S&B, on December 6, 2002.  (ECF No. 22).  On February 10, 2005, following the failed $6

million settlement, S&B moved to withdraw as lead counsel.  (ECF No. 160).  On May 3, 2005,

the Court appointed EPJF as the sole Lead Plaintiff and appointed Scott+Scott and Lerach
Coughlin Stoia Geller Rudman & Robbins as lead counsel. (ECF No. 195). F&S's involvement
as counsel ceased at this time.

Lead Plaintiff opposes F&S's request for fees. (ECF No. 825). As a preliminary matter,
deference is given to Lead Plaintiff's determination that non-lead counsel is not entitled to fees.
The Third Circuit recognizes "that a presumption of correctness should . . . be accorded to the
lead plaintiff's decision that a non-lead counsel's work, not made pursuant to an agreement
between lead counsel and lead plaintiff, is not entitled to fees to be paid out of the common
fund." *In re Cendant Corp. Litig.*, 404 F.3d 173, 199 (3d Cir. 2005). In *In re Enron*, Judge
Harmon noted that she "does not believe that the Fifth Circuit would go so far as to accord a
presumption of correctness, but would certainly give the Lead Plaintiff's determination
considerable weight" in assessing whether fees should be denied to non-lead counsel.[12] 586 F.
Supp. 2d at 765. The Fifth Circuit does not appear to have commented on the amount of
deference to be accorded.

The Court finds persuasive Lead Plaintiff's opposition to F&S receiving fees and note
additionally that F&S has not articulated any substantial or independent benefit conferred to the
Class. *In re Enron Corp.*, 2008 WL 2566929, at *3 ("If an attorney creates a substantial benefit
for the class in this period . . . then he or she will be entitled to compensation."). If anything,
F&S's efforts in supporting the failed settlement delayed the progression of the case and

---

[12] In an earlier opinion, Judge Harmon adopted the Third Circuit's test for identifying when the presumption of correctness, or "the weight that might be accorded the decision of a properly selected and effective Lead Plaintiff by the Fifth Circuit," can be overcome. 2008 WL 2566929, at *5 (S.D. Tex. June 24, 2008). Specifically, Judge Harmon stated that a lead plaintiff's opposition to non-lead counsel receiving fees could be overcome if non-lead counsel could show (1) that the lead plaintiff had failed in its fiduciary representation of the class, or (2) that the denial of fees was erroneous because non-lead counsel "can and do specifically identify the benefits they independently provided to the class that would not have been provided by the services of lead counsel." *Id.* (citing *Cendant*, 404 F.3d at 199–200).

threatened potential recovery.  A significant portion of F&S's requested fees are related to the proffered $6 million settlement, which was rejected, in part, because counsel failed to include all of the lead plaintiffs in settlement negotiations and failed to disclose material details to them. (ECF No. 133 at 12-13).  Further, F&S requests fees attending a hearing on August 25, 2003, on EPJF's Motion to Show Cause as to whether S&B violated its fiduciary duties to the class.  If F&S was there in a supportive capacity to S&B, it was in support of arguments made against EPJF's Motion and, therefore, arguments made against the Class.  *Cf. In re Enron*, 2008 WL 2566929, at *3 ("[An attorney] whose efforts create, discover, increase or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation including [fees].").  F&S also improperly requests fees in preparing a fee application in connection with the rejected $6 million settlement.[13]  *See Hadden v. Standard Supply & Hardware Co.*, 1997 WL 403239, at *3 (E.D. La. July 17, 1997) ("[W]ork relating to attorneys' fees applications is not compensable from a common fund and that the time spent working on attorneys' fees applications and research regarding attorneys' fees should not be included in the lodestar amount.").  The record overall indicates that F&S performed administrative services that did not benefit the class.  *See also In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, 2008 U.S. Dist. LEXIS 67220 at *15-16 (S.D.N.Y. Sep. 3, 2008) ("[T]he filing of a complaint, without more, is not fee-worthy" unless the filing attorneys "alone discover grounds for a suit, based on their own investigation rather than on public reports" or lay out "factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely.").

---

[13] For example, 3.25 hours on August 11, 2004, for "Work for motion for approval of fees."  (ECF No. 814-1 at 21).

Because F&S did not provide a substantial or independent benefit to the Class and acted contrary to the wishes of at least the current Lead Plaintiff, who opposes its fee application, its requested fee award is denied.

**b. Expenses**

F&S seeks reimbursement of out of pocket expenses in the amount of $10,922.05, without interest. (ECF No. 812 at 1). "Lead Plaintiff does not oppose reimbursement of [F&S's] expenses reasonably incurred in connection with the prosecution of the litigation." (ECF No 825 at 5).

F&S provides detailed expense sheets in support of its request. (ECF No. 814-1 at 39). However, some of the expenses appear to have been expended in support of the failed $6 million settlement. One entry for May 29, 2004, describes a $1,772.80 expense labeled "Copies-stipulation and settlement." (*Id.* at 37). Based on the docket sheet, the stipulation to the failed $6 million settlement was filed on May 10, 2004, and thus it appears that F&S seeks to be reimbursed for making copies of the earlier settlement which, if it had succeeded, would have dramatically reduced the class's recovery. F&S also requests reimbursement for expenses related to attending a hearing on August 25, 2003, on EPJF's Motion to Show Cause as to whether S&B violated its fiduciary duties to the class, which, as discussed, was detrimental to the class. Accordingly, the Court determines that the following expenses were not reasonably and necessarily incurred in prosecuting this action and in achieving the proposed settlement:

| Date | Expense | Amount |
|---|---|---|
| August 25, 2003 | Car Rental | $47.84 |
| August 25, 2003 | Meals | $36.50 |
| August 25, 2003 | Parking | $6.50 |
| May 29, 2004 | Copies-stipulation and settlement | $1,772.90 |
| May 29, 2004 | Postage-stipulation and settlement | $64.80 |
| | Total: | $1,928.54 |

The remainder of the claimed expenses of $8,993.51 is reimbursed.

## V.    K&K's Motion for Award of Attorneys' Fees and Expenses

### a.    Fees

K&K seeks $132,600.20 in fees for its work performed as local counsel for AMSF.  (ECF

No. 815).  K&K's involvement as counsel ceased when Scott+Scott and Lerach Coughlin Stoia

Geller Rudman & Robbins were relieved of their duties as lead counsel, and were replaced by

BSF.  (ECF No. 308).  Lead Plaintiff opposes K&K's request for fees.  (ECF No. 825).

Unlike F&S, K&K was more actively involved in the litigation of this case, particularly

in its opposition to the failed settlement.  K&K participated in "strategy regarding opposition to

the Settlement, briefing on the opposition, and the preparation for . . . the hearing on the

opposition." (ECF No. 815 at 3).  Its work benefited the class by ultimately contributing to the

current settlement.  K&K also assisted in drafting the third and fourth consolidated class action

complaints, briefs on the motions to dismiss, traveling to California for strategy and discovery

meetings, and traveling to Houston for mediation.  *Id.*  Notably, Defendants' Motion to Dismiss

the third consolidated class action complaint was denied, in part, based on the relation-back

doctrine, the arguments for which were "developed and briefed by K&K."  (Anderson Aff. ¶ 9,

ECF No. 815-1).  Despite Lead Plaintiff's opposition, the Court finds that K&K has provided

substantial or independent benefit to the class.  Moreover, the Court has examined the

contemporaneous billing records and find them reasonable.  Accordingly, and for the reasons

similar to the ones discussed in awarding fees to Class Counsel, the Court awards attorney's fees

to K&K.

However, the Court makes two modifications to the fee award.  The total lodestar

requested by K&K is $132,600.20, representing 305 hours of work.  The lodestar is based on

current billing rates. (ECF No. 815 at 6 & n.4). The lodestar must be calculated using historical

rates, as opposed to current rates. It is true that "[t]he prevailing rate, unless other factors dictate,

is the current rate that is paid to attorneys even though the litigation spans a number of years."

*See Pruett v. Harris Cty. Bail Bond Bd.*, 593 F. Supp. 2d 944, 946 (S.D. Tex. 2008). One such

factor that militates against using the current rate is when counsel seeks fees based mostly on

work performed during the early stages of litigation. *See Rodriguez v. Barrita, Inc.*, 53 F. Supp.

3d 1268, 1280 (N.D. Cal. 2014) (reducing fee award from current (2014) rate because

"overwhelming majority of [counsel's] time spent in this case (approximately 93%) occurred in

2013 and earlier"). K&K stopped all work on this case on February 23, 2007, more than 10

years before it submitted its request for fees. While the rate provided by K&K may reasonably

reflects the value of its services today, using that rate causes an unwarranted increase in the

overall fee award. Based on the record, the fee request, adjusted for historical rates, is

$118,391.88. (*See* ECF No. 826 at ¶ 3c). Second, circumstances warrant an additional

downward adjustment of K&K's lodestar. K&K should not be entitled to receive proportionally

more attorney's fees than Class Counsel; the Court thus applies a 0.77 multiplier, the same

multiplier applied to Class Counsel's lodestar. Accordingly, K&K is awarded $91,161.75 in

attorney's fees.

### b. Expenses

K&K asks for $7,380.87 in expenses, plus interest, and provides a detailed expense

report. (ECF No. 815 at 12). As with F&S, "Lead Plaintiff does not oppose reimbursement

of [K&K's] expenses reasonably incurred in connection with the prosecution of the litigation."

(ECF No. 820 at 5). After reviewing the expense report provided by K&K, the Court finds that

the expenses were reasonable and necessary for successful prosecution of this case.

Accordingly, the expenses are reimbursed.

## VI.    RGRD's Motion for Award of Expenses

RGRD served as co-lead counsel from May 3, 2005, through February 23, 2007.  RGRD

initially moved for fees and expenses; however, RGRD has since withdrawn its request for an

award of attorney's fees, and instead seeks only reimbursement of expenses.  (ECF No. 823).

RGRD seeks reimbursement for $112,513.85 in expenses.  (ECF No. 817 at 6).  RGRD

submits exhibits detailing its expenses, separated by category.  (ECF No. 817-1 at 6-7).  There

are no objections to RGRD's request for expenses.  After reviewing the evidence provided by

RGRD, the Court finds that the expenses were reasonable and necessary for successful

prosecution of this case.  Accordingly, the expenses are reimbursed.

## VII.    Conclusion

For the reasons stated below and on the record, the Motion for Final Approval of Class

Action Settlement is **GRANTED**.  Class Counsel's Motion for Award of Attorneys' Fees and

Reimbursement of Litigation Expenses is **GRANTED**.  Class Counsel is awarded

$33,333,333.33 in attorney's fees, plus interest accrued thereon.[14]  Class Counsel is reimbursed

$5,969,540.84 for expenses, plus interest accrued thereon.  Lead Plaintiff is awarded $100,000,

plus interest accrued thereon.  Scott+Scott is reimbursed $300,652.90 for expenses, plus interest

accrued thereon.

Federman & Sherwood's Motion for Attorney Fees and Reimbursement of Expenses is

**GRANTED IN PART** and **DENIED IN PART**.  F&S's is reimbursed $8,993.51 for expenses.

Kilgore & Kilgore's Motion for Award of Attorneys' Fees and Expenses is **GRANTED IN**

---

[14] Interest here refers only to the proportionate share of interest accrued by the Settlement Fund while held in
escrow.  (ECF No. 794 at 32).

**PART** and **DENIED IN PART**.   K&K is awarded $91,161.75 in attorney's fees, plus interest

accrued thereon.  K&K is reimbursed $7,380.87 for expenses, plus interest accrued thereon.

Robbins Geller Rudman & Dowd's Motion for Award of Expenses is **GRANTED**.  RGRD is

reimbursed $112,513.85 for expenses, plus interest accrued thereon.

      **SO ORDERED.**

April 25, 2018.

                              **BARBARA M. G. LYNN**
                              **CHIEF JUDGE**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 20, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Jonah H. Goldstein
JONAH H. GOLDSTEIN

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  JonahG@rgrdlaw.com

# Mailing Information for a Case 8:16-cv-02625-RWT City of Cape Coral Municipal Firefighters' Retirement Plan et al v Emergent Biosolutions, Inc., HQ et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Robert D Gerson**
  rgerson@rgrdlaw.com

- **Jonah H Goldstein**
  jonahg@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com,ldeem@rgrdlaw.com

- **Francis P Karam**
  fkaram@rgrdlaw.com

- **Dana Whitehead McKee**
  dwm@browngold.com,kgates@browngold.com,dcaimona@browngold.com

- **Mark T Millkey**
  mmillkey@rgrdlaw.com,e_file_ny@rgrdlaw.com,1781895420@filings.docketbird.com,e_file_sd@rgrdlaw.com

- **Yosef J. Riemer**
  yosef.riemer@kirkland.com,kenymanagingclerk@kirkland.com,ecf-0034f2ed07b9@ecf.pacerpro.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew Solum**
  msolum@kirkland.com

- **Ellen Gusikof Stewart**
  elleng@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)